LATHAM & WATKINS LLP
  Belinda S Lee (Bar No. 199635)
  Ariel E. Rogers (Bar No. 316910)
505 Montgomery Street, Suite 2000
San Francisco, CA  94111-6538
Tel:    +1.415.391.0600
Fax:    +1.415.395.8095
Email: *Belinda.Lee@lw.com*
        *Ariel.Rogers@lw.com*

  Oliver Rocos (Bar No. 319059)
  Thomas Golding (Bar No. 308070)
10250 Constellation Blvd., Suite 1100
Los Angeles, CA 90067
Tel:    +1.424.653.5500
Fax:    +1.424.653.5501
Email: *Oliver.Rocos@lw.com*
        *Thomas.Golding@lw.com*

INTERNATIONAL REFUGEE
ASSISTANCE PROJECT
  Mariko Hirose*
  Kathryn C. Meyer*
40 Rector Street, 9th Fl.
New York, NY 10006
Tel:      +1.646.459.3044
Fax:      +1.212.533.4598
Email:  *mhirose@refugeerights.org*
          *kmeyer@refugeerights.org*
*pro hac vice* application forthcoming

*Attorneys for Plaintiffs Does 1 through 5*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JANE DOE 1, JOHN DOE 2, JANE DOE 3, JANE DOE 4, and JANE DOE 5, individually and on behalf of all others similarly situated; | CASE NO._____ |
| | **COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND MANDAMUS RELIEF** |
| Plaintiffs, | |
| | IMMIGRATION MANDAMUS CASE |
| v. | |
| | CLASS ACTION |
| KIRSTJEN NIELSEN, in her official capacity as the Secretary of Homeland Security; L. FRANCIS CISSNA, in his official capacity as the Director of U.S. Citizenship and Immigration Services; JENNIFER B. HIGGINS, in her official capacity as the Associate Director of U.S. Citizenship and Immigration Services for Refugee, Asylum, and International Operations Directorate; | |

1  JOHN SULLIVAN, in his official capacity as
   the Acting Secretary of State; U.S.
2  DEPARTMENT OF HOMELAND
   SECURITY; and U.S. DEPARTMENT OF
3  STATE,

4            Defendants.

5

## I.     INTRODUCTION

7          1.      When proclaiming January 16, 2018, as Religious Freedom Day, President Trump

called the United States "the paramount champion for religious freedom around the world" and

promised to "be undeterred in our commitment to monitor religious persecution and implement

policies that promote religious freedom."[1]  But just one month later, his administration took the

unprecedented step of denying *en masse* the refugee applications of nearly 90 Christians,

Mandaeans, and other persecuted religious minorities from Iran who had applied for refugee

status under the Vienna-based Lautenberg-Specter program ("Vienna Lautenberg-Specter

program").  They all received the same stock response—that their refugee applications had been

"denied as a matter of discretion."  Each such unexplained denial was contrary to law.

16         2.      In 1989, Congress enacted the Lautenberg Amendment to facilitate refugee

admission of persecuted religious minorities and other vulnerable groups from certain specified

countries by lowering the evidentiary burden of eligibility and mandating certain procedural

protections.  Congress specifically added Iranian religious minorities to these protections in 2004

through the Specter Amendment and has consistently reauthorized both Amendments, including

as recently as March 23, 2018.  The Vienna Lautenberg-Specter program allows persecuted

religious minorities in Iran to have a U.S. person sponsor their refugee application process, travel

to Vienna after they pass initial screening, and apply for refugee status there under the special

protections of the Lautenberg Amendment.  Until the mass denial, nearly 100% of the Iranian

refugee applicants who were invited to travel to Vienna were granted refugee admission within a

few months.

---

[1]      Donald J. Trump, *President Donald J. Trump Proclaims January 16, 2018, as Religious Freedom Day*, White House Proclamation (Jan. 16, 2018), https://www.whitehouse.gov/presidential-actions/president-donald-j-trump-proclaims-january-16-2018-religious-freedom-day/.

3.      Plaintiffs Does 1 and 2, and similarly situated putative class members, are U.S. persons who paid thousands of dollars to sponsor the Vienna Lautenberg-Specter refugee applications of their close family members and remain desperate to understand why their government has prevented their family from their long-awaited reunion.  Plaintiffs Does 3-5 and other putative class members are refugee applicants currently in Vienna who are in danger of deportation back to Iran, where they would be at an even greater risk of persecution than before for having sought refuge in the United States as a religious minority.

4.      Among the Plaintiffs are a mother in San Jose, California seeking to reunite with her Mandaean diabetic daughter and young grandchild; a son who is eager to bring his Mandaean mother and developmentally disabled adult brother to the United States for access to treatment and caregiving support; and a Christian widow stranded in Vienna with her elderly father and disabled toddler.  Plaintiffs and putative class members seek the Court's intervention to enforce the Lautenberg Amendment and other laws, so that the refugee applicants whose futures hang in the balance have the fair opportunity to reunite with their family members in the United States and practice their religion in the safety of this country, as the Lautenberg Amendment intended.

## II.    PARTIES

5.      Plaintiff Jane Doe 1 is a U.S. citizen and a resident of San Jose, California.  She served as the U.S. tie for the refugee application of her daughter, Jane Doe 3, and young grandson.

6.      Plaintiff John Doe 2 is a U.S. citizen and a resident of West Chicago, Illinois.  He served as the U.S. tie for the refugee application of his mother, Jane Doe 4, and disabled brother.

