1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| JANE DOE 1, ET AL.,<br><br>    Plaintiffs,<br><br>  v.<br><br>KIRSTJEN NIELSEN, et al.,<br><br>    Defendants. | Case No.  18-cv-02349-BLF<br><br>**ORDER (1) GRANTING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION; AND (2) GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>[Re:  ECF 25, 60] |

   This Court recognizes the limits of judicial reviewability, including the longstanding principle that no court has the authority to examine the decision to let aliens into the United States absent express authorization from Congress.  But that is not what this case is about.  The narrow issue presented in this case is whether the content of Notices of Ineligibility issued by the Department of Homeland Security ("DHS") denying the applications of approximately 87 Iranian refugees failed to comply with the Lautenberg Amendment and other applicable law.

   For the reasons that follow, the Court finds that Plaintiffs' claims are suitable for class resolution, and GRANTS Plaintiffs' motion for class certification.  The Court also GRANTS Plaintiffs' motion for partial summary judgment, finding that the Notices of Ineligibility denying Plaintiffs' refugee applications "as a matter of discretion" violate the Lautenberg Amendment and the *Accardi* doctrine.  As discussed below, the Court sets aside the February 2018 Notices of Ineligibility pursuant to 5 U.S.C. §§ 702, 706(2).  DHS is ORDERED to issue notices containing their determinations to re-open processing or to deny Plaintiffs' refugee applications **within 14 days of this Order.**  The Court takes no position on, and has no authority to review, the ultimate determination of Plaintiffs' applications, so long as any re-issued Notices comply with the Lautenberg Amendment and agency procedures.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

## I.     BACKGROUND

Plaintiffs bring this putative class action against DHS[1] challenging what Plaintiffs describe as an unprecedented mass denial of refugee status to approximately 87 Iranian Christians, Mandaeans, and other religious minorities who had applied for entry into the United States under the Vienna-based Lautenberg-Specter program and were told without further explanation that their applications were "denied as a matter of discretion."  The five named Plaintiffs are three Iranian refugees currently in Vienna, Austria, and two United States citizens who served as the U.S. tie for two of the named Plaintiffs.[2]  The operative Complaint was filed on April 18, 2018, setting forth six claims for relief challenging the content of the Notices of Ineligibility issued to Plaintiffs in February 2018, which Plaintiffs argue fail to comply with the Lautenberg Amendment and applicable agency procedures. *See generally* ECF 1 ("Compl.").  In light of the time-sensitive nature of Plaintiffs' claims, the Court set an expedited briefing and hearing schedule on Plaintiffs' motions for class certification and partial summary judgment. ECF 59.  The Court held a hearing on Plaintiffs' motions on June 22, 2018.

Before addressing the merits of Plaintiffs' motions and DHS's overarching defense that Plaintiffs' claims are not justiciable, the Court provides an overview of the law governing the admission of Iranian refugees to the United States and the personal experiences of the named Plaintiffs.

### A.     Refugee Admission and The Lautenberg Amendment

The admission of refugees to the United States is authorized by 8 U.S.C. § 1157, which provides in relevant part that the "Attorney General may, in the Attorney General's discretion . . . admit any refugee who is not firmly resettled in any foreign country, is determined to be of special humanitarian concern to the United States, and is admissible . . . as an immigrant." 8 U.S.C. § 1157(c)(1).  By its plain text, the statute commits refugee admission to agency discretion—

---

[1] For purposes of this Order, "DHS" or "Defendants" refer to Department of Homeland Security, Secretary Kirstjen Nielsen, Director L. Francis Cissna, and Assistant Director Jennifer B. Higgins. Plaintiffs also bring Count 6 against the Department of State Defendants, but that claim for relief is not before the Court on Plaintiffs' motion for partial summary judgment.  *See* Compl. ¶¶ 95-96.
[2] The Court previously granted Plaintiffs' unopposed motion to proceed under pseudonyms.  *See* ECF 55.

United States District Court
Northern District of California

1    authority that now rests with the Secretary of the Department of Homeland Security. *See* 6 U.S.C.

2    § 557.  Accordingly, no foreign individual is entitled to resettlement in the United States under

3    this statute.  Moreover, § 1157 is silent with respect to judicial review of refugee status

4    determinations.  Courts have thus held that the absence of procedures for judicial review in section

5    1157 "demonstrate a Congressional intent to preclude judicial review at the behest of aliens

6    beyond the borders of the United States." *Haitian Refugee Ctr., Inc. v. Baker*, 953 F.2d 1498, 1506

7    (11th Cir. 1992).  The promulgated regulations similarly do not provide for any formal appeal of a

8    refugee status determination.  *See* 8 C.F.R. § 207.4 ("There is no appeal from a denial of refugee

9    status under this chapter.")

10       In 1989, Congress enacted the Lautenberg Amendment as part of the FY1990 Foreign

11   Operations Appropriations Act in order to facilitate the refugee admission of persecuted categories

12   of individuals to the United States.  *See* P.L. 101-167, Tile V, § 599D, 103 Stat. 1195 (1989).  The

13   Amendment designated categories of individuals for whom less evidence would be needed to

14   establish refugee status, including Jews and Christians from the Former Soviet Union.  Congress

15   passed the Specter Amendment in 2004, adding Iranian religious minorities to the enumerated

16   categories of individuals eligible for the Lautenberg Amendment's special protections.  P.L. 108-

17   199, Division E, Title II, § 213.  Congress has reauthorized the Lautenberg and Specter

18   Amendments as recently as March 23, 2018.  Pub. L. 115-141, §7034(k)(5), 103 Stat. 135 (2018).

19       Nothing in the Lautenberg Amendment or Specter Amendment explicitly alters the

20   discretionary authority of DHS to grant or deny refugee applications pursuant to § 1157.[3]

21   However, the Lautenberg Amendment requires that "[e]ach decision to deny an application for

22   refugee status of an alien who is within a category established under this section shall be in writing

23   and shall state, to the maximum extent feasible, the reason for the denial." P.L. 101-167, Title V,

24   § 559D; *see also* 8 U.S.C. § 1157(c) (note).

25

26   _____

27   [3] The Court notes that Plaintiffs have provided legislative history indicating that the discretion to
     deny applications under the Lautenberg Amendment "is extremely limited in scope—that is only
     for the isolated case which cannot now be foreseen—in which a conferral of refugee status, would

28   not be appropriate, or otherwise not in the national interest[.]" Declaration of Belinda S. Lee ("Lee
     Summary Judgment Decl."), Exh. A, ECF 26-1.

United States District Court
Northern District of California

1   In practice, persecuted religious minorities in Iran seeking admission to the United States

2   may apply for refugee status under the Vienna-based Lautenberg-Specter Program. *See*

3   Declaration of Samuel Witten ("Witten Class Cert. Decl.") ¶ 4, ECF 63. The application process

4   for the Lautenberg-Specter Program begins with an individual lawfully living in the United States,

5   called a "U.S. tie," who submits an application on behalf of a member of an Iranian religious

6   minority seeking refugee status. *Id.* ¶ 7. The U.S. tie undergoes significant expense by entering

7   into a contract to pay for all costs associated with the application, including administrative fees

8   and living expenses in Vienna for the applicant while applications are under review. *Id.* Such

9   expenses include paying a deposit of between $2,600 and $3,000, or more depending on the

10  unique circumstances, per refugee applicant. *See* Declaration of Jane Doe 1 ("Doe 1 Decl.") ¶ 5,

11  ECF 65; Declaration of John Doe 2 ("Doe 2 Decl.") ¶ 6, ECF 66; Declaration of Jane Doe 5 ("Doe

12  5 Decl.") ¶ 7, ECF 69. These costs are a financial burden and hardship on many U.S. ties, who are

13  often sponsoring several refugee applicants in a family. *Id.*

14  Because the United States does not have an embassy in Iran, the Austrian Government

15  interacts with the Iranian applicants at the Austrian Embassy in Tehran. Witten Class Cert. Decl.

16  ¶ 8. After an Austrian official meets with the applicant in Iran and the applicant passes an initial

17  screen, the Austrian embassy issues a visa to eligible refugee applicants for the purpose of

18  traveling to Vienna, Austria to continue to processing of the refugee application by U.S.

19  authorities. *Id.* At this point in the process, the refugee applicants do not anticipate ever returning

20  to Iran where they face religious persecution, and typically sell almost all of their possessions

21  before leaving. *See* Declaration of Jane Doe 3 ("Doe 3 Decl.") ¶ 10, ECF 67; Declaration of Jane

22  Doe 4 ("Doe 4 Decl.") ¶ 12, ECF 68; Doe 5 Decl. ¶ 9.

23  Once the applicant has traveled to Austria, the program is managed by the U.S. State

24  Department who has contracted with HIAS, a non-profit organization founded as the Hebrew

25  Immigrant Aid Society, to operate a refugee Resettlement Support Center in Vienna. Witten Class

26  Cert. Decl. ¶¶ 5, 9. Applicants are ultimately interviewed by officers from the U.S. Citizenship

27  and Immigration Services ("USCIS"), of the Department of Homeland Security, who reviews and

28  adjudicates the refugee applications. *Id.* Before traveling to the United States, applicants undergo

United States District Court
Northern District of California

1  medical screening, attend cultural orientation, and receive an assurance of sponsorship from a

2  resettlement agency in the U.S. that agrees to assist with resettlement.  *Id.*  If granted admission by

3  DHS, the applicant then travels to the United States.

4       **B.**     **Named Plaintiffs and the February 2018 Notices of Ineligibility**

5       Despite the historically high approval rate of refugee applications under the Lautenberg-

6  Specter Program, processing of refugee applicants who had already traveled to Vienna under the

7  program began to stall in the fall of 2016.  *See* Lee Summary Judgment Decl., Exh. E, ECF 26-5.[4]

8  In January 2017, President Trump began issuing Executive Orders and policies restricting the

9  entry into the U.S. of foreign nationals from designated countries, including Iran, that had been

10  previously identified by Congress or prior administrations as posing a heightened risk of terrorism.

11  *See Trump v. Hawaii*, No. 17-965, 2018 WL 3116337, at *5 (U.S. June 26, 2018).[5]  Due to the

12  uncertainty that resulted from the first Executive Order regarding the admission of Iranian

13  immigrants and refugees into the United States, Austria stopped issuing visas to Iranian applicants

14  in the Lautenberg-Specter program.  *See* Lee Summary Judgment Decl., Exh. H, ECF 26-8.

