UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JANE DOE 1, et al., <br> Plaintiffs, <br> v. <br> KEVIN K. MCALEENAN, et al., <br> Defendants. | Case No. 18-cv-02349-BLF (VKD) <br><br> **ORDER RE MAY 7, 2019 JOINT DISCOVERY LETTER** <br> Re: Dkt. No. 180 |

The parties dispute whether defendants may rely on the law enforcement and deliberate process privileges for redactions they have made to certain documents produced during jurisdictional discovery, and whether defendants may also redact as "non-responsive" material that does not concern the agency activity at issue in this case. Dkt. No. 180. After the parties filed a joint submission, defendants filed four supporting declarations. Dkt. Nos. 192, 193, 194, 195. With the Court's permission, plaintiffs submitted supplemental briefing addressing these supporting declarations. Dkt. No. 205. The Court held a hearing on this matter on July 9, 2019. Dkt. No. 208.

For the reasons explained below, the Court sustains in part and overrules in part defendants' claims of law enforcement privilege and deliberative process privilege. The Court also sustains in part and overrules in part defendants' redactions of certain information as "non-responsive."

**I. BACKGROUND**

In this action, plaintiffs seek review under the Administrative Procedures Act ("APA") of changes defendants allegedly made to the Lautenberg-Specter program for processing the refugee applications of Iranian religious minorities. Dkt. No. 1 ¶¶ 95-96. Defendants contend that there is

1 no final agency action to review, as no changes were made to the Lautenberg-Specter program; rather, U.S. Citizenship and Immigration Services ("USCIS") simply began using information derived from enhanced security screening techniques as part of its overall consideration of applicants' admissibility. Dkt. No. 96 (Section V.C.); Dkt. No. 100 at 6–7. The Court permitted plaintiffs to take jurisdictional discovery regarding the nature of the agency action at issue. Dkt. No. 102.

Defendants' document production includes key policy documents explaining the Security Advisory Opinion ("SAO") vetting changes. Dkt. No. 180 at 3. The parties agree that these documents are critical to resolution of the jurisdictional question in this matter, as they concern the nature of the changes at issue in plaintiffs' remaining claim for relief. *Id.* Plaintiffs say that defendants have improperly invoked the law enforcement and deliberative process privileges with respect to these documents, which are so heavily redacted that plaintiffs cannot decipher them. *Id.* In addition, plaintiffs contend that, having identified these documents as responsive to plaintiffs' document requests, defendants should not be permitted to redact portions of them as "non-responsive." *Id.* The parties' dispute concerns similar redactions made to documents applying the vetting changes to individual applicants' cases, which defendants have also agreed to produce as part of jurisdictional discovery. *Id.*

For purposes of this dispute, the parties have selected an agreed-upon sample of 57 redacted documents for which defendants have provided a privilege log, encompassing more than 300 discrete claims of privilege or non-responsiveness. Defendants have submitted unredacted copies of the 57 documents for in camera review.

## II. LEGAL STANDARDS

### A. Law Enforcement Privilege

According to defendants, the "law enforcement privilege" protects from disclosure information whose release would be contrary to the public interest in the effective functioning of law enforcement because disclosure would undermine the integrity of law enforcement techniques. *Id.* at 10 (citing *A.N.S.W.E.R. Coalition v. Jewell*, 292 F.R.D. 44, 50 (D.D.C. 2013).

As plaintiffs observe, the Ninth Circuit has not formally recognized a law enforcement

2

privilege in the context of discovery in a civil action.[1] *Id.* at 3 n.3. However, several other courts of appeal and several district courts within the Ninth Circuit have recognized such a privilege, and plaintiffs do not challenge the existence of such a privilege here. *See In re City of New York*, 607 F.3d 923, 940–41 (2d Cir. 2010); *Commonwealth of Puerto Rico v. United States*, 490 F.3d 50, 64 (1st Cir. 2007); *Dellwood Farms, Inc. v. Cargill, Inc.*, 128 F.3d 1122, 1124–1125 (7th Cir. 1997); *In re Dep't of Homeland Sec.*, 459 F.3d 565, 569 (5th Cir. 2006); *In re Sealed Case*, 856 F.2d 268, 272 (D.C. Cir. 1988); *Wagafe v. Trump*, No. C17-94 RAJ, 2018 WL 1737939, at *2 (W.D. Wash. Apr. 11, 2018); *Hampton v. City of San Diego*, 147 F.R.D. 227, 230–31 (S.D. Cal. 1993); *Miller v. Pancucci*, 141 F.R.D. 292, 300 (C.D. Cal. 1992); *Kelly v. City of San Jose*, 114 F.R.D. 653, 669–70 (N.D. Cal. 1987); *see also* Dkt. No. 209.

