UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JANE DOE 1, et al.,<br><br>                Plaintiffs,<br><br>        v.<br><br>KEVIN K. MCALEENAN, et al.,<br><br>                Defendants. | Case No. 18-cv-02349-BLF   (VKD)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR SANCTIONS**<br><br>Re: Dkt. No. 218 |

In connection with their efforts to obtain jurisdictional discovery, plaintiffs move to compel the production of an unredacted version of document DEF-00001931 ("DEF-1931"), which defendants produced and later clawed back on grounds that the document contained material protected by the law enforcement privilege. Dkt. No. 218. Plaintiffs also seek an award of monetary and other sanctions against defendants. *Id.* As the Court has already resolved plaintiffs' motion to compel, *see* Dkt. No. 243, this order addresses only plaintiffs' request for sanctions.

The Court heard oral argument on plaintiffs' motion to compel and for sanctions on October 1, 2019. Dkt. No. 241. Having considered the parties' written submissions and arguments made at the hearing, the Court grants in part and denies in part plaintiffs' request for sanctions.

## I.    BACKGROUND

In this action, plaintiffs seek review under the Administrative Procedures Act ("APA") of changes defendants allegedly made to the Lautenberg-Specter program for processing the refugee applications of Iranian religious minorities. Dkt. No. 1 ¶¶ 95-96. Defendants contend that there is no final agency action to review, as no changes were made to the Lautenberg-Specter program;

United States District Court
Northern District of California

rather, U.S. Citizenship and Immigration Services ("USCIS") simply began using information derived from enhanced security screening techniques as part of its overall consideration of applicants' admissibility. Dkt. No. 96 at 14–16; Dkt. No. 100 at 6–7.

The Court permitted plaintiffs to take jurisdictional discovery regarding the nature of the agency action at issue. Dkt. No. 102. Plaintiffs have asked defendants to produce documents reflecting changes in how USCIS processes refugee applications, including changes to the vetting techniques and procedures used to screen the applicants for security concerns. Dkt. No. 107-1.

DEF-1931 appears to be a template, in spreadsheet format, with column headings that reflect the types of information considered in the security vetting process for refugee applicants and rows labeled with unique numbers, presumably associated with individual applicants.[1] The document bears the title "███████████████████████████████████████." None of the fields in the spreadsheet contains any content. *See* Dkt. No. 218 at 4; Dkt. No. 229 at 3, 10; Dkt. No. 230 at 6–7 (parties' descriptions of DEF-1931). Plaintiffs say that the document contains information critical to resolving the jurisdictional question presented because it describes the vetting technique that plaintiffs contend was among the changes defendants made to the Lautenberg-Specter program. Dkt. No. 218 at 2; Dkt. No. 230 at 6. Defendants say that DEF-1931 "arguably constitutes" privileged operational details of the specific vetting techniques applied to the applicants in this case, although defendants no longer seek to withhold the document from production pursuant to the law enforcement privilege. Dkt. No. 229 at 10.

Defendants produced DEF-1931 without redactions and without any assertion of privilege on November 29, 2018. Dkt. No. 229-1 ¶ 8. According to defendants, USCIS agency counsel Bryan Lonegan designated this document as requiring redactions for material subject to the law enforcement privilege, but the Department of Justice's e-discovery vendor failed to implement those redactions before producing the document to plaintiffs. Dkt. No. 229-1 ¶¶ 7-8; Dkt. No. 229-2 ¶ 9.

On December 20, 2018, plaintiffs' counsel attended a meeting with defendants' counsel

---

[1] An unredacted copy of DEF-1931 was lodged with the Court on July 11, 2019.

and agency representatives to discuss outstanding discovery matters. Dkt. No. 219 ¶¶ 7-10; Dkt No. 229-2 ¶¶ 10-11; Dkt. No. 229-3 ¶ 6. Mariko Hirose, counsel for plaintiffs, and Mr. Lonegan and Ron Whitney, both of whom are agency counsel for USCIS, were among the attendees at this meeting. Dkt. No. 219 ¶¶ 7-10; Dkt No. 229-2 ¶¶ 10-11; Dkt. No. 229-3 ¶ 6. Ms. Hirose says that she specifically recalls providing an unredacted copy of DEF-1931 to Messrs. Lonegan and Whitney and discussing the significance of the document with them at the meeting. Dkt. No. 219 ¶¶ 8-11. Neither Mr. Lonegan nor Mr. Whitney directly disputes Ms. Hirose's account; both say only that they "do not recall" seeing the document in the meeting or discussing it with plaintiffs' counsel.[2] Dkt. No. 229-2 ¶¶ 14-17; Dkt. No. 229-3 ¶¶ 8-9.