7.      Plaintiff Jane Doe 3 is an Iranian citizen currently located in Vienna, Austria.  She is Mandaean and applied for refugee status for herself and her eight-year-old son through the Vienna Lautenberg-Specter program.

8.      Plaintiff Jane Doe 4 is an Iranian citizen currently located in Vienna, Austria.  She is Mandaean and applied for refugee status with her developmentally disabled son through the Vienna Lautenberg-Specter program.

9.      Plaintiff Jane Doe 5 is an Iranian citizen currently located in Vienna, Austria.  She is Armenian Christian, a widow, and applied for refugee status with her elderly father and her disabled son through the Vienna Lautenberg-Specter program.

10.      Defendant United States Department of Homeland Security ("DHS") is a cabinet-level department of the United States federal government.  DHS has authority to determine if refugees are offered admission to the United States.  United States Citizenship and Immigration Services ("USCIS"), which is responsible for the review and adjudication of refugee applications, is a component of DHS.

11.      Defendant Kirstjen Nielsen is sued as a federal official in her official capacity as Secretary of Homeland Security.  Secretary Nielsen is responsible for managing DHS's operations and supervising officials who oversee DHS's involvement in refugee processing, including Vienna Lautenberg-Specter program adjudications.

12.      Defendant L. Francis Cissna is sued as a federal officer in his official capacity as Director of USCIS.  Director Cissna is responsible for overseeing the Refugee, Asylum and International Operations Directorate ("RAIO"), which determines eligibility, interviews, and screens refugee applications, including for the Vienna Lautenberg-Specter program.

13.      Defendant Jennifer B. Higgins is sued as a federal officer in her official capacity as the Associate Director of USCIS for RAIO.  Associate Director Higgins manages RAIO operations, including refugee processing.  She oversees the Refugee Affairs Division ("RAD") within RAIO, which adjudicates refugee applications, conducts refugee interviews with the USCIS Refugee Corps, and oversees the determinations of refugee Requests for Review ("RFR").  RAIO is the governmental entity that issued the mass denials to Vienna Lautenberg-Specter program applicants in or around February 2018.

14.      Defendant United States Department of State ("DOS") is a cabinet-level department of the United States federal government.  DOS manages the United States Refugee Admissions Program, which includes the Vienna Lautenberg-Specter program.  Within DOS, the Bureau of Population, Refugees and Migration contracts with and supervises HIAS, Inc., a non-

1    profit organization, that operates the Resettlement Support Center for Vienna Lautenberg-

2    Specter applicants in Vienna, Austria.

3         15.    Defendant John Sullivan is sued as a federal official in his official capacity as

4    Acting Secretary of State.  Acting Secretary Sullivan manages DOS's operations and supervises

5    officials who oversee DOS's involvement in refugee processing, including the Vienna

6    Lautenberg-Specter program.

7    **III.   JURISDICTION AND VENUE**

8         16.    This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal

9    question); 28 U.S.C. § 1361 (Mandamus Act); and 5 U.S.C. §§ 701-706 (Administrative

10   Procedure Act).  This Court has additional remedial authority under 28 U.S.C. §§ 2201-02

11   (Declaratory Judgment Act).

12        17.    Venue is proper in the Northern District of California under 28 U.S.C. §

13   1391(e)(1), because plaintiff Jane Doe 1 resides within this District.  Each Defendant is an

14   agency of the United States or an officer of the United States sued in his or her official capacity.

15   No real property is involved in this action.

16   **IV.   INTRADISTRICT ASSIGNMENT**

17        18.    Pursuant to Civil Local Rule 3-2(e), this matter should be assigned to the San Jose

18   Division, because Plaintiff Jane Doe 1 resides within Santa Clara County.

19   **V.   FACTUAL ALLEGATIONS**

20        **A.    Congress Passed the Lautenberg and Specter Amendments to Facilitate**

21             **Refugee Admissions Of Persecuted Religious Minorities**

22        19.    Congress enacted the Lautenberg Amendment in 1989 to facilitate the refugee

23   admission of certain persecuted categories of individuals, including Jews and Christians from the

24   Former Soviet Union.  P.L. 101-167, Title V, § 599D.  The Lautenberg Amendment lowers the

25   evidentiary burden for eligibility for refugee admissions, as it permits applicants in the specified

26   groups to demonstrate a well-founded fear of persecution by establishing membership in the

27   group, asserting a subjective fear of persecution, and asserting "a credible basis for concern

28   about the possibility of such persecution."  *Id.* (a).  The Lautenberg Amendment further requires

1   that "each decision to deny an application for refugee status . . . shall be in writing and shall

2   state, to the maximum extent feasible, the reason for the denial."  *Id.* (c); *see also* 8 U.S.C. §

3   1157 (note).

4          20.     In passing the Amendment, Senator Lautenberg and the Immigration

5   Subcommittee made clear that it was intended to secure admission of persecuted religious

6   minorities to the United States and to curtail the exercise of discretion to deny applicants only to

7   "isolated" and "extremely limited" cases:

> Mr. LAUTENBERG. Mr. President, under this amendment, a
> refugee applicant may choose to qualify for refugee status by
> demonstrating that he or she has been the victim one of several acts
> of mistreatment or prejudicial actions. I understand that the ranking
> member of the Immigration Subcommittee believes that the
> provision nonetheless reserves discretion to the Attorney General.
> Would he agree that any discretion which this allows the AG to deny
> cases is extremely limited in scope--that it is only for the isolated
> case which cannot now be foreseen--in which a conferral of refugee
> status, would not be appropriate, or otherwise not in the national
> interest?