15  Although the admission of refugees from Iran to the U.S. did not completely come to a halt, in just

16  one year the rate of admission has slowed from 1,061 in the first quarter of FY2017 (October-

17  December 2016) to 29 in the first quarter of FY2018 (October-December 2017), down to 2

18  admissions in the most recent quarter of FY 2018 (January-March 2018).  *See* Lee Summary

19  Judgment Decl. Exh. I at 1, 12, 14, ECF 26-9.

20       In particular, this case centers around Notices of Ineligibility issued by USCIS on or about

21  February 19, 2018, denying the applications of approximately 87 of the 100 Lautenberg-Specter

22  _____

23  [4] To put the success of the program in perspective, approximately 30,000 Iranians have resettled in the United States under the Lautenberg Amendment.  *See* Lee Summary Judgment Decl. Exh. F,

24  ECF 26-6; *see also* Lee Class Cert. Decl. Exhs. D-E, ECF 61.  Prior to the fall of 2016, processing of refugee applications in Vienna took only a few months from the date of the applicant's arrival

25  in Vienna, and nearly 100% of refugees eligible for the Lautenberg-Specter Program were accepted for admission to the U.S.  *See* Lee Summary Judgment Decl., Exhs. E-F; Witten

26  Summary Judgment Decl. ¶ 11, ECF 27.
[5] The Supreme Court's recent decision in *Trump v. Hawaii* came down a few days after the

27  hearing on Plaintiffs' pending motions in this case.  Although the Court does not find that *Trump v. Hawaii* impacts the legal issues raised in Plaintiffs' motions, the President's restrictions on the

28  admission of foreign nationals from Iran is highly relevant to the factual context in which Plaintiffs' claims arise.

refugee applicants who had already traveled to Vienna under the program.  *See* Lee Summary Judgment Decl. Exh E; *see also* Declaration of Joanna Ruppel ("Ruppel Decl.") ¶ 4, ECF 71-1, 72-1.  Individuals familiar with the Lautenberg-Specter program represent that such a "mass denial" of refugee admissions represents an "extreme departure from how the program has run in the past and certainly is inconsistent with the way the program has operated under both Democratic and Republican Administrations." Declaration of Samuel Witten ("Witten Summary Judgment Decl.") ¶ 12, ECF 27.

Three of the five named Plaintiffs in this case are Iranian refugee applicants who were handed the February 2018 Notices of Ineligibility at issue after they had already left their homes in Iran and traveled to Vienna under the Lautenberg-Specter Program.[6]  The Notices of Ineligibility form that Plaintiffs received contained seven checkbox options for explaining the reason for determining that the applicant is not eligible for resettlement to the United States.  *See* Doe 3 Decl. Exh A; Doe 4 Decl. Exh. A; Doe 5 Decl. Exh. A.  The Notices issued to Plaintiffs checked only the seventh box titled "OTHER REASON(S)" and provided as follows:

> After review of all the information concerning your case, including your testimony, supporting documentation, background checks, country conditions, and other available information, your application for refugee resettlement to the United States under [8 U.S.C. § 1157] has been denied as a matter of discretion.

*See id.*; *see also* Bates Decl. ¶ 9.

The Notices of Ineligibility also advised the applicants of the availability of an informal request for review ("RFR") process, stating:

> Based on the reason or reasons indicated above, your request for resettlement to the United States is denied.  There is no appeal from a denial of an application for refugee status.  USCIS may exercise its discretion to review a case upon timely receipt of a request for review from the principal applicant. The request must include one or both of the following: (1) a detailed account explaining how a significant error was made by the adjudicating officer or (2) new information that would merit a change in the

---

[6] Plaintiffs present evidence that the applications of at least 38 of the 87 individuals denied admission in February 2018 received identical Notices of Ineligibility.  *See* Declaration of Adam Bates ("Bates Decl.") ¶ 6, ECF 64.

United States District Court
Northern District of California

> determination. Please note that if you provide new information in your request for review, you must provide an explanation about why you did not provide this information at the interview. USCIS will only accept one request that is postmarked or received by USCIS or the RSC within 90 days from the date of this notice.

*See* Doe 3 Decl. Exh. A; Doe 4 Decl. Exh. A; Doe 5 Decl. Exh. A; Bates Decl. ¶ 10.[7]

Plaintiffs filed this putative class action on April 18, 2018, seeking to represent a class defined as:

> All Iranian refugees who (1) applied for refugee admission to the United States under the Lautenberg Amendment, whether as a principal applicant or derivative relatives; (2) traveled to Vienna, Austria, for processing; and (3) received denials from the United States government in or after February 2018 with the sole explanation that their application was denied "as a matter of discretion," and their U.S.-based Close Family Members who served as their U.S. ties.

*See* Compl. ¶ 70.[8] "Close Family Member" as used in the class definition is defined as parents, parents-in-law, spouses, fiancés, children, adult sons or daughters, sons-in-law, daughters-in-law, siblings (whole or half), and step-relationships, grandparents, grandchildren, brothers-in-law, sisters-in-law, aunts, uncles, nieces, nephews, and cousins. *Id.* ¶ 71.

The representative Plaintiffs in this case, who have been granted permission to proceed anonymously, are three Iranian refugee applicants currently in Vienna who received Notices of Ineligibility in February 2018, and two U.S. ties for two of the named Plaintiffs. Plaintiff Jane Doe 1 ("Doe 1") is a U.S. citizen living in San Jose, California, who served as a U.S. tie for her adult daughter, Plaintiff Jane Doe 3 ("Doe 3"), and young grandson, who are Mandaeans at risk of religious persecution in Iran. *See* Doe 1 Decl. ¶¶ 1-2, 8-10. Doe 3 received a February 2018

---

[7] During the course of this litigation, the parties stipulated to extend the deadline for putative class members to file or re-file their RFRs for an additional 120 days beyond the original deadline. *See* ECF 54. DHS states in the opposition brief that USCIS will allow for receipt of one RFR that is postmarked or received by USCIS or the Resettlement Support Center no later than 120 days from June 4, 2018, or 120 days from the date that the request for review was originally due—whichever is later. *See* Opp'n to MSJ at 4-5; Declaration of Stacey I. Young ("Young Decl."), Exh. A., ECF 71-2.

[8] Counts 1-4 and 6 of the Complaint are brought as a class action. Count 5 for violation of the due process clause of the Fifth Amendment to the U.S. Constitution is brought on behalf of the U.S. citizen Plaintiffs (Does 1 and 2) only.

1   Notice of Ineligibility, which Doe 1 did not understand because their entire nuclear family had

2   previously resettled in the United States under the Lautenberg-Specter Program. *Id.* ¶ 10.  Doe 3

3   and her son traveled to Vienna in the fall of 2016 and were interviewed twice by DHS, only to

4   receive the Notices of Ineligibility discussed above.  *See* Doe 3 Decl. ¶¶ 9-10, 12-15.

5           Plaintiff John Doe 2 ("Doe 2") is a U.S. citizen living in West Chicago, Illinois, who

6   served as a U.S. tie for his mother, Jane Doe 4 ("Doe 4"), and his disabled younger brother to

7   apply for resettlement in the U.S. under the Lautenberg-Specter Program.  *See* Doe 2 Decl. ¶¶ 1, 4;

8   Doe 4 Decl. ¶¶ 5-6.  As persecuted Mandaeans in Iran, Doe 4 and her sons traveled to Vienna in

9   the fall of 2016 where Doe 4 was interviewed by DHS, underwent two medical checks, and was

10  scheduled to attend a cultural orientation in preparation for resettlement to the U.S. *See* Doe 2

11  Decl. ¶¶ 5, 9; Doe 4 Decl. ¶¶ 9, 12-16.   However, in February 2018, Doe 4 and her sons received

12  identical Notices of Ineligibility denying their refugee applications "as a matter of discretion." Doe

13  4 Decl. ¶¶ 18, 21, Exh. A.

14          Jane Doe 5 ("Doe 5") is an Iranian refugee applicant stranded in Vienna with her elderly

15  father and disabled son, all of whom received Notices of Ineligibility in February 2018.  *See* Doe 5

16  Decl. ¶¶ 1, 11, Exh. A.  Doe 5 is a Christian of Armenian descent who faced systemic

17  discrimination in Iran and applied for the Lautenberg-Specter Program with her sister-in-law as

18  her U.S. tie who paid thousands of dollars for Doe 5's application and additional deposits for the

19  medical costs to care for Doe 5's father and son.  *Id.* ¶¶ 5, 7.  Doe 5 traveled to Vienna in February

20  2017 and was interviewed by DHS about a week after she arrived.  *Id.* ¶¶ 9-10.  Doe 5's father was

21  approved for resettlement in the United States in April 2017, but he did not want to travel without

22  Doe 5 and her son.  *Id.* ¶ 12.  Doe 5 as well as her father and son received identical Notices of

23  Ineligibility in February 2018, which effectively revoked Doe 5's father's previous approval for

24  resettlement. *Id.* ¶¶ 11-12.

25          On April 20, 2018, Plaintiffs filed a motion for partial summary judgment on Claims 1-5

26  against DHS, requesting that the Court set aside the February 2018 Notices of Ineligibility as

27  unlawful.  ECF 25 ("MSJ").  Plaintiffs filed an Amended Motion for Class Certification on May

28  18, 2018.  ECF 60 ("Class Cert. Mot.").  The Court held a hearing on June 22, 2018.

United States District Court
Northern District of California

8

United States District Court
Northern District of California

## II.     MOTION FOR CLASS CERTIFICATION

### A.     Legal Standard

Recognizing that "[t]he class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only," Federal Rule of Civil Procedure 23 demands that two requirements be met before a court certifies a class. *Comcast Corp. v. Behrend,* 133 S.Ct. 1426, 1432 (2013).

A party must first meet the requirements of Rule 23(a), which demands that the party "prove that there are in fact sufficiently numerous parties, common questions of law or fact, typicality of claims or defenses, and adequacy of representation." *Behrend,* at 1432.  If a party meets Rule 23(a)'s requirements, the Court must also find that Plaintiffs have satisfied "through evidentiary proof" one of the three subsections of Rule 23(b).  *Id.*  Here, Plaintiffs invoke Rule 23(b)(2), which demands that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

The party seeking class certification bears the burden of showing affirmative compliance with Rule 23.  *See, e.g., Wal–Mart Stores, Inc. v. Dukes,* 131 S.Ct. 2541, 2551 (2011).  A court's analysis of class certification must be "rigorous" and "may entail some overlap with the merits of the plaintiff's underlying claim[s]," *Amgen Inc. v. Conn. Ret. Plans & Trust Funds,* 133 S.Ct. 1184, 1194 (2013), though the merits can be considered only to the extent they are "relevant to determining whether the Rule 23 prerequisites to class certification are satisfied." *Id.* at 1195. Within Rule 23's framework, the district court ultimately maintains broad discretion over whether to certify a class or subclass.  *See, e.g., Zinser v. Accufix Research Institute, Inc.,* 253 F.3d 1180, 1186 (9th Cir. 2001).

### B.     Discussion

Plaintiffs simultaneously move for class certification and partial summary judgment on behalf of a class consisting of:

> All Iranian refugees who (1) applied for refugee admission to the United States under the Lautenberg Amendment, whether as a principal applicant or derivative relatives; (2) traveled to Vienna,

9

1
2
3

Austria, for processing; and (3) received denials from the United States government in or after February 2018 with the sole explanation that their application was denied "as a matter of discretion," and their U.S.-based Close Family Members who served as their U.S. ties.