As described by other courts, the law enforcement privilege protects against disclosures that would reveal confidential sources, law enforcement techniques, and the identities of witnesses and law enforcement personnel. It also safeguards the privacy of those involved in a criminal investigation and otherwise prevents interference with a criminal investigation. *City of New York*, 607 F.3d at 940–41, 944, 948; *In re Sealed Case*, 856 F.2d at 27. The party asserting the privilege bears the burden of showing that the privilege applies. *City of New York*, 607 F.3d at 944. The privilege is qualified, not absolute, and must give way when the needs of a particular litigant for access to the information outweigh the public interest in non-disclosure. *Id.*; *In re Dep't of Homeland Sec.*, 459 F.3d at 569; *In re Sealed Case*, 856 F.2d at 272.

While the parties generally agree on what the privilege protects, they disagree regarding how the privilege should be invoked and applied. A claim of law enforcement privilege must be supported by the declaration of an appropriate agency official who has personally considered the materials at issue. *See, e.g.*, *Landry v. F.D.I.C.*, 204 F.3d 1125, 1135–36 (D.C. Cir. 2000) (discussing cases). Some courts hold that once a court determines that the privilege applies, a presumption of non-disclosure arises that may only be overcome by a showing of compelling need

---

[1] In *Roviaro v. United States*, 353 U.S. 53, 59 (1957), the Supreme Court recognized a qualified privilege to withhold the identities of confidential informants to "protect[] the public interest in effective law enforcement."

3

for the information. *See, e.g.*, *City of New York*, 607 F.3d at 944. Others simply hold that the court must weigh the government's interest in non-disclosure against a party's need for the documents. *See, e.g.*, *In re Dep't of Homeland Sec.*, 459 F.3d at 570.

The Court is not persuaded that the analytical framework for the "official information privilege" described in *Kelly v. City of San Jose*, 114 F.R.D. 653 (N.D. Cal. 1987), which plaintiffs cite, applies to this dispute. By its own terms, the *Kelly* framework is tailored to address the competing interests involved when a plaintiff in a federal civil rights case seeks information from a state or local law enforcement agency. *Kelly*, 114 F.R.D. at 659–60. By contrast, this dispute arises in a case seeking review of federal agency action under the APA. While the thoughtful and comprehensive discussion in *Kelly* may inform the resolution of the contested privilege issues in this case, neither the framework nor its specific procedural requirements must be followed here.

In assessing whether a litigant's need for information outweighs the public's interest in non-disclosure, courts consider several factors: (1) the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information; (2) the impact upon persons who have given information of having their identities disclosed; (3) the degree to which governmental self-evaluation and consequent program improvement will be chilled by disclosure; (4) whether the information sought is factual data or evaluative summary; (5) whether the party seeking discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question; (6) whether the police investigation has been completed; (7) whether any interdepartmental disciplinary proceedings have arisen or may arise from the investigation; (8) whether the plaintiff's suit is non-frivolous and brought in good faith; (9) whether the information sought is available through other discovery or from other sources; and (10) the importance of the information sought to the plaintiff's case.[2] *See United States v. Larson*, No. 12-CR-00886-BLF-1, 2014 WL 5696204, at *4 (N.D. Cal. Nov. 4, 2014); *Kelly*, 114 F.R.D. at 663–68.

---

[2] Several of these factors are most relevant to consideration of the privilege as it relates to confidential informants, which is not asserted here.