Mr. Whitney says that as a result of the December 20, 2018 meeting, he recognized that privileged information had been inadvertently released in defendants' prior document production, and that agency counsel then engaged in "a broad re-review of several hundred documents already produced in this litigation in an effort to identify, for clawback, information that should have been redacted as privileged both in the metadata and the body of those documents." Dkt. No. 229-3 ¶ 10. Defendants did not assert any claim of privilege with respect to DEF-1931 as a result of the December 20, 2018 meeting.

With respect to the re-review effort Mr. Whitney describes, it is not clear when that effort concluded. However, over the several months following the December 20, 2018 meeting, defendants sent plaintiffs eleven "clawback" letters in which they indicated that they had inadvertently produced privileged information to plaintiffs and demanded its return. Dkt. No. 218 at 6–8. None of those letters asked plaintiffs to return DEF-1931. *Id.*

On May 7, 2019, one week after the final deadline to complete document-related jurisdictional discovery,[3] the parties filed a joint discovery dispute letter regarding defendants'

---

[2] Mr. Whitney's testimony is even more qualified. He acknowledges seeing a document at the meeting that contained information that was subject to the law enforcement privilege, but he does not recall whether that document was DEF-1931. *See* Dkt. No. 229-3 ¶¶ 8-9.

[3] On February 27, 2019, after a series of delays, problems, and missed deadlines, the Court ordered defendants to complete the review and production of documents relating to the question of jurisdiction by April 30, 2019. Dkt. No. 169 at 4.

assertions of the law enforcement and deliberative process privileges. Dkt. No. 180. Plaintiff referred to and characterized the contents of DEF-1931 in the May 7 discovery dispute letter, and during the July 9, 2019 hearing on that dispute, the Court and the parties discussed the vetting technique described in that document at some length. *See id.* at 6 & n.8 (describing DEF-1931 as a "template spreadsheet for class members including fields to explain how they were connected by two hops to 'a bad actor'"); Dkt. No. 212 at 15:9–19:8. Defendants did not object to the use and discussion of DEF-1931 or its contents in the parties' May 7 discovery dispute letter or at the July 9 hearing on that dispute. Dkt. No. 219 ¶ 46; Dkt. No. 212 at 15:9–19:8.

On July 12, 2019, defendants sent a clawback letter demanding the return of DEF-1391 on the ground that it contains material subject to the law enforcement privilege. Dkt. 219 ¶ 48. Defendants say that they did not realize until after the July 9 hearing that DEF-1931 had not been produced with the redactions for privilege that Mr. Lonegan had identified for this document when he reviewed it back in November 2018. Dkt. No. 229 at 8.

On August 26, 2019, plaintiffs filed a noticed motion to compel production of an unredacted copy of DEF-1931 and for sanctions. Dkt. No. 218. While that motion was pending, on September 6, 2019, the Court issued an order resolving the parties' May 7, 2019 discovery dispute regarding defendants' assertions of privilege with respect to 57 SAORRB documents. Dkt. No. 223. That order included a discussion of the law enforcement privilege as applied to the 57 documents. *Id.* On September 11, 2019, defendants filed their opposition to plaintiffs' motion to compel and for sanctions, in which they represented that they "now agree to produce an unredacted version of DEF-1931 with an 'Attorney's Eyes Only/Confidential' designation," based at least in part on their review and consideration of the Court's September 6, 2019 order. Dkt. No. 229 at 1.

Defendants contend that sanctions are unwarranted in these circumstances. *Id.* at 2, 12–18. Plaintiffs contend that defendants' handling of DEF-1931 and their misuse of clawback letters during the course of jurisdictional discovery supports the imposition of sanctions. Dkt. No. 218 at 18–19 & n.4.

## II.  LEGAL STANDARD

Plaintiffs move for sanctions under Rule 37 of the Federal Rules of Civil Procedure, this Court's inherent authority, and/or 28 U.S.C. § 1927.

Rule 37(a)(5)(A) provides that if motion to compel is granted, or if the requested discovery is provided after the motion is filed, a court must require the party whose conducted necessitated the motion to pay the movant's reasonable attorneys' fees and costs associated with the motion, unless (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action, (ii) the opposing party's nondisclosure, response, or objection was substantially justified, or (iii) other circumstances make an award unjust.  This rule applies to all civil litigants, including agencies and departments of the United States.  *See Mattingly v. United States*, 939 F.2d 816, 818 (9th Cir. 1991).