> Mr. SIMPSON. Yes.

> Mr. LAUTENBERG. Is that the Chairman's view as well?

> Mr. KENNEDY. Yes, it is.

> 101 Cong. R. S11,525 (daily ed. Sept. 20, 1989).

18         21.     In 2004, Congress passed the Specter Amendment, adding Iranian religious

19   minorities to the categories of people eligible for the special protections of the Lautenberg

20   Amendment.  P.L. 108-199, Division E, Title II, § 213.

21         22.     Congress has reauthorized the Lautenberg and Specter Amendments consistently,

22   including as recently as March 23, 2018 as part of the FY 2018 Consolidated Appropriations

23   Act.  P.L. 115-141, Division J, §7034(l)(5).  Since its inception, approximately 30,000 Iranian

24   religious minorities have resettled in the United States under the Lautenberg Amendment.

25         23.     The passing and continued re-authorization of the Lautenberg and Specter

26   Amendments reflect the dire reality for religious minorities in Iran, a country that is

27   approximately 99% Muslim and proclaims Shi'a Islam to be its official religion.  Iranian law

28   prohibits Muslim citizens from changing or renouncing their religious beliefs, and the penal code

specifies the death sentence for proselytizing, attempts by non-Muslims to convert Muslims, and *sabb al-nabi* ("insulting the prophet").  The only Iranian state-recognized religious minorities are Zoroastrians, Jews, and Christians (excluding Evangelicals, but including Sabean-Mandaeans, although the group does not consider themselves to be Christian).

24.    The U.S. government has long recognized that Iran engages in particularly severe violations of religious freedom.  The U.S. Commission on International Religious Freedom ("USCIRF") has designated Iran as a "Country of Particular Concern" under the International Religious Freedom Act for 17 consecutive years.[2]  In 2017, the USCIRF found that in the preceding year:

    a.    "[T]he government of Iran engaged in systematic, ongoing, and egregious violations of religious freedom, including prolonged detention, torture, and executions based primarily or entirely upon the religion of the accused."

    b.    "Killings, arrests, and physical abuse of detainees have increased in recent years, including for religious minorities . . . who dissent or express views perceived as threatening the government's legitimacy."

    c.    Even government-recognized religious minorities face official harassment, intimidation, discrimination, arrests, and imprisonment.

25.    Last year, the U.N. Special Rapporteur on Iran also found that religious minorities in Iran face arbitrary arrests, harassment, and detention based on their religious beliefs.[3]

---

[2]    U.S. Commission on International Religious Freedom, Annual Report 2017 ("USCIRF") at 13, http://www.uscirf.gov/sites/default/files/2017.USCIRFAnnualReport.pdf.  "USCIRF is an independent, bipartisan U.S. federal government commission" that was created by created by the International Religious Freedom Act of 1998.  The USCIRF "reviews the facts and circumstances of religious freedom violations abroad and makes policy recommendations to the President, the Secretary of State, and Congress.  USCIRF Commissioners are appointed by the President and the Congressional leadership of both political parties."  United States Commission on International Religious Freedom, *About USCIRF*, http://www.uscirf.gov/about-uscirf (last visited April 12, 2018).

[3]    UN Special Rapporteur on the situation of human rights in the Islamic Republic of Iran, Report to the Human Rights Council, A/HRC/34/65 at para. 78 (Mar. 17, 2017) available at http://undocs.org/A/HRC/34/65.

**B.**     **Until the End of 2016, Nearly 100% of the Iranian Refugee Applicants Who Had Already Traveled to Vienna in The Vienna Lautenberg-Specter Program Were Admitted**

26.     Applications for refugee status generally are processed at a U.S. Department of State facility, such as a U.S. embassy.  However, because the United States does not have an embassy in Iran, religious minorities in Iran who seek to apply for refugee status under the Lautenberg Amendment may do so through the Vienna-based Lautenberg Specter program.[4]

27.     The application process for this program begins with a U.S.-based person with lawful status in the United States ("U.S. tie"), usually a close family member, submitting an application on behalf of refugee applicants in Iran.  The application is processed by HIAS, a non-profit organization based in Maryland, which has an agreement with the U.S. State Department to operate a Resettlement Support Center[5] in Vienna, Austria, to aid the Iranian Lautenberg-Specter applicants.

28.     Before the application can proceed, the U.S. tie and the primary refugee applicant must enter into a contract with HIAS to pay for all expenses associated with the application, including a non-refundable $330 administrative fee per case, to pledge financial support for the refugee applicants, and to cover any liabilities during processing in Vienna.  With the contract, the U.S. tie deposits a minimum of $3,000 per single applicant or $2,600 per applicant on a case for a family of two or more, plus more if there are unique circumstances such as health concerns.

29.     Once HIAS receives the application and the deposit and the refugee applicant passes an initial screening process, the Austrian government issues a visa to the refugee applicants at the request of the U.S. government, permitting them to travel to Austria to continue processing for the Vienna Lautenberg-Specter program.  At this point, most refugee applicants

---

[4]     This program is distinct from the original Lautenberg program, which applies to groups from Eurasia and the Baltics identified in the Lautenberg Amendment.

[5]     The DOS funds and manages nine Resettlement Support Centers around the world, which are offices operated by international and nongovernmental organizations (and one U.S. interests section), to prepare eligible refugee applications for U.S. resettlement consideration and provide support to refugee applicants.

1   sell their belongings and prepare to restart their lives in the United States.  Refugee applicants

2   are responsible for paying for their own travel.