4   *See* Class Cert. Mot. at 1.  The Court addresses Plaintiffs' motion for class certification before

5   turning to the motion for partial summary judgment.

6          DHS argues that the proposed class definition is inadequate because Plaintiffs omit a

7   significant portion of USCIS's articulated ineligibility basis provided in the Notices.  *See* Opp'n to

8   Class Cert. Mot. at 9.  This defect is easily remedied, and Plaintiffs argue that rather than decline

9   to certify the class the Court should modify the proposed class definition to include the full

10  language in all of the denials sent to class members.  *See* Reply iso Class Cert. Mot. at 10, ECF 75.

11  For purposes of completeness, the Court finds that the class definition should state the full text of

12  the denial and include:

13

14
15
16
17
18
19

All Iranian refugees who (1) applied for refugee admission to the United States under the Lautenberg Amendment, whether as a principal applicant or derivative relatives; (2) traveled to Vienna, Austria, for processing; and (3) received denials from the United States government in or after February 2018 with the sole explanation that: "After review of all information concerning your case, including your testimony, supporting documentation, background checks, country conditions, and other available information, your application for refugee resettlement to the United States under INA § 207 has been denied as a matter of discretion," and their U.S.-based Close Family Members who served as their U.S. ties.

20

21          DHS's primary argument in opposition to class certification is that Plaintiffs' claims are

22  not justiciable because no aspect of the refugee application denials is entitled to judicial review.

23  *See* Opp'n to Class Cert. Mot. at 2, ECF 72.  The Court addresses these arguments at length below

24  in connection with Plaintiffs' motion for partial summary judgment.[9]  In sum, DHS's justiciability

25  and nonreviewability arguments are not applicable to this case.  Plaintiffs do not ask this Court to

26  review discretionary determinations of whether to allow an alien entry into the United States.

27
28

[9] The nonreviewability arguments and cases cited by DHS in opposition to the class certification motion are nearly identical to those arguments raised in opposition to Plaintiffs' motion for partial summary judgment.  *Compare* Opp'n to MSJ at 6-12 *with* Opp'n to Class Cert. Mot. at 9-15.

United States District Court
Northern District of California

1   Plaintiffs specifically request an order setting aside the Notices of Ineligibility as unlawful for

2   failing to state, "to the maximum extent feasible, the reason for the denial" as required by the

3   Lautenberg Amendment.  Reply iso Class Cert. at 3.  Accordingly, DHS's arguments regarding

4   justiciability, the doctrine of nonreviewability, and the jurisdiction-stripping provision at 8 U.S.C.

5   § 1252(a)(2)(B)(ii)—although legally correct—are entirely irrelevant to the facts of this case.

6       Notwithstanding their justiciability and nonreviewability arguments, DHS does not

7   challenge Plaintiffs' Article III and prudential standing to bring their claims.  In any event, as

8   discussed below regarding the APA, the Court finds that Plaintiffs are more than "arguably"

9   within the "zone of interests" of the Refugee Act and Lautenberg and Specter Amendments.[10]  In

10  order to certify the class, the Court therefore need only consider whether Plaintiffs' have met the

11  requirements under Federal Rules of Civil Procedure 23(a) and 23(b)(2).  For the reasons that

12  follow, the Court finds that Plaintiffs have met the requirements of Rule 23 and the Court

13  GRANTS Plaintiffs' motion to certify the proposed class, as modified to include the full text of

14  the Notices of Ineligibility issued by DHS.

                              **1.      Rule 23(a)**

16      Pursuant to Rule 23(a), the Court may only certify a class where "(1) the class is so

17  numerous that joinder of all members is impracticable; (2) there are questions of law or fact

18  common to the class; (3) the claims or defenses of the representative parties are typical of the

19  claims or defenses of the class; and (4) the representative parties will fairly and adequately protect

20  the interests of the class." Fed. R. Civ. P. 23(a).  DHS argues that Plaintiffs cannot show

21  commonality, typicality, or adequacy of representation.  *See* Opp'n to Class Cert. Mot. at 8.  The

22  Court disagrees, and finds that all prerequisites in Rule 23(a) are satisfied.

23

24

---

25  [10] Plaintiffs also persuasively argue that the class can include foreign nationals living in Vienna, as
26  there is no legal basis for precluding a mixed class composed of U.S. plaintiffs and foreign
    nationals living abroad.  *See Takeda v. Turbodyne Techs., Inc.*, 67 F.Supp.2d 1129, 1139 (C.D.
27  Cal. 1999) ("It is evidence that there is no per se rule against the certification of a class whose
    members are both foreign and American investors."); *see also In re U.S. Fin. Sec. Litig.*, 69 F.R.D.
28  24, 51 (S.D. Cal. 1975) (nothing that "many class actions have been allowed to proceed despite
    the fact that at least some members of the class were foreigners.")

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

### i.      Ascertainability and Numerosity

Before analyzing numerosity, district courts have required a showing that the class to be certified is ascertainable.  *See Xavier v. Philip Morris USA, Inc.*, 787 F. Supp. 2d 1075, 1089 (N.D. Cal. 2011); *Ehret v. Uber Techs., Inc.*, 148 F. Supp. 3d 884, 889–90 (N.D. Cal. 2015). Ascertainability requires that the class definition be "definite enough so that it is administratively feasible for the court to ascertain whether an individual is a member" before trial, and by reference to "objective criteria." *Daniel F. v. Blue Shield of Cal.*, 305 F.R.D. 115, 122 (N.D. Cal. 2014). This requirement makes clear "whose rights are merged into the judgment, that is, who gets the benefit of any relief and who gets the burden of any loss, and avoids subsequent litigation over who was in the class in the first place." *Ehret*, 148 F. Supp. at 889 (quoting *Xavier*, 787 F.Supp.2d at 1089).

As for numerosity, Rule 23(a)(1) requires the proposed class to be "so numerous that joinder of all members is impracticable." "'Impracticability' does not mean 'impossibility,' but only the difficulty or inconvenience of joining all members of the class." *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913-914 (9th Cir. 1964) (internal citation omitted). "While there is no fixed number that satisfies the numerosity requirement, as a general matter, a class greater than forty often satisfies the requirement, while one less than twenty-one does not." *Ries v. Ariz. Beverages USA LLC*, 287 F.R.D. 523, 536 (N.D. Cal. 2012); *see also Ehret*, 148 F. Supp. 3d at 890.

With the exception of the objection that the proposed class is "imprecise," as remedied above, DHS does not challenge the proposed class with respect to ascertainability or numerosity. Plaintiffs estimate that the class contains 87 refugee applicants in Vienna and their corresponding U.S. ties.  *See* Lee Class Cert. Decl. Exh D, E, ECF 61.  Although the exact number of individuals who received the Notices of Ineligibility in and around February 2018 is only known by the Government, Plaintiffs are aware of at least 38 individuals (applicants and their derivative relatives) who received the Notices.  *See* Bates Decl. ¶ 6.  These 38 individuals are sponsored by 16 corresponding U.S. ties who are "Close Family Members" under the class definition.  *Id.* Accordingly, there are 54 class members at a minimum, which is sufficiently numerous to satisfy

12

1    Rule 23(a)(1). *See Rannis v. Recchia*, 380 F.App'x 646, 651 (9th Cir 2010) (holding that although

2    Supreme Court determined a class of 15 is too small, that analysis did not undermine the district

3    court's discretion to certify a class of 20 members); *see also Perez-Funes v. INS*, 611 F.Supp.990,

4    995 (C.D. Cal. 1984) (holding that "[c]lasses consisting of 25 members have been held large

5    enough to justify certification.")

6         For the foregoing reasons, the Court finds that membership in the proposed class is

7    objectively ascertainable and sufficiently numerous.

8                          ii.      **Commonality**

9         DHS challenges Plaintiffs' ability to establish that there are "questions of law or fact

10   common to the class" as required by Rule 23(a)(2). *See* Opp'n to Class Cert. Mot. at 16-17.

11   "[C]ommonality requires that the class members' claims depend upon a common contention such

12   that determination of its truth or falsity will resolve an issue that is central to the validity of each

13   claim in one stroke." *Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1165 (9th Cir. 2014) (citations

14   and internal quotation marks omitted).  In other words, "the key inquiry is not whether the

15   plaintiffs have raised common questions, 'even in droves,' but rather whether class treatment will

16   'generate common *answers* apt to drive the resolution of the litigation.'" *Abdullah v. U.S. Sec.*

17   *Assocs., Inc.*, 731 F.3d 952, 957 (9th Cir. 2013) (quoting *Dukes*, 564 U.S. at 350) (emphasis in

18   original).  The commonality requirement can be satisfied "by even a single question." *Trahan v.*

19   *U.S. Bank Nat'l Ass'n*, No. C 09-03111 JSW, 2015 WL 74139, at *5 (N.D. Cal. Jan. 6, 2015); *see*

20   *also Gonzalez v. Sessions*, No. 18-CV-01869-JSC, 2018 WL 2688569, at *4 (N.D. Cal. June 5,

21   2018).

22        Commonality focuses on the relationship among class members.  Plaintiffs argue that all

23   class members present the same set of factual circumstances and thus present the same common

24   question of law: whether the Notices of Ineligibility at issue violated the Lautenberg Amendment.

25   *See* Class Cert. Mot. at 15.  All class members assert that DHS violated its obligations under the

26   Lautenberg Amendment and applicable agency guidelines and regulations.  *See generally*

27

28

United States District Court
Northern District of California

1  Compl.[11]  Moreover, the class members seek the same legal remedy: a declaratory judgment, the

2  setting aside of the Notices of Ineligibility, and an order compelling DHS to re-issue

3  determinations on Plaintiffs' refugee applications that comply with the law and permitting

4  Plaintiffs to submit RFRs, and an order setting aside unlawful program changes.  *Id.*

5        DHS argues that Plaintiffs cannot demonstrate commonality because of the diverse

6  relationships that the proposed class presents.  *See* Opp'n to Class Cert. at 16-17.  DHS argues that

7  class members can be divided into two groups: one group of unadmitted and nonresident aliens

8  who applied for refugee status, and the other group of U.S. citizens who did not apply for refugee

9  status.  *Id.*  DHS argues that the law treats each group differently.  However, this argument circles

10  back to the nonreviewability arguments that the Court rejects, as discussed below in connection

11  with Plaintiffs' motion for partial summary judgment.  The Court agrees that an alien has "no

12  constitutional right of entry into the country," but the non-citizen Plaintiffs do not seek entry or

13  review of a discretionary decision denying entry.  The case pertains only to whether DHS

14  complied with the law in issuing the Notices of Ineligibility to Plaintiffs.  The lines that DHS

15  attempts to draw with respect to U.S. citizens and aliens, and even among the group of U.S.

16  citizens based on their familial relationship to the refugee applicants, are misplaced for the same

17  reasons that the Court rejects the nonreviewability arguments below.