4

## B. Deliberative Process Privilege

The "deliberative process privilege" is well-defined by the Supreme Court and in the Ninth Circuit. The deliberative process privilege protects the decision-making processes of government agencies. To that end, the privilege protects "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001) (internal quotation marks omitted). "A document must meet two requirements for the deliberative process privilege to apply. First, the document must be predecisional—it must have been generated before the adoption of any agency's policy or decision." *FTC v. Warner Commc'ns Inc.*, 742 F.2d 1156, 1161 (9th Cir. 1984). "Second, the document must be deliberative in nature, containing opinions, recommendations, or advice about agency policies." *Id.* "Purely factual material that does not reflect deliberative processes is not protected." *Id.*

Like the law enforcement privilege, the deliberative process privilege must be supported by the declaration of an appropriate agency official who has personally considered the materials at issue. *See, e.g.*, *In re McKesson Gov'tal Entities Average Wholesale Price Litig.*, 264 F.R.D. 595, 601, 602 (N.D. Cal. 2009) (discussing cases). Also, like the law enforcement privilege, the deliberative process privilege is qualified, not absolute. "A litigant may obtain deliberative materials if his or her need for the materials and the need for accurate fact-finding overrides the government's interest in non-disclosure." *Warner*, 742 F.2d at 1161. In weighing the competing interests, a court may consider: (1) the relevance of the evidence; (2) the availability of other evidence; (3) the government's role in the litigation; and (4) the extent to which disclosure would hinder frank and independent discussion regarding contemplated policies and decisions. *Id.*

## III. DISCUSSION

### A. Invocation of the Privileges

As a threshold matter, plaintiffs contend that defendants have failed to properly invoke both the law enforcement privilege and the deliberative process privilege on two grounds. First, plaintiffs argue that defendants did not formally invoke these privileges as required by filing supporting declarations of officials with the necessary authority to assert these privileges on behalf

5

of the relevant agencies. Dkt. No. 180 at 5; Dkt. No. 205 at 1. Second, plaintiffs argue that defendants' supporting declarations, filed months after defendants initially refused to produce unredacted responsive documents, are untimely. Dkt. No. 180 at 5; Dkt. No. 205 at 1 & n.1. The Court separately considers each argument.

### 1. Authority to Assert the Privileges

Plaintiffs argue that assertion of these privileges requires a formal claim of privilege by the head of the relevant agency that controls the matter at issue, unless that responsibility is formally delegated to a high-ranking subordinate official. Dkt. No. 205 at 1–5. Plaintiffs principally rely on a district court decision in *Chao v. Westside Drywall* addressing the procedures for invoking the "government informant's privilege." *See* 254 F.R.D. 651, 655–56 (D. Or. 2009) (citing *Roviaro*, 353 U.S. at 59). *Chao* concluded that all government privileges, regardless of type, must satisfy the formal requirements described in *United States v. Reynolds*, 345 U.S. 1, 7–8 (1953), a case addressing the "state secrets privilege." *Id.* at 657. Defendants do not address these concerns.

Neither the "government informant's privilege" nor the "state secrets privilege" is at issue here. As far as this Court can determine, the Ninth Circuit has not required strict compliance with the formal requirements in *Reynolds* as a condition for invoking *any* government privilege, or for invoking the law enforcement and deliberate process privileges, specifically. Moreover, other circuits have distinguished the state secrets privilege (which is an absolute privilege) from the law enforcement and deliberative process privileges (which are qualified privileges) and have adopted more flexible requirements for assertion of these qualified privileges. *See Landry*, 204 F.3d at 1136 (permitting lesser officials to assert the deliberative process and law enforcement privileges); *Marriott Int'l Resorts, L.P. v. United States*, 437 F.3d 1302, 1308 (Fed. Cir. 2006) (following *Landry*).[3]

---

[3] In a recent decision reviewing a district court's consideration of the presidential communication privilege and the deliberative process privilege, the Ninth Circuit cited *Reynolds* for the proposition that the presidential communication privilege "is an extraordinary assertion of power 'not to be lightly invoked.'" *Karnoski v. Trump*, 926 F.3d 1180, 1204 (9th Cir. 2019). However, in remanding to the district court, the Ninth Circuit did not comment on the need for compliance with formal requirements for assertion of either privilege and criticized the district court's