A court possesses inherent authority to award monetary and other sanctions where a party acts in bad faith, and this authority is not displaced by statute or rule-based sanctioning scheme. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–48 (1991); *see also Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1186 (2017) (court has inherent authority to award attorneys' fees incurred by moving party because of the misconduct at issue).  Bad faith includes a broad range of willful improper conduct, including reckless conduct combined with an improper purpose.  *Fink v. Gomez*, 239 F.3d 989, 992–94 (9th Cir. 2001).

Under 28 U.S.C. § 1927, a court may require an attorney who "unreasonably and vexatiously" multiplies the proceedings in a case to "satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."  28 U.S.C. § 1927.  A finding of unreasonable and vexatious conduct may be premised on a showing of recklessness or bad faith, but bad faith is not required.  *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1107 (9th Cir. 2002) (citing *Fink*, 239 F.3d at 993). The statute does not authorize sanctions against a party.

## III.  DISCUSSION

### A.  Plaintiffs' Request for Monetary Sanctions

Plaintiffs seek an order requiring defendants to pay plaintiffs' attorneys' fees and costs incurred in bringing the motion to compel production of an unredacted version of DEF-1931.

Plaintiffs argue that defendants' clawback and redaction of this document was not substantially justified because the parties had repeatedly discussed and used DEF-1931 during the litigation, including in open court, so that any privileges that might have attached to the document were clearly waived. Moreover, plaintiffs argue that defendants have abused the clawback process for inadvertent disclosures of privilege. According to plaintiffs, "[i]nstead of carefully reviewing their documents and producing them with appropriate redactions, [d]efendants haphazardly produced documents without diligently reviewing for privilege, choosing to instead identify privileged information only *after* [p]laintiffs point out the documents' importance to the case." Dkt. No. 218 at 18 (emphasis original). Plaintiffs argue that defendants' conduct is not merely unjustified but also constitutes bad faith and reflects an unreasonable and vexatious multiplication of these proceedings. *Id.* at 18–19.

Defendants oppose monetary sanctions on two grounds. First, they argue that their clawback of the unredacted version of DEF-1931 was substantially justified because the document was inadvertently produced without privilege redactions in late November 2018, and defendants did not appreciate their mistake until July 2019. Dkt. No. 229 at 13–14. Second, defendants argue that they believed in good faith that DEF-1931 contained material subject to the law enforcement privilege, and they could not have been expected to conclude otherwise until the Court issued an order addressing that privilege in detail on September 6, 2019. *Id.* at 14–16. Defendants point out that they agreed to produce an unredacted version of DEF-1931 shortly after receiving the Court's September 6 order, and that an award of sanctions would be unjust in these circumstances.

By agreeing to produce an unredacted version of DEF-1931, defendants have effectively withdrawn their claim that the document is privileged, or they have at least conceded that plaintiffs' need for the information in this case outweighs the public's interest in non-disclosure. *See id.* at 9–11. However, the Court does not disagree with defendants that application of the law enforcement privilege to particular documents and circumstances is not always easy or straightforward and that reasonable minds might disagree regarding whether DEF-1931 falls within the privilege. The problem here is that defendants waived any claim of law enforcement privilege with respect to this document long before plaintiffs moved to compel its production.

The evidence of waiver is compelling. The Court accepts defendants' assertion that the Department of Justice's e-discovery vendor failed to implement redactions noted by USCIS agency counsel and produced DEF-1931 to plaintiffs without redactions in late November or early December 2018. Defendants do not explain why the Department of Justice attorneys conducting "second line" review specifically for privilege did not catch this error. *See, e.g.*, Dkt. No. 159 at 2; Dkt. No. 162 at 3. But mistakes happen, and the protective order entered in this action provides a mechanism for correcting such mistakes. *See* Dkt. No. 135 at 10; *see also* Fed. R. Evid. 502(b) (addressing inadvertent disclosures of documents containing information subject to the attorney-client privilege and attorney work product doctrine). Defendants had ample opportunity to invoke the protections of the protective order and to claw back DEF-1931, but they did not, instead delaying in asserting a claim of privilege until after plaintiffs had highlighted the importance of the document, discussed it with defendants, used it in a discovery dispute submission, and discussed it in open court. The Court has carefully considered the declarations of Ms. Hirose, Mr. Lonegan, and Mr. Whitney regarding the parties' December 20, 2018 meeting. Ms. Hirose specifically describes showing DEF-1931 to Mr. Lonegan and Mr. Whitney and discussing the document's contents with them. The "do not recall" testimony Messrs. Lonegan and Whitney offer in response may be entirely truthful, but that nevertheless leaves Ms. Hirose's testimony uncontradicted. Defendants did not raise a privilege claim with respect to DEF-1931 during or promptly after the meeting.