3         30.     Once in Austria, HIAS assists the refugee applicants in preparing additional

4   application materials before USCIS officers interview the applicants.  Refugee applicants also

5   undergo medical screening, attend cultural orientation, and receive an assurance of sponsorship

6   from a resettlement agency in the United States that has agreed to assist with their resettlement.

7         31.     According to HIAS, Vienna Lautenberg-Specter applicants in the program prior

8   to the fall of 2016 typically stayed in Austria for only a few months before completing

9   processing.  Both HIAS and the U.S. State Department have reported that nearly 100% of

10   applicants who made it to Vienna prior to fall of 2016 were approved for admission to the United

11   States.[6]

12        **C.**     **Undisclosed Program Changes Caused Applications of Nearly 100 Iranian**

13                **Religious Minorities to Stall Since the End Of 2016 and to be Denied En**

14                **Masse in February 2018**

15         32.     The end of 2016, however, marked a significant change—and perhaps even the

16   beginning of the end—to the Vienna-based Lautenberg-Specter program.

17         33.     First, Lautenberg-Specter applicants arriving in Vienna began to experience

18   slower processing times.

19         34.     Then, in January 2017, President Trump issued Executive Order 13769—the first

20   of many Executive actions taken by the Trump Administration in an attempt to ban refugees

21   from the United States.  In response, and fearing that the United States would no longer allow

22   Iranians who travelled to Vienna for processing to depart for the United States, Austria revoked

23   the visas of Vienna Lautenberg-Specter applicants who had not yet left Iran and refused to issue

24   visas to new applicants.

25

26

27     [6]     Nina Shea, *America Shouldn't Send Endangered Religious Minority Refugees Back to Iran*, Hudson

28   Institute (Mar. 14, 2018), https://www.hudson.org/research/14210-america-shouldn-t-send-endangered-religious-minority-refugees-back-to-iran; Department of State, July-December, 2010 International Religious Freedom Report, Appendix G, https://www.state.gov/j/drl/rls/irf/2010_5/168190.htm.

35.     After Executive Order 13769 was enjoined by the courts, President Trump issued Executive Order 13780, which again sought to ban refugees from the United States.  The courts enjoined that Executive Order too, although the Supreme Court allowed it to take effect with respect to refugees without bona fide relationships to persons or entities in the United States pending appeal.  *Trump v. International Refugee Assistance Project*, 137 S. Ct. 2080 (2017). The Supreme Court instructed that a person with a "close familial relationship" to a U.S. person has a bona fide relationship.  *Id.* at 2088.  The Administration initially limited the application of "close familial relationship" to parents, parents-in-law, spouses, fiancés, children, adult sons or daughters, sons-in-law, daughters-in-law, siblings (whole or half), and step-relationships, but the Ninth Circuit held that grandparents, grandchildren, brothers-in-law, sisters-in-law, aunts, uncles, nieces, nephews, and cousins must be included within the meaning of a "close familial relationship."  *See Hawai'i v. Trump*, 871 F.3d 646, 658-59 (9th Cir. 2017).

36.     When Executive Order 13780 expired, the Administration issued an agency memorandum in October 2017 suspending refugee processing and admissions for nationals of certain countries, including Iran.  On December 23, 2017, the Western District of Washington enjoined this suspension for refugees with bona fide relationships.

37.     In January 2018, the Administration announced further changes to refugee processing that affect Iranian nationals.  Although there is yet little known about the content of those changes, one change mandated was to issue supplementary guidance and to train DHS officers on when it may be appropriate to deny refugee applicants as a matter of discretion based on the totality of the circumstances.

38.     By February 2018, Defendants had marooned approximately 100 Vienna Lautenberg Specter applicants (including both primary applicants and derivative relatives) in Austria, having stalled their applications for nearly one year.

39.     On or around February 19, 2018, DHS issued denials to approximately 87 of the 100 Iranian Lautenberg-Specter applicants who were in Vienna awaiting a decision on their applications.  At minimum, 38 of the applicants, including the Plaintiffs Does 3, 4 and 5, and their derivative relatives named on their applications, received identical Notices of Ineligibility.

1  On information and belief, additional applicants—other members of the putative class—also

2  received the same Notices of Ineligibility as part of the mass denial.

3          40.       The Notices of Ineligibility that the Plaintiffs received as part of the mass denial

4  was a notice with seven checkboxes, issued by the RAIO Directorate within USCIS.  The first

5  six checkboxes of the Notice of Ineligibility identify specific grounds of ineligibility, some of

6  which have additional line items and space for further explaining that ground of ineligibility.

7  The seventh box is a catchall box: "OTHER REASON(S)."

8

9  For the reason(s) indicated below, we have determined that you are not eligible for resettlement to the United States.

10      1.  ☐ SPECIAL HUMANITARIAN CONCERN.  You did not establish that you are of special humanitarian concern to the United States in order to qualify for access to the U.S. Refugee Admissions Program (USRAP).

11

12      2.  ☐ REFUGEE CLAIM.  You did not establish that you meet the definition of refugee pursuant to the Lautenberg (§ 599D (a) of the Foreign Operations Appropriations Act for FY1990) and Specter Amendments (§ 213 of the Consolidated Appropriations Act, 2004, Pub. L. No.108-199) because:

13          ☐ You did not assert a fear of remaining in, or returning to, your country of nationality.

14          ☐ You did not establish a credible basis for concern about the possibility of persecution.

15      3.  ☐ PERSECUTION OF OTHERS.  You did not establish that you have not ordered, incited, assisted, or otherwise participated in the persecution of others on account of race, religion, nationality, membership in a particular social group, or political opinion.