18        Although the refugee applicants may have factual bases for their claims that differ from the

19  U.S. ties, "[i]t is not necessary that "[a]ll questions of fact and law... be common to satisfy the

20  rule." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).  The Ninth Circuit has

21  found "[t]he existence of shared legal issues with divergent factual predicates is sufficient, as is a

22  common core of salient facts coupled with disparate legal remedies within the class." *Id.* "[T]he

23  commonality requirements asks us to look only for some shared legal issue or a common core of

24  facts." *Id.* Ultimately, commonality "requires the plaintiff to demonstrate the class members have

25  suffered the same injury." *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1029 (9th Cir.

26  2012) (quoting *Dukes*, 131 S.Ct. at 2551).  Plaintiffs have satisfied the commonality requirement,

27

28  _____
[11] Plaintiffs do not move for class certification on their Due Process claim, which is brought on behalf of Does 1 and 2 only.

United States District Court
Northern District of California

1    as they share a common legal question: whether the Notices of Ineligibility violate the Lautenberg

2    Amendment and applicable agency regulations.  Moreover, the relief provided below with respect

3    to Plaintiffs' motion for partial summary judgment makes clear that commonality is satisfied, as

4    the relief is the same—the Notices of Ineligibility impacting each class member shall be set aside

5    and to the extent any Notice of Ineligibility is reissued it must comply with the law.  DHS's

6    argument that factual distinctions between the proposed class members will "change the outcome

7    of the legal issues" and will "impede the generation of common answers" is meritless.  *See* Opp'n

8    to Class Cert. Mot. at 17.  Commonality is satisfied.

9                               **iii.    Typicality**

10              Rule 23(a)(3)'s typicality requirement looks to whether Plaintiffs' claims are typical of

11   those advanced by the class.  *See* Fed. R. Civ. P. 23(a)(3).  Typicality is "directed to ensuring that

12   plaintiffs are proper parties to proceed with the suit." *Reis v. Arizona Beverages USA*, 287 F.R.D.

13   523, 539 (N.D. Cal. 2012).  Thus, while commonality looks to the relationship between the class

14   members, typicality focuses on the relationship between the proposed class representatives and the

15   rest of the class.  "The test of typicality is whether other members have the same or similar injury,

16   whether the action is based on conduct which is not unique to the named plaintiffs, and whether

17   other class members have been injured by the same course of conduct." *Wolin v. Jaguar Land*

18   *Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) (citation and internal quotation marks

19   omitted).  The standard for typicality is permissive, requiring only that the claims of the class

20   representatives are "reasonably co-extensive with those of absent class members; they need not be

21   substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).

22              Similar to its position on commonality, DHS argues that typicality is not satisfied because

23   the alien-Plaintiffs and U.S. citizen-Plaintiffs are in fundamentally different positions that affect

24   the justiciability of their claims.  *See* Opp'n to Class Cert Mot. at 18.  DHS highlights this

25   argument by demonstrating that the proposed class includes familial relationships that are not

26   represented by the named Plaintiffs.  *Id.*  Without representation of the specific kind of family tie,

27   DHS argues that the class is not typical because "the type of family relationship has a profound

28   effect on the justiciability of the proposed class members' claims." *Id.*

1    Although DHS's argument regarding familial relationships may have merit with respect to

2    Plaintiffs' fifth cause of action regarding Due Process rights, Plaintiffs do not seek to certify that

3    class and the Court does not reach the Due Process claim in its order on Plaintiffs' motion for

4    partial summary judgment.  *See* Compl. ¶¶ 92-94.  The diverse familial relationships do not impact

5    the justiciability of Plaintiffs' claims that the Notices of Ineligibility violated the Lautenberg

6    Amendment and *Accardi* doctrine.  The argument that factual variations in individual cases

7    preclude typicality thus fails for similar reasons to those discussed above with respect to

8    commonality.  *See Gonzalez*, No. 18-CV-01869-JSC, 2018 WL 2688569, at *6.

9    For the foregoing reasons, the Court finds that Plaintiffs' claims are "reasonably co-

10   extensive with the claims of the class" because they seek identical relief from an identical injury as

11   the absent class members.  *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010).

12                          **iv.      Adequacy of Representation**

13   The final requirement of Rule 23(a) ensured that the class representative will "fairly and

14   adequately protect the interests of the class." Rule 23(a)(4).  This requirement is related to

15   typicality, and serves to protect the due process rights of absent class members who will be bound

16   by the judgment.  *Hanlon*, 150 F.3d at 1020.  The adequacy of representation determination is

17   based on two inquiries: (1) do the named plaintiffs and their counsel have any conflicts of interest

18   with other class members; and (2) will the named plaintiffs and their counsel prosecute the action

19   vigorously on behalf of the class?  *Id.* at 1021; *see also Denney v. Deutsche Bank AG*, 443 F.3d

20   253, 268 (2d Cir. 2006) ("proposed class representative must have an interest in vigorously

21   pursuing the claims of the class, and must have no interests antagonistic to the interests of other

22   class members").

23   DHS does not argue that any conflicts of interest exist.  Rather, DHS repeats its defense

24   that the named Plaintiffs' claims are not justiciable and thus they cannot vigorously prosecute the

25   action as required to adequately represent the proposed class.  *See* Opp'n to Class Cert. Mot. at 19.

26   This justiciability argument fails for the reasons discussed in the Court's order granting Plaintiffs'

27   motion for partial summary judgment.  DHS also reasserts that the proposed class represents a

28   wide array of familial relationships that, for the most part, are not represented by the U.S.-citizen

United States District Court
Northern District of California

16

1    Plaintiffs who include only a parent and an adult child of refugee applicants. *Id.* As discussed

2    above with respect to typicality, the familial relationships between the applicants and their U.S.-

3    ties are not relevant to the claims on which Plaintiffs seek class certification.

4         The Court finds that Plaintiffs and their experienced counsel have no conflict of interest

5    with other class members and there is no basis to conclude that Plaintiffs and their counsel will not

6    vigorously represent the class.  The U.S.-citizen Plaintiffs both testify that they are willing to serve

7    as class representatives for similarly situated individuals who serve as U.S. ties for their family

8    member applicants who are stuck in Vienna and want to help everyone in their situation "because

9    we are all suffering from the unexplained denial of our family members' refugee applications."

10   Doe 1 Decl. ¶¶ 12-13; Doe 2 Decl. ¶¶ 16-17.  The refugee applicant Plaintiffs also represent that

11   they are willing to serve as representatives for similarly situated Iranian religious minorities who

12   are stranded in Vienna after receiving Notices of Ineligibility, and the named Plaintiffs want to

13   help everyone suffering from the same unexplained denial of their refugee applications. *See* Doe 3

14   Decl. ¶¶ 23-24; Doe 4 Decl. ¶¶ 26-27; Doe 5 Decl. ¶¶ 20-21.

15        Moreover, the Court finds that Plaintiffs' counsel—highly experienced attorneys from

16   Latham & Watkins LLP and the International Refugee Assistance Project ("IRAP")—will

17   vigorously prosecute this action on behalf of the class. *See* Lee Class Cert. Decl. ¶¶ 2-5;

18   Declaration of Mariko Hirose ("Hirose Decl.") ¶ 6, ECF 62.  DHS does not challenge the

19   adequacy of counsel.

20        For the foregoing reasons, the Court finds that adequacy of representation is met, and all

21   four of Rule 23(a)'s requirements are satisfied in this case.

22              **2.    Rule 23(b)(2)**

23        Having found that Plaintiffs satisfy the four prerequisites under Rule 23(a), the Court next

24   considers whether Plaintiffs have satisfied one of the three subsections of Rule 23(b). *See*

25   *Behrend*, 133 S.Ct. at 1432.  Plaintiffs move for class certification pursuant to Rule 23(b)(2),

26   which permits the Court to certify a class if "the party opposing the class has acted or refused to

27   act on grounds that apply generally to the class, so that final injunctive relief or corresponding

28   declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).  "Rule

United States District Court
Northern District of California

17

23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class." *Dukes*, 564 U.S. at 360.  "[U]nlike Rule 23(b)(3), a plaintiff does not need to show predominance of common issues or superiority of class adjudication to certify a Rule 23(b)(2) class." *In re Yahoo Mail Lit.*, 308 F.R.D. 577, 587 (N.D. Cal. May 26, 2015).  Rather, "[i]n contrast to Rule 23(b)(3) classes, the focus [in a Rule 23(b)(2) class] is not on the claims of the individual class members, but rather whether [Defendant] has engaged in a 'common policy.'" *Id*. at 599; *see also Gonzalez*, No. 18-CV-01869-JSC, 2018 WL 2688569, at *7.

Plaintiffs argue that the uniform response from DHS to class members in the February 2018 Notices of Ineligibility are sufficient to satisfy Rule 23(b)(2).  *See* Class Cert. Mot. at 17. Plaintiffs allege and present evidence that the class members received denials of their refugee applications under the Lautenberg Amendment in or after February 2018 with the sole explanation that: "After review of all information concerning your case, including your testimony, supporting documentation, background checks, country conditions, and other available information, your application for refugee resettlement to the United States under INA § 207 has been denied as a matter of discretion."  *See* Exh. A to Declarations of Does 1-3; *see also* Bates Decl. ¶ 9.  In order to certify a Rule 23(b)(2) class, Plaintiffs do not need to prove that DHS adopted a formal policy of 100% uniformity across the class.

The Court finds that Plaintiffs have satisfied Rule 23(b)(2).  Plaintiffs have shown that the class is "cohesive" by demonstrating that DHS "has adopted a pattern of activity that is likely to be the same as to all members of the class." *In re Conseco Life Ins. Co. LifeTrend Ins. Sales & Mktg. Litig.*, 270 F.R.D. 521, 532 (N.D. Cal. 2010) (citations omitted).  DHS's issuance of the uniform Notices of Ineligibility constitutes an action "on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).  The declaratory and injunctive relief sought also applies equally to all members of the proposed class and thus conforms to Rule 23(b)(2).  *Parsons v. Ryan*, 754 F.3d 657, 688 (9th Cir. 2014) (finding that the requirements of Rule 23(b)(2) are "unquestionably satisfied when members of a putative class seek uniform injunctive or declaratory relief from policies or practices that are generally applicable to the class as a whole.")  Once again,

1    DHS's nonreviewability argument that the injunctive and declaratory relief sought cannot be

2    enjoined or declared as to the entire proposed class is unpersuasive for the reasons discussed at

3    length below regarding the justiciability of Plaintiffs' claims.

4         **3.    Rule 23(g)**

5         Rule 23(g) provides that, upon class certification, the Court "must appoint class counsel[,]"

6    and in doing so, must consider: "(i) the work counsel has done in identifying or investigating

7    potential claims in the action; (ii) counsel's experience in handling class actions, other complex

8    litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable

9    law; and (iv) the resources that counsel will commit to representing the class[.]" Fed. R. Civ. P.

10   23(g)(1)(A).  The Court may also consider "any other matter pertinent to the counsel's ability to

11   fairly and adequately represent the interests of the class[.]" Fed. R. Civ. P. 23(g)(1)(B).