6

Here, defendants rely on the declarations of Joann Ruppel and Matthew Lenkowsky to support claims of privilege made by USCIS. Dkt. Nos. 192, 193. Ms. Ruppel is the Chief of the Refugee Affairs Division within the Refugee, Asylum, and International Operations ("RAIO") Directorate of USCIS. Mr. Lenkowsky was the Branch Chief of the Security Vetting and Program Integrity Branch of the Refugee Affairs Division RAIO until April 2018, and is now a Special Assistant in RAIO. Defendants rely on two declarations of Lawrence Bartlett to support claims of privilege made by the U.S. Department of State. Mr. Bartlett is the Director of the Office of Admissions, Bureau of Population, Refugees, and Migration and oversees the U.S. Refugee Admissions Program on behalf of the Department of State. Dkt. Nos. 194, 195. Ms. Ruppel and Mr. Bartlett appear to hold positions of appropriate authority within their respective agencies, and both testify that they have personal knowledge of the materials for which privileges are claimed and the basis for those privileges. Mr. Lenkowsky appears to have once held a position of authority within USCIS, but now serves only as an advisor. Although he also testifies that he has personal knowledge of the materials for which privileges are claimed, the declaration provides no indication that Mr. Lenkowsky is in a position, by formal delegation or otherwise, to assert a claim of privilege on behalf of USCIS.

The Court concludes that defendants may rely on the supporting declarations of Ms. Ruppel and Mr. Barlett to invoke the law enforcement and deliberative process privileges, but not on the declaration of Mr. Lenkowsky. Specifically, the Court finds that defendants have not properly invoked the law enforcement privilege as to redactions made on that basis in the following documents: DEF-00000143-0144, DEF-00005921-5924, DEF-00005983-5985, and DEF-00006004.

**2.     Timeliness of Assertion of the Privileges**

Defendants' production of responsive documents in this case has been characterized by extensive and unreasonable delays. Dkt. Nos. 133, 141, 148, 150, 159, 163, 167, 169. Plaintiffs

---

"mistaken assumption" that the President is required to assert the presidential communications privilege with respect to specific documents covered by plaintiffs' discovery requests as a condition for objecting to discovery on separation-of-powers grounds. *Id*. at 1205.

7

observe that the government did not submit declarations supporting its assertions of privilege for several months after it first made privilege claims and delayed submitting declarations for nearly one month after the parties briefed the dispute to the Court. Dkt. No. 205 at 1. However, at least some portion of the delay associated with defendants' belated filing of supporting declarations stems from defendants' need to take corrective action to address the possible unauthorized disclosure of documents containing classified national security information. *See* Dkt. No. 213-1. While this problem was entirely of the government's own making, the Court declines to find that defendants' delay should preclude the Court's consideration of defendants' privilege claims on the merits.

### B.     Law Enforcement Privilege

Defendants rely on the law enforcement privilege as the basis for redactions in all of the 57 documents submitted for review. With the exception of four documents produced by USCIS, defendants rely on the declaration of Mr. Bartlett to support their assertion of the law enforcement privilege. *See* Dkt. No. 194. Defendants invoke the law enforcement privilege with respect to four categories of information: (1) the specific vetting techniques used by the FBI's Foreign Terrorist Tracking Task Force ("FTTTF") as part of the SAO review; (2) descriptions of refugee national security screening procedures; (3) names and contact information of law enforcement personnel and intelligence community personnel; and (4) names of agencies involved in setting or performing security screening procedures. Plaintiffs do not challenge defendants' "limited withholding of the names and contact information of particular law enforcement personnel." Dkt. No. 180 at 7 n.11. However, plaintiffs contend that defendants are attempting to protect from disclosure information that has already been disclosed, and they further contend that their need for the information in this case outweighs defendants' and the public's interest in non-disclosure. *Id.* at 6–7.

In addition to the parties' submissions, the Court has reviewed the 57 documents submitted for in camera review and defendants' corresponding privilege log. For the reasons explained below the Court finds sustains some of defendants' privilege claims and overrules others.