Following the parties' December 20, 2018 meeting, defendants say that they undertook, in Mr. Whitney's words, "a broad re-review of several hundred documents already produced in this litigation in an effort to identify, for clawback, information that should have been redacted as privileged both in the metadata and the body of those documents." Dkt. No. 229-3 ¶ 10. This re-review was not limited to metadata but also encompassed the body of the documents that had been produced. And still, defendants made no privilege claims with respect to DEF-1931.

Meanwhile, plaintiffs relied on information they had gleaned from DEF-1931 to develop their theory about the changes made to the security vetting process for evaluating refugees applying through the Lautenberg-Specter program. Plaintiffs described that theory at length in

their portion of the parties' May 7, 2019 discovery dispute letter, and they cited and characterized DEF-1931 as among the documents supporting their theory. Then, during the July 9, 2019 hearing on the discovery dispute, the parties and the Court referred to and discussed the "two hops" security risk assessment in open court. Even though this document was brought to defendants' attention again in early May, defendants did not make any privilege claims until a few days after the July 9 hearing.

The Court is not persuaded that defendants took reasonable steps to protect the privileged contents of DEF-1931 in the first instance or that they promptly took reasonable steps to correct the inadvertent disclosure of privileged material in that document once they learned of it. Defendants were neither careful nor diligent in identifying privileged material in the first instance, and they did not act promptly or reasonably once it was brought to their attention that DEF-1931 had been produced without redactions. Defendants' handling of DEF-1931 differs from its handling of other documents in which the clawback effort was much delayed, but the contents of DEF-1931 had not been discussed, used, or disclosed. *See* Dkt. Nos. 171, 174 (expressing a preference for evaluating clawback privilege claims on the merits, rather than on the basis of delay alone).

The Court concludes that an award of reasonable attorneys' fees and costs is required under Rule 37(a)(5)(A). Defendants agreed to provide an unredacted version of DEF-1931 only after plaintiffs filed a motion to compel. The Court does not fault defendants for eventually agreeing to produce (or re-produce) an unredacted version of this document, but the fact remains that plaintiffs filed their motion only after making the case in pre-filing communications that defendants had waived privilege with respect to this document. Defendants' belated assertion of the law enforcement privilege with respect to DEF-1931 in the circumstances detailed above was not substantially justified, and no other circumstances make an award of fees and costs unjust here. The Court grants plaintiffs' motion for an award of monetary sanctions on this ground.

The Court has considered whether defendants' conduct constitutes bad faith warranting sanctions under the Court's inherent authority. The Court concludes that it does not and declines to award monetary sanctions on this ground.

In addition, the Court has considered whether defendants' counsel unreasonably and vexatiously multiplied proceedings and whether such conduct warrants sanctions under 28 U.S.C. § 1927. The Court has considered plaintiffs' arguments that defendants' counsel unreasonably asserted privilege with respect to DEF-1931 after having waived any such claim by failing to promptly assert it while permitting the document to be used in the litigation. The Court also has considered plaintiffs' showing that defendants' counsel misused the clawback process generally by issuing an excessive number of late demands for the return of documents containing allegedly privileged information. Defendants' counsel have indeed multiplied proceedings unnecessarily with respect to DEF-1931, and it appears that this conduct is part of an unfortunate pattern of clawbacks. However, the Court concludes, based on the present record, that this conduct does not rise to the level of recklessness or bad faith and therefore declines to hold defendants' counsel personally responsible for monetary sanctions at this time.

### B. Plaintiffs' Request for Restrictions on Defendants' Use of Clawback Letters

Plaintiffs seek an order requiring defendants to obtain the Court's leave before issuing any future clawback letters. Plaintiffs say that defendants have now issued fourteen clawback letters encompassing approximately 100 documents. They explain that every time they receive such a letter, they must undertake time-consuming efforts to sequester and remove the subject documents until disputes about the asserted privilege are resolved. *See* Dkt. No. 218 at 11–12. In addition, plaintiffs explain that the sequestration requirement has impacted their counsel's ability to utilize work product that relies on sequestered material. *Id.* at 11. Plaintiffs ask the Court to relieve them of this significant burden of resolving defendants' claims of inadvertent disclosure of privileged materials.