16

17      4.  ☐ FIRM RESETTLEMENT.  You did not establish that you are not firmly resettled in a third country.

18

19      5.  ☐ ADMISSIBILITY.  You failed to meet your burden of proof to establish you are admissible to the United States pursuant to the following INA § 212(a) (8 U.S.C. § 1182(a)) inadmissibility ground(s):

20                    _____

21          ☐ A waiver of the inadmissibility ground(s) cited above may be requested.
           ☐ A waiver is not available for the inadmissibility ground(s) cited above.

22

23

24

25

26

27

28

☐ You may not apply for a waiver of the inadmissibility ground(s) cited above at this time, because you have been denied on other grounds that a waiver cannot address. If you wish to have your decision reconsidered, you must submit a request for review of the decision (*see below*).

6. ☐ **CREDIBILITY.** After careful consideration of all available information (including evidence and testimony provided at your refugee status interview), your claim for refugee resettlement in the United States was found not credible because of concerns that relate to the credibility of the testimony or other evidence you provided regarding:

      ☐ Your qualification(s) to access the USRAP (Special Humanitarian Concern)
      ☐ Your refugee claim (Refugee Claim)
      ☐ Your involvement in acts of persecution or your involvement in an entity known to commit acts of persecution (Persecution of Others)
      ☐ Your status and/or resettlement in a third country (Firm Resettlement)
      ☐ Your admissibility to the United States (Admissibility)
      ☐ Other: _____

During your interview, the USCIS officer informed you of concerns about the credibility of your testimony and provided you an opportunity to explain the following:

      ☐ Inconsistency(ies) within your testimony before USCIS
      ☐ Inconsistency(ies) between your testimony and other evidence (e.g. country conditions, other testimony, other case file documents, etc.)
      ☐ Insufficiently detailed testimony
      ☐ Part(s) of your testimony or other evidence was determined to be implausible
      ☐ Your demeanor, lack of candor, or unresponsiveness
      ☐ Your failure to provide other reasonably available evidence necessary to corroborate your eligibility
      ☐ Other: _____

Because you were unable to provide a reasonable explanation for these problems, it has been determined that your testimony lacked credibility on those facts.

7. ☒ **OTHER REASON(S):** After review of all the information concerning your case, including your testimony, supporting documentation, background checks, country conditions, and other available information, your application for refugee resettlement to the United States under INA §207 has been denied as a matter of discretion.

41.     DHS did not select any of the first six checkboxes, and instead, DHS selected the seventh checkbox. In the space provided, DHS wrote identical language in all of the Plaintiffs' Notices of Ineligibility:

> "After review of all the information concerning your case, including your testimony, supporting documentation, background checks, country conditions, and other available information, your application for refugee resettlement to the United States under INA §207 has been <u>denied as a matter of discretion</u>." (Emphasis added).

42.     DHS provided no further reasons for the denial in these Notices of Ineligibility and failed to state the reason for the denial "to the maximum extent feasible," as it is expressly

1 | required to do under the Lautenberg Amendment.  The denials not only failed to meet that
2 | statutory standard, but also fell short of USCIS regulations at 8 C.F.R. § 103.2(b)(16) and USCIS
3 | Adjudicators' Field Manual, which contain instructions for disclosing to the applicant the basis
4 | of a negative decision on an immigration benefit application.

5 | 43.   The USCIS policy manual on discretion, dated December 2012, also mandates
6 | that absent any negative factors, discretion must be exercised positively.  When discretion is
7 | exercised negatively, the "decision must contain a complete analysis of the factors considered in
8 | exercising discretion, with a specific and cogent explanation of why you exercised discretion
9 | negatively."

10 | 44.   Notably, although DHS has indicated when a denial is security-related in denials
11 | that it has issued in other refugee programs, these Notices of Ineligibility did *not* indicate that the
12 | denials were security-related.  Nor did the Notices indicate that the denials were based on
13 | inadmissibility, such as criminal or security-related grounds of inadmissibility.

14 | 45.   The Notices of Ineligibility also informed the Vienna Lautenberg-Specter
15 | applicants that they have 90 days from the date of the notice to submit a Request for Review
16 | ("RFR") of their application and that USCIS will accept only one request that is postmarked or
17 | received by that date.

18 | 46.   The Notices of Ineligibility direct the applicant to set forth in the RFR: "(1) a
19 | detailed account explaining how a significant error was made by the adjudicating officer, or (2)
20 | new information that would merit a change in the determination."  For refugee applicants who
21 | received Notices of Ineligibility dated February 19, 2018, the deadline to submit a RFR is May 20,
22 | 2018.

23 | 47.   USCIS has reported in the past that RFRs are frequently determined in favor of the
24 | applicant.  But because Plaintiffs' and putative class members' Notices of Ineligibility do not
25 | include any information on why their refugee applications were denied, it does not provide them
26 | with any information with which they could in fact pursue a RFR.  In effect, Plaintiffs have no
27 | way of pursuing the administrative review process that Defendants themselves created and offered.

28 |

48.     On information and belief, Defendants adopted and implemented program changes to the Vienna Lautenberg-Specter program for Iranians that are currently in effect and caused this mass denial of refugee applications.  The U.S. State Department has confirmed in response to media requests that changes to the program caused the mass denials and the drop in the admission rate under the program.[7]  The program changes were final agency actions that had direct legal consequences for nearly 90 refugee applicants and their family members.

49.     Neither DHS nor DOS, nor any other agency, engaged in notice and comment rulemaking before implementing the program changes.