12        As discussed above with respect to adequacy of representation, Plaintiffs' counsel satisfy

13   each of the Rule 23(g) factors.  Counsel has spent considerable time and effort in identifying

14   Plaintiffs and investigating their potential claims.  *See* Lee Class Cert. Decl. ¶ 5; Hirose Decl. ¶ 6.

15   Moreover, counsel and their organizations have extensive experience handling class actions and

16   complex litigation, including immigration and refugee matters.  *See* Lee Class Cert. Decl. ¶ 3;

17   Hirose Decl. ¶¶ 4-6.  Plaintiffs' counsel are also strongly committed to representing the class.  *See*

18   Lee Class Cert Decl. ¶ 5; Hirose Decl. ¶ 6.

19        For these reasons, the Court appoints Latham & Watkins LLP and IRAP as counsel for the

20   proposed class pursuant to Rule 23(g).

21        **C.    Order on Motion for Class Certification**

22        For the foregoing reasons, IT IS HEREBY ORDERED that Plaintiffs' motion

23   for class certification is GRANTED.  "An order that certifies a class action must define the class

24   and the class claims, issues, or defenses, and must appoint class counsel under Rule 23(g)." Fed.

25   R. Civ. P. 23(c)(1)(B).  The Court thus certifies a Rule 23(b)(2) class of:

26        All Iranian refugees who (1) applied for refugee admission to the
     United States under the Lautenberg Amendment, whether as a
27   principal applicant or derivative relatives; (2) traveled to Vienna,
     Austria, for processing; and (3) received denials from the United
28   States government in or after February 2018 with the sole explanation

United States District Court
Northern District of California

that: "After review of all information concerning your case, including your testimony, supporting documentation, background checks, country conditions, and other available information, your application for refugee resettlement to the United States under INA § 207 has been denied as a matter of discretion," and their U.S.-based Close Family Members who served as their U.S. ties.

The Court certifies as appropriate for class treatment Plaintiffs' First, Second, Third, Fourth, and Sixth Causes of Action, as alleged in the Complaint. The Court also certifies Doe 1, Doe 2, Doe 3, Doe 4, and Doe 5 as class representatives and Plaintiffs' counsel of record as class counsel. The Court will approve the parties' Stipulation Regarding Class Notice by separate order.

## III.    MOTION FOR PARTIAL SUMMARY JUDGMENT

### A.    Legal Standard

Federal Rule of Civil Procedure 56 governs motions for summary judgment. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "Partial summary judgment that falls short of a final determination, even of a single claim, is authorized by Rule 56 in order to limit the issues to be tried." *State Farm Fire & Cas. Co. v. Geary,* 699 F. Supp. 756, 759 (N.D. Cal. 1987). With respect to timing, "[u]nless a different time is set by local rule or the court orders otherwise, a party may file a motion for summary judgment at any time until 30 days after the close of all discovery." Fed. R. Civ. P. 56(b).

The moving party "bears the burden of showing there is no material factual dispute," *Hill v. R+L Carriers, Inc.*, 690 F. Supp. 2d 1001, 1004 (N.D. Cal. 2010), by "identifying for the court the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." *T.W. Elec. Serv. Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). In judging evidence at the summary judgment stage, the Court "does not assess credibility or weigh the evidence, but simply determines whether there is a genuine factual issue for trial." *House v. Bell,* 547 U.S. 518, 559-60 (2006). A fact is "material" if it "might affect the outcome of

the suit under the governing law," and a dispute as to a material fact is "genuine" if there is

sufficient evidence for a reasonable trier of fact to decide in favor of the nonmoving

party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

Where the moving party will have the burden of proof on an issue at trial, it must

affirmatively demonstrate that no reasonable trier of fact could find other than for the moving

party. *Celotex*, 477 U.S. at 325; *Soremekun v. Thrifty Payless, Inc.,* 509 F.3d 978, 984 (9th Cir.

2007).  Once the moving party meets its initial burden, the nonmoving party must set forth, by

affidavit or as otherwise provided in Rule 56, "specific facts showing that there is a genuine issue

for trial." *Liberty Lobby,* 477 U.S. at 250 (internal quotation marks omitted).  If the nonmoving

party's "evidence is merely colorable, or is not significantly probative, summary judgment may be

granted." *Id.* at 249–50 (internal citations omitted).  Mere conclusory, speculative testimony in

affidavits and moving papers is also insufficient to raise genuine issues of fact and defeat

summary judgment. *See Thornhill Publ'g Co. v. GTE Corp.,* 594 F.2d 730, 738 (9th Cir. 1979).

For a court to find that a genuine dispute of material fact exists, "there must be enough doubt for a

reasonable trier of fact to find for the [non-moving party]." *Corales v. Bennett*, 567 F.3d 554, 562

(9th Cir. 2009).

## B.    Discussion

Having certified the class of refugee applicants and their U.S. ties as discussed above, the

Court turns to Plaintiffs' motion for partial summary judgment on Claims 1-5 of their Complaint.

Plaintiffs argue that the February 2018 Notices of Ineligibility denying refugee applications "as a

matter of discretion," fail to comply with the Lautenberg Amendment's mandate that "[e]ach

decision to deny an application for refugee status…shall state, to the maximum extent feasible, the

reason for the denial." 8 U.S.C. § 1157(c) (note).  Plaintiffs offer several independent reasons for

the Court to find the Notices of Ineligibility unlawful, including that the Notices violate (1) the

Lautenberg Amendment; (2) the *Accardi* doctrine; and (3) the Due Process Clause.  *See generally*

MSJ.  Likewise, Plaintiffs argue that alternative avenues exist to set aside the unlawful Notices

under the Administrative Procedure Act ("APA") and the Mandamus Act.  *Id.*

At the outset, DHS concedes that there is no genuine issue of *material* fact for purposes of

United States District Court
Northern District of California

21

1   summary judgment.  *See* Opposition to Motion for Partial Summary Judgment ("SJ Opp'n") at 6,

2   ECF 71 (emphasis original).  Accordingly, the traditional summary judgment framework does not

3   apply.  Defendants rely on an overarching defense that Plaintiffs' claims are not justiciable and the

4   Court lacks jurisdiction to review DHS's discretionary denials of refugee applications.  *See* SJ

5   Opp'n at 6-12.  DHS argues in the alternative that even if Plaintiffs' claims are found to be

6   justiciable, the Notices of Ineligibility complied with the Lautenberg Amendment.  *Id.* at 13-15.

7       The Court first addresses the threshold issue of justiciability, finding that Plaintiffs' narrow

8   claims are subject to judicial review as they plainly do not seek review of the determinations of

9   ineligibility themselves.  The Court then turns to the merits of whether the Notices are unlawful

10  and whether Plaintiffs are entitled to relief.

### 1.   Justiciability

12      DHS argues that Plaintiffs' claims regarding the February 2018 Notices of Ineligibility are

13  not justiciable because the Government's decision to exclude an alien is immune from judicial

14  review, unless review is expressly authorized by law.  *See generally* Opp'n to MSJ (citing *Fiallo*

15  *v. Bell*, 430 U.S. 787, 792 (1977)).  The Court agrees with the principles of nonreviewability

16  stressed by DHS, but finds that the justiciability argument entirely misconstrues Plaintiffs'

17  requested relief in this case.  DHS is correct that this Court has no authority to evaluate the

18  Government's discretionary decision to admit or deny admission to a refugee.  *See* Opp'n to MSJ

19  at 6 (citing 8 U.S.C. § 1252(a)(2)(B)(ii)).  Section 1252(a)(2)(B)(ii) precludes judicial review of a

20  determination committed to agency discretion, and the Supreme Court specifically pointed to

21  refugee denials rendered pursuant to 8 U.S.C. § 1157(c)(1) as an example of unreviewable

22  decisions.  *See Kucana v. Holder*, 558 U.S. 233, 248 (2010) ("decisions specified by statute 'to be

23  in the discretion of the Attorney General,' and therefore shielded from court oversight by

24  § 1252(a)(2)(B)(ii), are of a like kind.  *See*, *e.g.*, § 1157(c)(1)").[12]  But this argument misconstrues

25  Plaintiffs' claims, which do not challenge any substantive decision within DHS's discretion.  *See*

26

27  _____

28  [12] In addition, neither the statute governing refugee admissions nor its implementing regulations confer judicial review over such determinations.  *See* 8 U.S.C. § 1157; *see also* 8 C.F.R. § 207.4 ("There is no appeal from a denial of refugee status under this chapter.")

United States District Court
Northern District of California

1    Reply iso MSJ at 3-4, ECF 74.  Accordingly, there is no disagreement among the parties or the

2    Court that the refugee denials themselves are unreviewable, and § 1252(a)(2)(B)(ii) is inapposite.

3           Plaintiffs do not challenge the decision to admit or deny the refugee applications, or

4    whether the discretion delegated to DHS was properly exercised in this case.  Rather, Plaintiffs

5    request this Court to determine whether DHS complied with its mandatory duties under the

6    Lautenberg Amendment and applicable regulations.  *See* Reply iso MSJ at 3-4.  The Court finds

7    that whether DHS followed the law in issuing the February 2018 Notices of Ineligibility is subject

8    to judicial review—notwithstanding that the ultimate decision to deny admission to the refugee

9    applicants is not reviewable.

10          DHS argues that to the extent Plaintiffs challenge the Notices of Ineligibility separate and

11   apart from the underlying refugee admission decision, the claims are barred by principles of

12   nonreviewability.  *See* Opp'n to MSJ at 7.  The Court finds that the line of cases relied on by DHS

13   is inapposite.  Rather, Defendants' cases stand for the principle that judicial review is limited

14   when Congress delegates decisional authority to the Executive branch and does not explicitly

15   authorize review by the courts.  *See Fiallo*, 430 U.S. at 792-93 (underscoring the limited scope of

16   judicial inquiry into immigration legislation, explaining that the Supreme Court has "long

17   recognized the power to expel or exclude aliens as a fundamental sovereign attribute exercised by

18   the Government's political departments largely immune from judicial control."); *U.S. ex rel.*

19   *Knauff v. Shaughnessy*, 338 U.S. 537, 543 (1950) ("[I]t is not within the province of any court,

20   unless expressly authorized by law, to review the determination of the political branch of the

21   Government to exclude a given alien.")

22          According to DHS, the longstanding doctrine of non-reviewability provides that "aliens

23   abroad are simply not entitled to any kind of judicial review with respect to any kind of

24   application."  June 22, 2018 Hearing Transcript at 25:3-7.  In support of its argument that people in

25   different countries are not entitled to any review of executive actions in U.S. courts, DHS attempts

26   to draw a comparison between the Notices of Ineligibility in the Lautenberg Amendment context

27   and the typical case in which an individual applies for a visa overseas and is denied.  In the visa

28   context, the doctrine of "consular nonreviewability" has emerged to hold that "a consular official's

United States District Court
Northern District of California

23

decision to issue or withhold a visa is not subject to judicial review, at least unless Congress says otherwise." *Saavedra Bruno v. Albright*, 197 F.3d 1153, 1159 (D.C. Cir. 1999); *see also Li Hing of Hong Kong, Inc. v. Levin,* 800 F.2d 970 (9th Cir.1986) (affirming district court's dismissal of case for lack of jurisdiction to review the acts of consular officials denying visas); *Doan v. I.N.S.*, 160 F.3d 508, 509 (8th Cir. 1998) ("Administrative decisions excluding aliens are not subject to judicial review unless there is a clear grant of authority by statute.")