### 1. Vetting Techniques and Screening Procedures

Defendants say that the particular name of the vetting technique at issue in this case is classified as "SECRET," but they have confirmed to the Court that nothing in the documents submitted for in camera review, including references to or descriptions of that vetting technique, is classified. Dkt. No. 201 at 2. Defendants also say that revealing the technique and agency security screen procedures would permit "nefarious actors" to avoid detection by concealing facts about their case. As reflected in the parties' joint submission, plaintiffs in this action have learned or deduced from other documents produced in discovery and from public sources certain information about the vetting technique and screening procedures at issue in this case:

> Based on discovery so far, Plaintiffs believe that the agency action that resulted in the majority of class members' denials relates to the transfer of SAO vetting to FBI's Foreign Terrorist Tracking Task Force ("FTTTF"). In late 2015 the SAO Requirements Review Board . . . approved this transfer and increased data collection from refugee applicants for the revised process. Plaintiffs believe that under the revised process, the FBI returned a "not clear" ("NCL") SAO result when it found a refugee applicant twice removed (or within "two hops") from a "bad actor," defined to include any person subject to an open FBI investigation—even though investigations can be opened without reasonable suspicion. The Defendant agencies then, by policy, issued a denial based on the SAO "not clear" result.

Dkt. No. 180 at 5. Plaintiffs explain that the two hops-removed assessment is ███████████████████████████, as described in other documents produced by defendants and in a decision reviewing a similar program the National Security Agency conducted, *ACLU v. Clapper*, 785 F.3d 787, 797 (2d Cir. 2015). *Id.* at 7.[4] The precise details of how the vetting is conducted and the results of vetting in particular cases have not been disclosed to plaintiffs or to the public.

In these circumstances, defendants cannot establish that the law enforcement objectives and interests associated with the particular vetting technique used by FTTTF are compromised by disclosure of that information to plaintiffs where the information is already a matter of public record or is already known to plaintiffs. The details of the vetting technique and its application in

---

[4] In their supplemental submission, plaintiffs elaborate on information that they contend has already been produced without redactions or is publicly known. Some of that material is not before the Court and the Court has not been able to weigh those prior disclosures against defendants' privilege claims. However, the Court would expect that if defendants have made such disclosures, they will not maintain privilege claims regarding that material.

9

particular cases are another matter. The Court finds that the disclosure of such details implicates the interests the law enforcement privilege is intended to protect and that defendants have demonstrated that the privilege applies to the portions of the disputed documents that contain these details.

Because the law enforcement privilege is qualified, even if the privilege applies, the Court considers whether the plaintiffs' need for the information outweighs the public's interest in non-disclosure. Although neither party addresses all of the several factors the Court should consider, defendants focus on the government's interest in promoting the national security by ensuring that the operational details of defendants' security vetting techniques procedures are not disclosed in a manner that would enable "those seeking to exploit our immigration system" and "[those] with intent to do harm to the nation by criminal means" to evade detection. *See, e.g.*, Dkt. No. 194 ¶¶ 9-12. Plaintiffs focus on their need for factual information about the defendant agencies' actions at issue in this case, the fact that the information cannot be obtained from other sources, and their good faith in asserting their claim. *See* Dkt. No. 180 at 7. Plaintiffs also note that defendants may rely on the protections of the protective order in this case with respect to any information that defendants contend should not be disclosed publicly. *Id.*

Having considered these factors, the Court concludes that plaintiffs have demonstrated a critical need for accurate information about changes made to the Lautenberg-Specter program for processing refugee applications, including changes to the vetting technique and procedures used to screen the applicants. That information is key to the Court's eventual resolution of the jurisdictional challenge defendants have raised. Plaintiffs' need for this information weighs heavily against defendants' privilege claims, as plaintiffs cannot obtain the information from any other source. However, plaintiffs do not need all of the detailed information they seek in order to address the jurisdictional question, which turns on the nature of the challenged agency action. If plaintiffs succeed on the question of jurisdiction, they may eventually need more detailed information about how denial decisions were made in individual applicants' cases, but they do not need that information at this time.

Accordingly, the Court overrules defendants' privilege claim with respect to information

10

describing the vetting technique and screening procedures at a relatively high level or reflecting how that technique and those procedures represent a change in defendants' review of refugee applications. The Court sustains defendants' privilege claim with respect to information that reveals operational details of the vetting technique and its application in particular cases. The Court's decisions on a claim-specific basis are noted in the attached Appendix.