Defendants do not dispute the history of clawback letters that plaintiffs recount at length. However, defendants object that if they are not able to immediately clawback documents that contain privileged material, but must instead await the Court's permission, the documents will be at risk of improper use and disclosure. Dkt. No. 245 at 39:2–40:1. Defendants also say that requiring them to seek the Court's leave to claw back every inadvertent disclosure will result in the parties bringing to the Court clawback demands that plaintiffs ultimately may not dispute. *Id.*

at 35:12-18.

Although plaintiffs frame their request, at least in part, as a form of sanction, the parties agreed during the hearing that the Court has inherent authority to set procedures for handling inadvertent disclosure claims in managing discovery in this case, independent of any finding of bad faith by defendants or their counsel. Dkt. No. 245 at 12:23–13:10, 33:7–9. In view of the nature and extent of defendants' past use of clawback letters in this case, the Court concludes that some modification to the clawback procedures are warranted here. The Court substantially adopts the alternative procedures proposed by plaintiffs, *see* Dkt. No. 230 at 2–3, which the Court and the parties discussed at the hearing on this matter. Dkt. No. 245 at 12:23–15:1, 32:21–51:14.

In the event defendants desire to claw back a document that they believe contains an inadvertent disclosure of privileged information, the following procedures shall apply:

1) Defendants will provide the Bates number of the document to plaintiffs;

2) Plaintiffs will treat the document as "Attorneys' Eyes Only / Outside Counsel's Eyes Only"[4] and will not publicly disclose it unless and until the Court issues an order on the question of whether the document may be clawed back;

3) If the Court permits defendants to claw back the document, plaintiffs will sequester and/or delete the document from their systems as required under the operative protective order;

4) If the Court does not permit defendants to claw back the document, the document will revert to its prior confidentiality status, unless the parties agree or the Court orders otherwise; and

5) Any delay between defendants' communication to plaintiffs of defendants' desire to claw back a particular document and the Court's resolution of a dispute about that clawback request will not be deemed a period of delay attributed to defendants.

---

[4] The Court means to refer here to the level of confidentiality that corresponds to the "Highly Confidential – Attorneys' Eyes Only" designation used in the Northern District of California Model Protective Order for Litigation Involving, Patents, Highly Sensitive Confidential Information and/or Trade Secrets. Nothing in this order precludes the parties from negotiating a revised protective order with a similar designation which may then be used in connection with the procedures set out in this order.

United States District Court
Northern District of California

If the parties wish to stipulate to a different procedure, they may submit such stipulation to the Court for approval. The parties may present disputes about clawback requests to the Court for resolution using the Court's discovery dispute resolution procedures. Standing Order for Civil Cases at 2–4.

## IV.    FURTHER PROCEEDINGS

Plaintiffs ask the Court to award sanctions in the amount of $41,546.52. They have submitted declarations of their counsel attesting to the attorneys' fees and costs incurred in sequestering DEF-1931, challenging defendants' clawback request, and bringing a motion to compel and for sanctions. *See* Dkt. Nos. 219, 220. Plaintiffs explain the bases for their attorneys' fees calculations, including the use of reduced rates and application of a 20% discount with respect to the bulk of counsel's fees. Dkt. No. 219 ¶ 57; Dkt. No. 220 ¶¶ 3-9.

Defendants do not object that the amount of sanctions plaintiffs request exceeds the scope of Rule 37(a)(5)(A). They also do not object to the number of hours claimed, the activities encompassed, or the billing rates plaintiffs use to calculate their attorneys' fees.

The Court has an obligation to ensure that an award of attorneys' fees and costs under Rule 37(a)(5)(A) is reasonable. *See* Fed. R. Civ. P 37(a)(5)(A) ("[T]he court must, after giving an opportunity to be heard, require the party . . . whose conduct necessitated the motion . . . to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees."). Accordingly, by **October 15, 2019**, plaintiffs shall lodge for in camera review billing records sufficient to support their request for attorneys' fees and costs. Alternatively, the parties may stipulate to the amount of attorneys' fees and costs and so advise the Court.

## V.    CONCLUSION

Plaintiffs' motion for sanctions is granted in part and denied in part. Plaintiffs are entitled to an award of attorneys' fees and costs under Rule 37(a)(5)(A) payable by defendants in an amount to be determined by the Court after plaintiffs lodge billing records sufficient to support the amount requested, unless the parties stipulate to an amount. The parties shall comply with the procedures outlined above for clawing back documents that contain privileged material that was inadvertently disclosed, unless they stipulate to a different procedure and the Court approves that

procedure.

**IT IS SO ORDERED.**

Dated: October 8, 2019

_Virginia K. DeMarchi_
VIRGINIA K. DEMARCHI
United States Magistrate Judge