50.     Neither DHS nor DOS, nor any other agency, has provided a reasoned explanation for the program changes.

**D.     Named Plaintiffs and Putative Class Members Have Been Harmed By the Mass Denials**

51.     Named Plaintiffs and putative class members in Vienna are now in a dire situation.  Even though the principal refugee applicants and the U.S. ties signed a contract with HIAS stating that the refugee applicants would be permitted to stay in Austria while they pursue RFRs, the refugee applicants' visas have expired and they are at risk of being deported to Iran.

52.     Plaintiffs' fears of deportation to Iran are reasonable.  Iranian religious minorities who return to Iran after seeking refugee status in the United States are particularly vulnerable to governmental harassment, imprisonment, and abuse due to their attempt to flee the country.

**1.     Does 1 & 3**

53.     Jane Doe 1 ("Doe 1") is a U.S. Citizen residing in San Jose, California, who sponsored the Vienna Lautenberg-Specter applications of her diabetic daughter, Jane Doe 3 ("Doe 3"), and Doe 3's eight-year-old son, each of whom are Mandaean.

54.     Doe 1, her husband, and four of her five children came to the United States through the Vienna Lautenberg-Specter program between 2004 and 2008.  Based on that experience, Doe 1, Doe 3, and their family believed that the program would provide a path for

---

[7]     Shea, *see supra*; Miriam Jordan, *Spurned by U.S. and Facing Danger Back Home, Iranian Christians Fear the Worst*, New York Times (Mar. 1, 2018), https://www.nytimes.com/2018/03/01/us/iranian-christian-refugees.html.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

COMPLAINT

1   Doe 3 and Doe 3's son to escape religious discrimination against Mandaeans in Iran and safely

2   reunite with their family in America.  Doe 1 is very close with her daughter Doe 3.  They are best

3   friends and speak nearly every day.  Due to their Mandaean religion, Doe 3 faced religious

4   discrimination in Iran, including people throwing rocks during religious baptisms and her son

5   being expelled from school for his religion.

6         55.    Doe 1 submitted an application for the Vienna Lautenberg Specter program on

7   behalf of Doe 3 and her grandson and paid a $5,200 deposit to HIAS to cover the administrative

8   fee and her daughter and grandson's living expenses during what she thought would be a short

9   stay in Vienna.  Doe 3 received her visa to travel from Iran to Vienna on or around October 25,

10  2016.  Before leaving Iran, Doe 3 and her husband gave up their apartment and sold their

11  appliances because they believed she was never coming back.

12        56.    Once in Vienna, Doe 3 was interviewed twice by Defendant DHS.  Contrary to

13  their expectations, on February 19, 2018, Doe 3 and her son received Notices of Ineligibility with

14  language identical to that detailed in paragraphs 40 and 41 above—i.e., they were "denied as a

15  matter of discretion."  The lack of explanation in the denial has critically impaired their ability to

16  submit a meritorious RFR of the denial.  In fact, when Doe 3 submitted an RFR shortly

17  thereafter, it was denied on the basis that it failed to provide new information or identify an error

18  in the original denial.

19        57.    The trauma of the denials has had grievous physical and psychological

20  repercussions for Does 1, 3, and their family.  Doe 1 was devastated by the denial; she can barely

21  sleep, has become depressed, and her blood pressure fluctuates.  Doe 3 is terrified of retaliation

22  in Iran if her and her family are forced to return after fleeing to the United States as a refugee and

23  has become depressed as well.

24        **2.**    **Does 2 & 4**

25        58.    John Doe 2 ("Doe 2") is a U.S. Citizen residing in West Chicago, Illinois, who

26  sponsored the Lautenberg-Specter applications for his mother, Jane Doe 4 ("Doe 4"), and his

27  developmentally disabled youngest brother.  Doe 4's oldest son was separately sponsored by

28  another brother in the U.S. and is similarly stranded in Vienna with Doe 4.

59.     Doe 2 and two of his siblings came to the United States through the Vienna-based Lautenberg Specter program and therefore he believed that the program would allow his mother and youngest brother to come to the United States for freedom to practice their Mandaean religion and access to humane medical care for his youngest brother.  Doe 2 and Doe 4 are very close and usually speak every other day.  The entire family is Mandaean and Doe 4 faced religious discrimination in Iran, including watching her children face difficulties enrolling in school and finding jobs due to pervasive prejudice against Mandaeans.

60.     Doe 2 submitted an application for the Vienna Lautenberg Specter Program on behalf of his mother and youngest brother and deposited approximately $8,600 with HIAS to cover the application fee and care and maintenance expenses for his mother and youngest brother while in Vienna, including an extra $3,000 to cover his brother's heightened needs.  Before leaving Iran in the fall of 2016, Doe 4 sold all of her belongings because she believed she would not return.

61.     Once in Vienna, Doe 4 was interviewed by Defendant DHS, completed two medical checks, and was scheduled to attend a cultural orientation.  HIAS told Doe 4 that her case was a priority because of her son's disability.

62.     On February 19, 2018, however, Doe 4 received a Notice of Ineligibility with language identical to that detailed in paragraphs 40 and 41 above—i.e., they were "denied as a matter of discretion."  Her youngest son received an identical denial letter around that time, as did her oldest son.  The lack of explanation in the denials critically impairs their ability to submit meritorious RFRs.  Doe 4 submitted letters from her and Doe 2 to HIAS asking to be resettled to the United States, but they were denied shortly thereafter on the basis that the letters failed to provide new information or identify an error in the original denial.