DHS argues that the designation of this doctrine as "consular nonreviewability" merely reflects the context in which the principle most often arises. *See* Opp'n to MSJ at 7. According to DHS, the nonreviewability principles underlying these cases apply to any manner in which the Executive Branch denies entry to an alien abroad, including denial of a refugee applicant under the Lautenberg Amendment. *Id*. (citing *Haitian Refugee Ctr., Inc. v. Baker*, 953 F.2d 1498, 1506 (11th Cir. 1992) (per curiam)). Because no statute authorizes judicial review of denials of refugee admissions, DHS argues that Plaintiffs' claims are not justiciable.[13]

The cases cited by DHS make clear that the Court lacks authority to review the ultimate decision to grant or deny refugee applications under the Lautenberg-Specter Program. Plaintiffs have gone to painstaking lengths to make clear that they are not challenging a decision that was delegated to the Executive branch or asking that DHS admit the refugee applications to the United States. Plaintiffs are "merely asking that the Defendants be required to follow the process Congress mandated and so they can have a fair opportunity to pursue their hope for family reunification in the United States." Reply iso MSJ at 2. Above all else, this is a request for the Court to determine whether the content of the February 2018 Notices of Ineligibility comply with the Lautenberg Amendment's requirement that a denial of an application under its purview state, "to the maximum extent feasible, the reason for the denial." 8 U.S.C. § 1157 (note).

---

[13] DHS further argues that the recent line of authority challenging President Trump's Executive Orders that promulgated "sweeping immigration policy" is inapposite for purposes of whether the refugee denials in this case are reviewable. *See* Opp'n to MSJ at 8. According to DHS, this is because Plaintiffs challenge individual adjudicatory decisions of their refugee applications that are more akin to the decisions by consular officials to deny visa applications. While the Court agrees that the Executive Order cases are inapposite, the consular nonreviewability doctrine cases are misplaced as well—Plaintiffs here do not seek review of individual adjudications made by DHS but ask only for the Court to determine whether DHS complied with its legal obligations.

DHS cannot stretch the longstanding principles of non-reviewability to avoid their explicit legal obligations mandated by Congress by arguing that Plaintiffs are not entitled to judicial review of "any aspect" of the refugee application denials. Opp'n to MSJ at 9. This Court's review of whether DHS has obeyed the relevant law is entirely distinct from judicial review of the underlying refugee application determinations. While the Court is in complete agreement with DHS that challenges to denials of visa and refugee applications are not judicially reviewable, that is simply not what this case is about. DHS retains an enormous amount of authority and discretion to adjudicate refugee applications, but they do not have the discretion to violate the law.

### 2. Whether the Notices of Ineligibility are Unlawful

Having determined that principles of nonreviewability are inapplicable to the case at hand, the Court next considers whether the content of the Notices of Ineligibility complied with DHS's obligations under the law mandated by Congress. DHS argues that even if Plaintiffs' claims are justiciable, their claims are meritless because the Notices comply with the Lautenberg Amendment and applicable agency procedures. *See* Opp'n to MSJ at 13-15. In other words, DHS argues that as written, the February 2018 Notices provided "to the maximum extent feasible, the reason for the denial." 8 U.S.C. § 1157 (note).

### i. Ruppel Declaration

As their sole evidence that the February 2018 Notices of Ineligibility complied with the Lautenberg Amendment, DHS submits the declaration of Joanna Ruppel, Chief of the Refugee Affairs Division of USCIS, within DHS. *See* Ruppel Decl. ¶ 1. The declaration provides that Ms. Ruppel has held that position since March 2018, one month *after* the February 2018 Notices of Ineligibility were issued. *Id.* Plaintiffs object to the Ruppel Declaration, arguing that Ms. Ruppel's assertions are inadmissible, devoid of specific facts relating to the Plaintiffs, and entirely insufficient to demonstrate that the Notices state, to the maximum extent feasible, the reason for the denial. *See* Reply iso MSJ at 6.

As stated on the record at the June 22, 2018 hearing, the Court SUSTAINS Plaintiffs' objections to the Ruppel Declaration and STRIKES the declaration as inadmissible. The Declaration is made without any personal knowledge of the events at issue in this case. *See* Fed.

R. Evid. 701 (providing that opinion testimony of lay witnesses must be "rationally based on the witness's perception" and "helpful to clearly understanding the witness's testimony or to determining a fact in issue.")  For example, the Declaration states that "[a]ll refugee applicants, including religious minorities applying under the Lautenberg program, are subject to rigorous vetting by our law enforcement and intelligence community partners." Ruppel Decl. ¶ 2.  There is no basis provided for Ms. Ruppel's personal knowledge of that fact.  Nor does the declaration explain Ms. Ruppel's knowledge of the "individualized vetting" that each refugee applicant is subject to.  *Id.*

Most strikingly, with respect to the February 2018 Notices of Ineligibility, there is absolutely no indication that Ms. Ruppel has personal knowledge that "[e]ach denial was based on the facts of that individual case, taking into account the results of the vetting process to which all refugee applicants are subject." *Id.* ¶ 4.  Particularly in light of the fact that Ms. Ruppel did not assume her position until March 2018, there is absolutely no basis in the declaration for the Court to conclude that she has personal knowledge of the review of the refugee applications in this case. Accordingly, these assertions are inadmissible. *See Nigro v. Sears, Roebuck & Co.*, 784 F.3d 495, 497–98 (9th Cir. 2015) ("The district court can disregard a self-serving declaration that states only conclusions and not facts that would be admissible evidence."); *see also Villiarimo v. Aloha Island Air, Inc.,* 281 F.3d 1054, 1059 n. 5, 1061 (9th Cir.2002) (holding that the district court properly disregarded a declaration that included facts beyond the declarant's personal knowledge and did not indicate how she knew the facts to be true).

Without the Ruppel Declaration, DHS has provided no evidence to avoid summary judgment and must rely solely on its legal arguments to defeat Plaintiffs' claims on the merits.

### ii.    Compliance with the Lautenberg Amendment

Plaintiffs' broadest claim for relief is that the February 2018 Notices of Ineligibility violate the Lautenberg Amendment's explicit requirement that "each decision to deny an application for refugee status…shall be in writing and shall state, to the maximum extent feasible, the reason for the denial." 8 U.S.C. § 1157 (note); *see* MSJ at 12-15.  As described above, the Notices at issue checked the "OTHER REASON(S) box and informed the refugee applicants such as Does 3, 4,

and 5 that:

> After review of all the information concerning your case, including your testimony, supporting documentation, background checks, country conditions, and other available information, your application for refugee resettlement to the United States under [8 U.S.C. § 1157] has been denied as a matter of discretion.

*See, e.g.*, Doe 3 Decl. Exh A; Bates Decl. ¶ 9.  Plaintiffs argue that a denial of refugee status "as a matter of discretion" is tantamount to providing no reason at all and deprives the applicants of the ability to submit meaningful RFRs.  *See* MSJ at 12-13.

As the Court explained at the June 22, 2018 hearing, these Notices put Plaintiffs in an untenable position that Congress explicitly sought to avoid in enacting the Lautenberg Amendment.  Without a reason for the denial, the applicants are left to guess at which factors and circumstances DHS considered.  Any meaningful review of the denials becomes impossible because Plaintiffs are effectively shadowboxing against themselves.  The February 2018 Notices of Ineligibility do not indicate any reason for the individualized denials—such as whether an applicant was rejected based on security concerns or eligibility reasons.  Indeed, Plaintiffs' evidence that the applications of at least 38 of the individuals denied admission in February 2018 received identical Notices of Ineligibility raises the inference that the denials were not, in fact, individualized.  *See* Bates Decl. ¶ 6.[14]

DHS concedes that the statutory text and legislative history of the Lautenberg Amendment makes clear that Congress intended for a reason to be given upon denial of a refugee application whenever feasible.  *See* June 22, 2018 Hearing Transcript at 37:14-29; *see also* Opp'n to MSJ at 13.  However, DHS points out that Congress did not state that a reason must be given in the case of *every* denial.  The Congressional mandate is only to provide a reason "to the maximum extent feasible." 8 U.S.C. § 1157 (note).  DHS argues that the statutory language of the Lautenberg Amendment "implicitly allows the government to withhold specific details in certain cases when disclosure is *not* feasible, as was the case here." Opp'n to MSJ at 2.  In sum, Defendants'

---

[14] This unrebutted inference is further supported by evidence that at least one individual, Doe 5's father, was originally approved for resettlement in the United States in April 2017, but received an identical Notice of Ineligibility in February 2018 after choosing to stay with his family.  Doe 5 Dec. ¶¶ 11-12.

United States District Court
Northern District of California

1  argument is that the "logical corollary" of the Lautenberg Amendment is that when it is not

2  feasible to give more information regarding the denial, DHS need not do so.  *Id.* at 13.  DHS

3  maintains that the feasibility determination is for the Government alone to decide.  Moreover, as

4  Congress did not provide for any judicial review of the government's determination of feasibility,

5  DHS argues that the Court may not examine its determination that providing reasons for the denial

6  was not feasible.

7         There is a complete absence of admissible evidence in the record demonstrating that DHS

8  determined that it was not feasible to give Plaintiffs and the putative class members a reason for

9  the denial of their refugee applications.  Even if the Court were to consider the Ruppel

10  Declaration, which it does not, the assertion that the denials were "individualized" and subject to

11  general vetting procedures does not come close to demonstrating that Plaintiffs received reasons

12  for their denials "to the maximum extent feasible."  Like the justiciability argument, DHS's

13  position that the Notices complied with the Lautenberg Amendment's mandate is yet another

14  attempt to prevent this Court from determining whether the law was followed in this case.  The

15  Court need not determine whether DHS has the discretion to determine when it is feasible to give

16  reasons for the denial under the Lautenberg Amendment, because in this case, DHS has failed to

17  address the feasibility determination at all.  DHS's argument that it determined that it was not

18  feasible to give the Plaintiffs in this case reasons for the denials is nothing more than a "trust me"

19  defense that lacks any evidentiary support.[15]

20         Meanwhile, Plaintiffs have provided evidence that the February 2018 Notices fail to meet

21  the "maximum extent feasible" language because they fall below the floor required by

22  Defendants' own regulations, policies and practices with respect to other refugee applicants.  *See*

23  MSJ at 12-15; Reply iso MSJ at 7.  Although DHS has not promulgated regulations regarding the

24  Lautenberg Amendment specifically, Plaintiffs argue that other DHS regulations applicable to

25  refugee applicants make clear that if an adverse decision is based on derogatory information

26

27  ─────────────────

28  [15] For example, DHS presents no evidence that it was not feasible to provide more information to
Plaintiffs as the result of classified information, national security, or to protect the safety of the
sources of derogatory information.