### 2. Names of Law Enforcement and Intelligence Community Personnel and Participating Agencies

Plaintiffs do not challenge defendants' claim that the full names and contact information of law enforcement and intelligence community personnel should be treated as privileged, so long as that information has been maintained in confidence. Defendants highlight the importance of protecting agency personnel from harassment and annoyance, and they warn that disclosure could reveal statutorily protect information about agency employees and the entities that employ them. *See* Dkt. No. 194 ¶ 11. Defendants assert generally that this information is kept in confidence. *Id.* However, defendants do not identify specific harm that they believe may be associated with revealing the information at issue, and they do not address plaintiffs' observation that defendants have already revealed the identities and participation of some agency personnel in discovery that has already taken place.

Plaintiffs do challenge defendants' redactions of the names of participating agencies on the ground that such agency participation is already publicly known, has been revealed in other discovery, and does not implicate any serious law enforcement or national security concerns. Defendants rely on the conclusory assertion that disclosure of an agency's identity is contrary to statutory protections. *See, e.g.*, *id.* ¶ 10. Defendants do not address specific agencies or whether their involvement is already known, as plaintiffs contend.

Having reviewed the parties' submissions and the documents submitted in camera, the Court concludes that the law enforcement privilege applies to contact information of law enforcement and intelligence community personnel and that defendants may redact this information. Plaintiffs have not articulated any need for this specific information that would outweigh the public's interest here. The Court therefore sustains defendants' privilege claims as

to this information.

However, the Court is not persuaded that the privilege applies to the names of specific personnel or the names of specific agencies in the context in which these names appear in the documents—i.e., as participants in an email exchange or identified as attendees or proposed attendees at a meeting. Defendants have not shown that this information has been maintained in confidence, and according to plaintiffs, it has not. Moreover, the documents at issue do not reveal any details about a particular individual's role in the vetting procedures or other national security screening procedures that might compromise their ability to do their jobs or their personal privacy if their names are disclosed to plaintiffs. For many of the documents, redaction of this information makes the document difficult to read and understand, and makes it more difficult for plaintiffs to assess the nature of the agency action at issue. The Court therefore overrules defendants' privilege claim as to this information.

The Court's decisions on a claim-specific basis are noted in the attached Appendix.

### C. Deliberative Process Privilege

Defendants also rely on the deliberative process privilege as the basis for redactions in most of the 57 documents submitted for review. Relying on the declarations of Mr. Bartlett and Ms. Ruppel, defendants invoke the deliberative process privilege with respect to two categories of information: (1) documents describing changes to vetting techniques and security procedures, and (2) documents discussing applicant-specific vetting procedures and results.

#### 1. Discussion of Vetting Techniques and Screening Procedures

Defendants acknowledge that the deliberative process privilege applies to pre-decisional recommendations, proposals, discussions, and opinions, but they urge the Court to find that the privilege encompasses also factual material, to the extent it reflects the "mental processes" of the decision makers. *See* Dkt. No. 180 at 11. Plaintiffs argue that the Court must distinguish factual information about what changes were made to the vetting techniques and procedures from pre-decisional deliberations leading up to those changes. *Id.* at 7. Moreover, plaintiffs emphasize that information about the final SAO policies and changes to vetting techniques and procedures is directly relevant to their understanding of the nature of the agency action.

12

The documents for which defendants assert the deliberate process privilege include informal email communications and short meeting agendas, as well as more formal documents that summarize decisions made and actions to be taken. Having reviewed all of the documents in camera, the Court concludes that most (but not all) of the informal materials—while they may be pre-decisional—contain very little deliberation. They also contain very little that plaintiffs are likely to find useful in addressing the question of jurisdiction. However, the Court has overruled defendants' privilege claim where they do not contain anything that might be called "deliberative, "such as recommendations, opinions, advice, or proposals.