63.     Doe 2 was very distressed to learn of the denials and is concerned about Doe 4 and his brothers' dire living situation in Vienna.  Doe 4 is scared to leave her apartment in Vienna and barely has money for rent and diapers for her youngest son.  HIAS told Doe 4 that she may soon need to move to a refugee camp with her youngest son.  Doe 4 is concerned about

1    retaliation if forced to return to Iran because they may be viewed as spies for HIAS, a Jewish

2    organization.

3                    **3.    Doe 5**

4            64.    Jane Doe 5 ("Doe 5") is a national of Iran and a Christian of Armenian ethnic

5    descent.  She has been stranded in Vienna with her elderly father and mentally and physically

6    disabled son for over one year.

7            65.    Doe 5's sister-in-law submitted an application on behalf of Doe 5 and Doe 5's

8    father and son because Doe 5 believed that the Lautenberg-Specter program would be a way for

9    her and her family to flee religious persecution in Iran, which intensified after she was widowed,

10   and to reunite with her in-laws in the United States.

11           66.    Before leaving Iran, Doe 5 sold most of the family's possessions because she

12   believed they would not be returning.  She spent approximately $1,500 on flights and travel

13   expenses and paid about $1,000 to ship personal belongings to family in the United States.

14           67.    In or around February 2017, shortly after she had arrived in Vienna, Doe 5 was

15   interviewed by Defendant DHS and completed medical checks.  In April 2017, Doe 5's father

16   was approved for resettlement in the United States, but he did not want to travel without Doe 5

17   and her son.

18           68.    Then, on February 19, 2018, Doe 5, her father, and her son all received Notices of

19   Ineligibility with identical language to that detailed in paragraphs 40 and 41 above—i.e., they

20   were "denied as a matter of discretion."  The lack of explanation in the denial critically impairs

21   Doe 5's ability to submit a meritorious RFR before the 90-day deadline, which for Doe 5 and her

22   family is May 20.

23           69.    The denials have left Doe 5 and her family in terrible circumstances.  Doe 5's son

24   currently lacks medical care for his repeated epileptic attacks and congenital hydrocephalus, and

25   the family has run out of savings.  Doe 5 is concerned about deportation to Iran, where she fears

26   imprisonment or torture in retaliation for fleeing as refugees and for associating with HIAS, a

27   Jewish organization.

28

# VI.    CLASS ALLEGATIONS

70.    Plaintiffs bring Counts 1-4 and 6 of this action as a class action pursuant to Federal Rule of Civil Procedure 23, on behalf of themselves and all other similarly situated persons.  This class includes:

> All Iranian refugees who (1) applied for refugee admission to the United States under the Lautenberg Amendment, whether as a principal applicant or derivative relatives; (2) traveled to Vienna, Austria, for processing; and (3) received denials from the United States government in or after February 2018 with the sole explanation that their application was denied "as a matter of discretion," and their U.S.-based Close Family Members who served as their U.S. ties.

71.    "Close Family Member" as used in the class definition is defined as parents, parents-in-law, spouses, fiancés, children, adult sons or daughters, sons-in-law, daughters-in-law, siblings (whole or half), and step-relationships, grandparents, grandchildren, brothers-in-law, sisters-in-law, aunts, uncles, nieces, nephews, and cousins.

72.    Separate subclasses may be appropriate for the proposed class defined above.

73.    Joinder is impracticable not only because the proposed class is so numerous, but also because many members of the proposed class are currently in Vienna, Austria and are both physically and financially unable to access the U.S. court system to pursue an action on their own.

74.    The members of the proposed class share common issues of fact and law, including but not limited to:  (1) whether the Notices of Ineligibility denying refugee status "as a matter of discretion" violate the Lautenberg and Specter Amendments, the Administrative Procedure Act, and the *Accardi* doctrine; (2) whether relief is available under those provisions and the Mandamus Act; and (3) whether the undisclosed program change violated the Administrative Procedure Act.

75.    The claims or defenses of the named Plaintiffs are typical of the claims or defenses of members of the proposed class.

76.    The named Plaintiffs will fairly and adequately protect the interests of the proposed class and any subclasses.  The named Plaintiffs have no interest that is now or may

1    later be antagonistic to the interests of the proposed class.  The attorneys representing the

2    Plaintiffs include experienced attorneys who are considered able practitioners in federal civil

3    litigation, including complex litigation, and should be appointed class counsel.

4         77.    Defendants have acted on grounds generally applicable to the proposed class,

5    thereby making final injunctive and declaratory relief appropriate to the class as a whole.  The

6    proposed class may therefore be properly certified under Federal Rule of Civil Procedure 23.

7    **VII.    CAUSES OF ACTION**

8                        **FIRST CLAIM FOR RELIEF**
                          **DECLARATORY JUDGMENT**
9              **(On Behalf of All Plaintiffs, Including the Class, Against All Defendants)**

10        78.    Plaintiffs re-allege and incorporate by reference herein each and every allegation

11   contained in paragraphs 1 through 77 above.

12        79.    An actual controversy exists between the parties, because the Defendants seek to

13   rely upon the Notices of Ineligibility issued to Plaintiffs and Plaintiffs seek a determination that

14   those Notices of Ineligibility are invalid and unlawful.

15        80.    For the reasons stated herein and pursuant to 28 U.S.C. § 2201-02, Plaintiffs ask

16   the Court to declare that the Notices of Ineligibility issued to them were unlawful.