1   unknown to the applicant, USCIS must advise the refugee applicant of that fact and "offer[] an

2   opportunity to rebut the information" unless the information is classified.  8 C.F.R.

3   § 103.2(b)(16)(i).  The Notices of Ineligibility do not state that any denial was based on classified

4   information, or even that security interests are implicated, information that is routinely given to

5   applicants who are not covered by the Lautenberg Amendment's heightened protections.  *See* MSJ

6   at 14-15.

7           Plaintiffs also point to the USCIS Adjudicator's Field Manual, which provides in Section

8   10.7(b)(3) that a denial must include "[a] description of the evidence in the case in question" and

9   "[i]f the applicant or petition cannot reasonably be presumed to be already aware of the evidence,

10  he or she must be given an opportunity to rebut the evidence before a decision is made.  *See* Lee

11  Summary Judgment Decl., Exh. S, ECF 29-2.  Finally, Plaintiffs submit evidence that DHS has

12  issued Notices of Ineligibility to other refugee applicants on forms that specify whether a

13  discretionary denial is security-related or otherwise, and if otherwise, requires an explanation.  *See*

14  Bates Decl., Exh. A.  Plaintiffs' evidence, coupled with the complete lack of evidence from DHS,

15  demonstrates that DHS did not meet the Lautenberg Amendment's heightened requirement that

16  refugee denials must state a reason "to the maximum extent feasible."[16]  In fact, the evidence

17  supports the conclusion that DHS actually gave less information to Lautenberg-Specter Program

18  applicants than the basis for denials routinely given to other refugee applicants.

19          For the foregoing reasons, and based on the record before the Court, the language provided

20  by DHS in the February 2018 Notices of Ineligibility does not "state, to the maximum extent

21  feasible, the reason for the denial." 8 U.S.C. § 1157 (note).  Accordingly, DHS has not met its

22  legal obligations under the Lautenberg Amendment.[17]

23

24

25  [16] DHS argues that 8 C.F.R. § 103.2(b)(16)(i) and the USCIS Adjudicator's Field Manual do not
    apply to refugee denials under the Lautenberg Amendment.  *See* Opp'n to MSJ at 14-15.  As
26  discussed below with respect to Plaintiffs' *Accardi* claim, the Court finds that these regulations do
    apply to refugee applications under the Lautenberg Amendment.  In any event, these regulations
27  support Plaintiffs' argument that the content of the February 2018 Notices of Ineligibility fell
    below what is maximally feasible when denying refugee applications.
28  [17] As stated on the record at the June 22, 2018 hearing, this Court will not issue an advisory
    opinion as to what language would meet the statute's "maximum extent feasible" requirement.

United States District Court
Northern District of California

United States District Court
Northern District of California

### iii. *Accardi* Doctrine

In addition to violating the Lautenberg Amendment, Plaintiffs argue that the Notices of Ineligibility are unlawful on the independent grounds that they violate DHS's regulations and policies. Pursuant to the *Accardi* doctrine, "[r]egulations with the force and effect of law supplement the bare bones of" federal statutes. *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 265, 74 S. Ct. 499, 502, 98 L. Ed. 681 (1954). An agency such as DHS can therefore be bound by its own procedures when they (1) prescribe substantive rules-*not* interpretive rules, general statements of policy or rules of agency organization, procedure or practice; and (2) conform to certain procedural requirements." *U.S. v. Fifty-Three Eclectus Parrots*, 685 F.2d 1131, 1136. These requirements are satisfied when the rule or regulation "is legislative in nature, affecting individual rights and obligations" and was "promulgated pursuant to a specific statutory grant of authority and in conformance with the procedural requirements imposed by Congress." *Id*.

As explained above, Plaintiffs point to 8 C.F.R. § 103.2(b)(16)(i) and the USCIS Adjudicator's Field Manual to argue that these regulations serve as guidance with respect to the meaning of the Lautenberg Amendment's "maximum extent feasible" requirement. Plaintiffs also argue that these regulations and policies actually apply to all refugee applications, including those applications made pursuant to the Lautenberg Amendment. *See* MSJ at 16-17. Accordingly, Plaintiffs argue that the Notices are unlawful because they withhold information from Plaintiffs that is required under the applicable regulations and agency policies.

DHS does not argue that the requirements of the *Accardi* doctrine are not met, effectively conceding that the regulations are substantive and binding as they are published in the Code of Federal Regulations. Rather, DHS argues that the *Accardi* doctrine is inapplicable because neither 8 C.F.R. § 103.2(b)(16)(i) nor the USCIS Adjudicator's Field Manual applies to refugee applications adjudicated under 8 U.S.C. § 1157(c)(1). *See* Opp'n to MSJ at 14-15. DHS points out that § 1157 is not included as the governing authority cited in § 103.2(b)(16)(i), and it is undisputed that DHS has never published regulations regarding the Lautenberg Amendment specifically. With respect to the USCIS Field Manual, DHS represents that the Refugee Affairs Division ("RAD") within USCIS has its own guidance for adjudicating refugee applications under

30

the Lautenberg Amendment—as provided in the template that was used to notify Does 3, 4 and 5

of their ineligibility. When RAD's guidance requiring an officer to state the reasons for a

discretionary denial of an application to the maximum extent feasible conflicts with the

requirements under Section 10.7(b)(3) of the Field Manual that a fuller explanation be given, DHS

argues that RAD's guidance prevails under agency policy. *See* Opp'n to MSJ at 15.

       In *Ghafoori v. Napolitano*, the court considered whether DHS violated its own regulations

in the processing of a Refugee/Asylee Relative Petition, which is a benefit request under the

Refugee Act like the applications under the Lautenberg Amendment. 713 F. Supp. 2d 871 (N.D.

Cal. 2010). The court explained that 8 C.F.R. § 103.2(b)(16), the same regulation at issue here,

provides that a petitioner "shall be permitted to inspect the record of proceeding which constitutes

the basis for the decision, except as provided in" four subsequent paragraphs. *Id.* at 879. The first

of those exceptions is for "derogatory information" unknown to the petitioner; when an adverse

decision will be based on such information, the petitioner "shall be advised of this fact and offered

an opportunity to rebut the information ..., except as provided in" the next three paragraphs. 8

C.F.R. § 103.2(b)(16)(i). The plaintiff in *Ghafoori* claimed that DHS violated the following

paragraph, which provides that "[a] determination of statutory eligibility shall be based only on

information contained in the record of proceeding which is disclosed to the applicant or petitioner,

except as provided in paragraph (b)(16)(iv) of this section." 8 C.F.R. § 103.2(b)(16)(ii). The last

two paragraphs permit reliance on classified information, which a petitioner is not permitted to

access. 8 C.F.R. § 103.2(b)(16)(iii)-(iv); *see Ghafoori*, 713 F.Supp.2d at 879.

       The *Ghafoori* court held DHS to the requirements of 8 C.F.R. § 103.2(b)(16) in processing

a refugee application. 713 F. Supp.2d at 881 ("The Court concludes that the Service violated 8

C.F.R. § 103.2(b)(16)(ii) by deciding Plaintiff's I–730 petition based on an evaluation of x-rays

that were not disclosed to Plaintiff.") *Ghafoori* therefore directly contradicts DHS's argument that

8 C.F.R. § 103.2(b)(16) does not apply to refugee applications. DHS does not even attempt to

distinguish the case. *See generally* Opp'n to MSJ.

       In addition, Plaintiffs point out that the regulatory section of 8 C.F.R. § 103.2 is titled

"Submission and adjudication of benefit requests" and refugees must apply for admission to the

United States by submitting an "application" which DHS itself has defined as a "benefit request." *See* 8 C.F.R. § 207.1; *see also* 8 C.F.R. § 1.2.  Although DHS is correct that § 103 does not reference the Refugee Act as its governing authority, Plaintiffs argue that 5 U.S.C. § 301 *is* explicitly listed and that statute provides that "[t]he head of an Executive department or military department may prescribe regulations for the government of his department, the conduct of its employees, the distribution and performance of its business, and the custody, use, and preservation of its records, papers, and property." 5 U.S.C.A. § 301 (West).  Thus, Plaintiffs persuasively argue that DHS promulgated 8 C.F.R. § 103 as a regulation that applies broadly to the adjudication of benefit requests within its authority, such as refugee applications.  For these reasons, the Court finds that 8 C.F.R. § 103.2(b)(16) applies to refugee applications.

Similarly, the Court is not persuaded by DHS's unsupported argument that the Adjudicator's Field Manual does not apply to adjudication of refugee applications to the extent it conflicts with RAD's unspecified guidance.  The only evidence to support this contention comes from the Ruppel Declaration, which the Court has already stricken on the grounds that Ruppel has not established how she knows that any of the conclusory facts contained in the declaration are true.  The bare assertion that it is actually RAD's practice to ignore its own policies set forth in the Adjudicator's Field Manual when it conflicts with "RAD practice" actually underscores the merits of Plaintiffs' *Accardi* doctrine claim.

For the foregoing reasons, the Court finds that 8 C.F.R. § 103.2(b)(16) and the USCIS Adjudicator's Field Manual apply to refugee applications such as those adjudicated under the Lautenberg Amendment.  Based on the record before the Court, and because DHS has presented no argument that the February 2018 Notices of Eligibility in fact complied with these standards, the Court finds that the Notices fell short of the procedures set by DHS's own regulations.

#### iv.       Remaining Arguments

In addition to their arguments under the Lautenberg Amendment and *Accardi* doctrine, Plaintiffs move for summary judgment on their fifth claim for relief, that the Notices of Ineligibility violate the Due Process rights of Doe 1 and Doe 2 only.  *See* MSJ at 17-19.  Plaintiffs further argue that once the Court determines that the Notices of Ineligibility are unlawful under

United States District Court
Northern District of California

1     any of the three bases discussed above (Lautenberg Amendment, *Accardi* doctrine, and Due

2     Process), the Court can set aside the unlawful Notices pursuant to APA § 706(2).  In the

3     alternative to exercising its equitable powers in conjunction with § 706(2), Plaintiffs argue that the

4     Court could compel issuance of lawful notices under APA § 706(1), or could enter a writ of

5     mandamus pursuant to 28 U.S.C. § 1361 ordering issuance of lawful notices.  *See* MSJ at 19-24.

6         At the June 22, 2018 hearing, Plaintiffs stated that the Lautenberg Amendment provides

7     the broadest relief sought in their motion for partial summary judgment.  *See* June 22, 2018

8     Hearing Transcript at 8:2-12, ECF 84.  Plaintiffs confirmed that their arguments regarding the

9     unlawfulness of the Notices and the options for granting equitable relief were presented as

10    alternatives.  Thus, the Court need not reach the remaining arguments to the extent it finds that the

11    Notices of Ineligibility are unlawful under the Lautenberg Amendment and sets the Notices aside

12    under the APA.