Conversely, most (but not all) of the more formal documents contain at least some information that is both pre-decisional and deliberative. The Court has carefully reviewed each of these documents and attempted to distinguish descriptions of final agency decisions or policies from those that are not final and still under discussion. *Compare, e.g.*, DEF-00006774 *with* DEF-00006619. In addition, where factual material is included in an otherwise deliberative document but is clearly distinct and severable, the Court has overruled the privilege claim as to the factual material. *See, e.g.,* DEF-00006422. In making these decisions, the Court has considered whether disclosure of particular material would hinder frank and candid discussion of changes to vetting policies and procedures. The Court is not persuaded that the limited disclosures this order requires would have any negative impact on agency decision-making. The Court has also considered that information reflecting final agency decisions about vetting techniques and procedures, and information reflecting how those techniques and procedures have changed, is critical to resolution of the jurisdictional question in this matter. As defendants are the only source for this information, these considerations weigh heavily against defendants' privilege claims.

The Court's decisions on a claim-specific basis are noted in the attached Appendix.

### 2. Applicant-Specific Vetting Procedures and Results

Defendants have redacted information that includes specific information about applicant decisions. Most of this information is not associated with a particular applicant, but rather takes the form of data about the numbers and types of denials. The documents the Court has reviewed reflect that agency personnel discussed and exchanged this data as part of an effort to evaluate the

13

efficacy of particular proposed vetting procedures. Thus, while the data may be considered factual, the discussions in which it appears are pre-decisional and deliberative. For this reason, the Court concludes that the privilege applies to discussions of applicant-specific data, including in the aggregate, where those discussions are conducted with a view towards evaluating proposed vetting procedures.

Unlike their need for other information concerning vetting techniques or procedures, plaintiffs have less need for applicant-specific data of the type defendants have redacted in the document submitted for in camera review. As discussed above, once the jurisdictional question is resolved, plaintiffs' need for this information can be reassessed.

The Court's decisions on a claim-specific basis are noted in the attached Appendix.

### D. Non-Responsive Documents

Plaintiffs object to defendants' redaction of material that defendants claim is "non-responsive" to plaintiffs' requests for jurisdictional discovery. As a general matter, plaintiffs are correct that it is improper to redact portions of otherwise responsive documents on grounds that those particular portions are not relevant or responsive. *Doe v. Trump*, 329 F.R.D. 262, 276 (W.D. Wash. 2018) ("[T]he unilateral redaction of irrelevant or nonresponsive material from otherwise responsive documents gives rise to suspicion that relevant material harmful to the producing party has been obscured and tends to make documents confusing or difficult to use.") (internal quotation marks and citation omitted); *United States v. McGraw-Hill Cos., Inc.*, No. 13-CV-0779-DOCJCGX, 2014 WL 8662657, at *4 (C.D. Cal. Sept. 25, 2014) ("[U]nilateral redactions are inappropriate if they seek not to protect sensitive or protected information, but merely to keep non-responsive information out of an adversary's hands."). The Court does not endorse defendants' redaction of "non-responsive" information simply because defendants view that information as irrelevant. However, having reviewed the *in camera* documents that contain "non-responsive" redactions, the Court concludes that most (but not all) of the redactions concern information programs or other matters that are not at issue in this case and that potentially implicate their own set of privileges. Given that these privileges must be raised by appropriate agency representatives with personal knowledge of the information at issue, the Court anticipates that it would need to go

14

through the same review and analysis that it has done here for another set of privilege claims with respect to material that has nothing to do with plaintiffs' claim in this case.

Given the focus of the parties' discovery, the Court will not require defendants to assert and support privileges as to truly unrelated material at this time, and will instead permit judicious and limited use of redactions for "non-responsive" information that would otherwise require a claim of privilege. Defendants should not consider this carte blanche to redact as "non-responsive" any "not relevant" portion of a document that it merely considers confidential.

The Court's decisions on a claim-specific basis are noted in the attached Appendix.

## IV. CONCLUSION

As discussed above, and as noted in detail in the attached Appendix, the Court sustains in part and overrules in part defendants' claims of law enforcement privilege and deliberative process privilege. The Court also sustains in part and overrules in part defendants' redactions of certain information as "non-responsive."

Defendants shall re-produce the 57 documents, as appropriate and consistent with the decisions reflected in this order, no later than **September 20, 2019**. This order is without prejudice to defendants' (or plaintiffs') invoking the protections of the protective order (Dkt. No. 135) to designate documents as Confidential.

**IT IS SO ORDERED.**

Dated: September 6, 2019

*Virginia K. DeMarchi*
VIRGINIA K. DEMARCHI
United States Magistrate Judge