17                      **SECOND CLAIM FOR RELIEF**
     **LAUTENBERG AMENDMENT & ADMINISTRATIVE PROCEDURE ACT**
18         **(On Behalf of All Plaintiffs, including the Class, Against DHS Defendants)**

19        81.    Plaintiffs re-allege and incorporate by reference herein each and every allegation

20   contained in paragraphs 1 through 80 above.

21        82.    Each of the Notices of Ineligibility issued to Plaintiffs is a final agency action that

22   violates the Lautenberg Amendment.  8 U.S.C. § 1157 (note).

23        83.    The Notices should therefore be set aside as unlawful under 5 U.S.C. § 702 and 5

24   U.S.C. § 706(2).

25        84.    In issuing the Notices of Ineligibility, Defendants unlawfully withheld action

26   required by the Lautenberg Amendment, 8 U.S.C. § 1157 (note), and therefore the Court should

27   compel agency action unlawfully withheld under 5 U.S.C. § 702 and 5 U.S.C. § 706(1).

28

1

2

**THIRD CLAIM FOR RELIEF**
***ACCARDI* DOCTRINE & ADMINISTRATIVE PROCEDURE ACT**
**(On Behalf of All Plaintiffs, Including the Class, Against DHS Defendants)**

3       85.     Plaintiffs re-allege and incorporate by reference herein each and every allegation

4  contained in paragraphs 1 through 84 above.

5       86.     Each of the Notices of Ineligibility issued to Plaintiffs is a final agency action that

6  violate agency procedures, including those at 8 C.F.R. § 103.2(b)(16).

7       87.     The Notices should therefore be set aside under the principle articulated in *United*

8  *States ex. rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954).

9       88.     The Notices should also be set aside as unlawful under 5 U.S.C. § 702 and 5

10  U.S.C. § 706(2).

11       89.     In issuing the Notices of Ineligibility, Defendants unlawfully withheld action

12  required by the agency procedures and therefore the Court should compel agency action

13  unlawfully withheld under 5 U.S.C. § 702 and 5 U.S.C. § 706(1).

14

15

**FOURTH CLAIM FOR RELIEF**
**MANDAMUS ACT**
**(On Behalf of All Plaintiffs, including the Class, Against DHS Defendants)**

16       90.     Plaintiffs re-allege and incorporate by reference herein each and every allegation

17  contained in paragraphs 1 through 89 above.

18       91.     Plaintiffs are entitled to a writ of mandamus under the Mandamus Act, 28 U.S.C.

19  § 1361, to compel an officer or employee of the United States or any agency thereof to perform a

20  duty owed to Plaintiffs.  Plaintiffs have no other means to compel Defendants to perform the

21  statutory duties owed to them under the Lautenberg Amendment and the duties imposed on them

22  by their agency procedures.

23

24

**FIFTH CLAIM FOR RELIEF**
**FIFTH AMENDMENT TO THE U.S. CONSTITUTION**
**(On Behalf of Does 1 and 2 Against DHS Defendants)**

25       92.     Plaintiffs re-allege and incorporate by reference herein each and every allegation

26  contained in paragraphs 1 through 91 above.

27       93.     Does 1 and 2 have a liberty interest in the companionship and society of their

28  family members who are now stranded in Vienna.

94.    Defendants' conduct in depriving Does 1 and 2 of their liberty interest violates the Procedural Due Process Clause of the Fifth Amendment to the U.S. Constitution.

### SIXTH CLAIM FOR RELIEF
### ADMINISTRATIVE PROCEDURE ACT
**(On Behalf of All Plaintiffs, including the Class, Against All Defendants)**

95.    Plaintiffs re-allege and incorporate by reference herein each and every allegation contained in paragraphs 1 through 94 above.

96.    Defendants' conduct violates the Administrative Procedure Act because the program changes that resulted in the mass denials constitute final agency actions that were unlawful, including because they were "arbitrary, capricious, an abuse of discretion, or not in accordance with law."  The agency actions should therefore be set aside pursuant to 5 U.S.C. § 702 and 5 U.S.C. § 706(2).

### PRAYER FOR RELIEF

WHEREFORE the petitioners respectfully request that the Court:

A.    Certify the proposed Class pursuant to Fed. R. Civ. P. 23;

B.    Declare that Notices of Ineligibility stating that Plaintiffs' refugee applications are denied as "as a matter of discretion," without further statement of the reason for the denial, fail to comply with the Lautenberg Amendment and applicable agency procedures;

C.    Order injunctive and equitable relief requiring Defendants to comply with the Lautenberg Amendment and applicable agency procedures, including by reissuing Notices of Ineligibility that "state, to the maximum extent feasible, the reason for the denial" and that give an opportunity to submit Requests for Reviews based on the reissued Notices;

D.    Declare unlawful the program changes that resulted in the mass denials;

E.    Set aside as unlawful the program changes that resulted in the mass denials and any subsequent agency actions that relied on such unlawful program changes;

F.    Award Plaintiffs reasonable attorney's fees and costs for this action; and

G.    Grant any other relief the Court deems just and proper.

1    Dated:  April 18, 2018                Respectfully submitted,

2

3                                          By:    /s/ *Belinda S Lee*

4                                          LATHAM & WATKINS LLP
                                               Belinda S Lee
5                                              Oliver Rocos
                                               Thomas Golding
6                                              Ariel E. Rogers

7                                          INTERNATIONAL REFUGEE
                                           ASSISTANCE PROJECT
8                                              Mariko Hirose*
                                               Kathryn C. Meyer*
9                                          * *pro hac vice* applications forthcoming

10                                         *Attorneys for Plaintiffs Does 1-5*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28