13        With respect to Plaintiffs' Due Process claim on behalf of Doe 1 and Doe 2, principles of

14    judicial restraint and constitutional avoidance direct this Court to refrain from addressing the

15    constitutional issue when Plaintiffs' claims can be fully disposed of on statutory grounds.  *See*

16    *Spector Motor Serv. v. McLaughlin*, 323 U.S. 101, 105 (1944) ("If there is one doctrine more

17    deeply rooted than any other in the process of constitutional adjudication, it is that we ought not to

18    pass on questions of constitutionality…unless such adjudication is unavoidable.") *see also*

19    *Ashwander v. TVA,* 297 U.S. 288, 347 (1936) (Brandeis, J., concurring) ("The Court will not pass

20    upon a constitutional question although properly presented by the record, if there is also present

21    some other ground upon which the case may be disposed of").  This is especially so in light of

22    Plaintiffs' representation that their Due Process claim is a more narrow alternative to the

23    Lautenberg Amendment claim, since the Due Process claim impacts only the two U.S. citizen

24    named Plaintiffs and would not provide class relief.

25        Turning to the equitable relief sought by Plaintiffs, the Court has the authority to set aside

26    the unlawful Notices of Ineligibility pursuant to the Administrative Procedure Act.  APA § 702

27    provides the Court with authority to review challenges brought by "[a] person…aggrieved by

28    agency action." 5 U.S.C. § 702.  In determining whether Plaintiffs have standing to bring claims

1   under the APA, the Court applies the "zone-of-interests" test which looks to whether the interest

2   sought to be protected by Plaintiffs "is arguably within the zone of interests to be protected or

3   regulated by the statute or constitutional guarantee in question." *Bennett v. Spear*, 520 U.S. 154,

4   175, 117 S. Ct. 1154, 1167, 137 L. Ed. 2d 281 (1997); *Lexmark Int'l, Inc. v. Static Control*

5   *Components, Inc.*, 134 S.Ct. 1377, 1388 (2014) (finding that APA extends only to plaintiffs whose

6   interests "fall within the zone of interests protected by the law invoked.")

7          The Supreme Court has explained in the APA context that the Zone of Interest test is not

8   "especially demanding." *Lexmark,* 134 S.Ct. at 1388 (quoting *Match–E–Be–Nash–She–Wish Band*

9   *of Pottawatomi Indians v. Patchak*, 132 S.Ct. 2199, 2210 (2012)).  The word "arguably" in the

10  formulation of the test indicates that "the benefit of any doubt goes to the plaintiff," and the test

11  "forecloses suit only when a plaintiff's interests are so marginally related to or inconsistent with

12  the purposes implicit in the statute that it cannot reasonably be assumed that Congress authorized

13  that plaintiff to sue." *Lexmark*, 134 S.Ct. at 1389.  Plaintiffs argue that the refugee applicants in

14  Vienna are squarely within the zone of interests of the Refugee Act, including the Lautenberg and

15  Specter Amendments.  *See* MSJ at 19.  The U.S. ties in this case also fall within the zone of

16  interests in light of principles of family integrity that is embedded within immigration laws.  *See*

17  *Kaliski v. Dist. Dir. of Immigration & Naturalization Serv.*, 620 F.2d 214, 217 (9th Cir. 1980)

18  (noting the "humane purpose" of the Immigration and Nationality Act's is "to reunite families").

19         DHS does not dispute that Plaintiffs fall within the Lautenberg Amendment's "zone of

20  interests," as the statute explicitly includes Iranian religious minorities as a category of individuals

21  entitled to special protections.  *See* June 22, 2018 Hearing Transcript at 28:20-29:2 ("So certainly

22  [Plaintiffs] are affected by these decisions, they are affected by decisions concerning the

23  Lautenberg Amendment, there's no doubt.  There's definitely harm there.")  The record further

24  indicates that Plaintiffs had already met certain qualifications under the Lautenberg-Specter

25  Program and were issued visas to travel to Vienna, where historically others in their position

26  enjoyed quick and successful processing of their applications.  The Court therefore finds that

27  Plaintiffs satisfy the zone of interests test and have standing under the APA.

28         Under APA § 706(2), the Court has the equitable power to "hold unlawful and set aside

agency action" found to be: (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; … (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; or (D) without observance of procedure required by law.  5 U.S.C.A. § 706(2)(A), (C), (D) (West).  In addition, the Court has equitable powers in an APA case to order "mandatory affirmative relief if such relief is necessary to accomplish complete justice." *Nw. Envtl. Def. Ctr. v. Bonneville Power Admin.*, 477 F.3d 668, 680–81 (9th Cir. 2007).  Moreover, "when federal statutes are violated, the test for determining if equitable relief is appropriate is whether an injunction is necessary to effectuate the congressional purpose behind the statute." *Biodiversity Legal Found. v. Badgley*, 309 F.3d 1166, 1177 (9th Cir. 2002).  The Court finds that the equitable relief requested by Plaintiffs—setting aside the unlawful Notices, requiring that any re-issued Notices of Ineligibility comply with the law, and re-instating the 90-day period for filing RFRs— is consistent with the congressional purpose of the Lautenberg Amendment and Refugee Act.

DHS argues only that nonreviewability principles preclude any review of an exclusion order under APA § 706(2). Opp'n to MSJ at 11-12.  For the reasons discussed at length above, the Court finds that DHS's nonreviewability argument is misplaced.  Plaintiffs do not seek review of the decision to exclude them from the United States, and the Court takes no position with respect to whether DHS should grant or deny Plaintiffs' applications.

Plaintiffs cite to several cases demonstrating that courts in APA cases have heard analogous challenges to an agency's non-compliance with a mandatory duty.  *See, e.g.*, *Rivas v. Napolitano*, 714 F.3d 1108, 1110-12 (9th Cir. 2013) (holding that consular non-reviewability does not bar using the APA, the Mandamus Act, and the Declaratory Judgment Act to enforce a non-discretionary duty of the consul to act on a request for reconsideration of the visa application once the duty is triggered); *Singh v. Clinton*, 618 F.3d 1085, 1088, 1093 (9th Cir. 2010) (remanding to set aside visa termination that failed to follow statutory requirements and noting that government "correctly" abandoned non-reviewability argument); *Patel v. Reno*, 134 F.3d 929, 931-32 (9th Cir. 1997) (exercising jurisdiction over challenge to authority to suspend visa applications which is not a challenge to "a decision within the discretion of the consul");  *see also Ibrahim v. Dep't of Homeland Sec.*, 62 F. Supp. 3d 909, 932-34 (N.D. Cal. 2014); *Atiffi v. Kerry*, CIV. S-12-3001

35

1    LKK/DAN, 2013 WL 5954818, at *7 (E.D. Cal. Nov. 6, 2013) (holding that Plaintiff states a

2    reviewable APA claim for consul's failure to provide an explanation for the visa denial); *Amidi v.*

3    *Chertoff*, No. 07 Civ. 710, 2008 WL 2662599, *3-4 (S.D. Cal. Mar. 17, 2008) (finding that

4    consulate's decision to terminate or cancel the application is reviewable because it does not

5    challenge "the discretionary decision of whether to approve or deny the application.")  DHS does

6    not address or distinguish any of these cases in its opposition.

7         For the foregoing reasons, the Court SETS ASIDE the February 2018 Notices of

8    Ineligibility pursuant to APA §§ 702, 706(2), and this Court's equitable powers. [18]

9                   **C.    Order on Motion for Partial Summary Judgment[19]**

10        Having considered Plaintiffs' Motion for Partial Summary Judgment, filed on April 20,

11   2018, the Declarations of Belinda S. Lee, Samuel Witten, Adam Bates, and Does 1-5 filed in

12   support thereof, any papers filed in response, submissions from counsel, as well as all other

13   arguments and the record of the case; having granted Plaintiffs' Amended Motion for Class

14   Certification filed on May 18, 2018, discussed above; and good cause appearing therefor, the

15   Court hereby ORDERS as follows:

16        1.     The Court GRANTS partial summary judgment in favor of Plaintiffs (used herein

17   to include named plaintiffs and class members) as to their claim for declaratory relief.  The Court

18   hereby DECLARES that the Notices of Ineligibility issued to Plaintiffs are unlawful for failure to

19   "state, to the maximum extent feasible, the reason for the denial" as required by the Lautenberg

20   Amendment, P.L. 101-167, Title V, § 599D, as amended in 8 U.S.C. § 1157 (note).

21        2.     The Court GRANTS partial summary judgment in favor of Plaintiffs as to their

22   claim for relief under 5 U.S.C. § 702 and 5 U.S.C. § 706(2), and hereby ORDERS that the Notices

23   of Ineligibility issued to Plaintiffs are set aside on the basis that they fail to "state, to the maximum

24

25   [18] In light of this Court's finding that the Notices violate the Lautenberg Amendment and are set
     aside pursuant to APA § 706(2), the Court does not reach summary judgment of Doe 1 and Doe
26   2's Due Process claims or Plaintiffs' claims for equitable relief under APA § 706(1) and the
     Mandamus Act.
27   [19] In line with the Court's guidance at the June 22, 2018 hearing, Plaintiffs submitted an Amended
     Proposed Order Granting Plaintiffs' Motion for Partial Summary Judgment which the Court now
28   approves, as modified.  *See* ECF 83.

1   extent feasible, the reason for the denial," as required by the Lautenberg Amendment, P.L. 101-

2   167, Title V, § 599D, as amended in 8 U.S.C. § 1157 (note).

3          3.     The Court GRANTS partial summary judgment in favor of Plaintiffs as to their

4   claim for relief under 5 U.S.C. § 702 and hereby ORDERS Defendants to issue notices containing

5   their determinations to re-open processing or to deny Plaintiffs' refugee applications.  **Defendants**

6   **shall issue those notices and serve them upon Plaintiffs and Plaintiffs' counsel within 14 days**

7   **of this Order.**

8          4.     In the event that Defendants re-issue notices denying any of Plaintiffs' refugee

9   applications, it is further ORDERED that any such notice comply with the Lautenberg

10  Amendment by stating "to the maximum extent feasible, the reason for the denial," including by

11  stating the individualized reason(s) for that denial and complying with the requirements of 8

12  C.F.R. § 103.2(b)(16) and the Adjudicators' Field Manual 10.7(b).  Any denial notice shall

13  provide Plaintiffs 90 days from the date of issuance of the notice within which to apply for

14  requests for review.

15         5.     In order to ensure compliance with this Court's order, it is ORDERED that

16  Defendants shall file a declaration with the Court **within 21 days of this Order:** (a) certifying

17  completion of the issuance and service of notices required in Paragraph 3 of this Order or

18  explaining the efforts undertaken to complete issuance and service in the event the Order has not

19  been fully complied with; and (b) to the extent that Defendants have withheld any part or all of the

20  individualized reason(s) for the denial required under Paragraph 4, stating the basis for

21  withholding the individualized reason(s).

22

23         **IT IS SO ORDERED.**

24

25  Dated: July 10, 2018

26                                          _____

27                                          BETH LABSON FREEMAN
                                            United States District Judge

28

United States District Court
Northern District of California