UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JANE DOE 1, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>CHAD F. WOLF, et al.,<br><br>    Defendants. | Case No. 18-cv-02349-BLF   (VKD)<br><br>**ORDER RE DISCOVERY DISPUTE RE DEFENDANTS' CONFIDENTIAL AND HC-AEO DESIGNATIONS**<br><br>Re: Dkt. No. 306 |

The parties dispute whether certain documents and deposition testimony defendants produced in discovery are properly designated "Confidential" or "Highly Confidential – Attorneys' Eyes Only" under the protective order entered in this case (Dkt. No. 256). Dkt. No. 306. The Court reviewed all disputed documents and testimony in camera and held a hearing on the matter on April 7, 2020. Dkt. No. 316.

The Court concludes that some of defendants' confidentiality designations are warranted at least for purposes of discovery, but that others do not warrant that designation. The attached Appendices A-C summarize the Court's decisions as to each disputed item. The Court sets forth its reasoning below.

**I.   BACKGROUND**

The parties advise that they have completed jurisdictional discovery, save for resolution of this dispute. The Court previously addressed disputes concerning the application of several privileges to many of defendants' responsive documents, including the law enforcement privilege and the deliberative process privilege. *See, e.g.*, Dkt. Nos. 223, 225, 289. Plaintiffs now challenge defendants' confidentiality designations for approximately 30 documents. In addition,

plaintiffs challenge defendants' confidentiality designations for approximately 90 discrete excerpts from the depositions of two defense witnesses.

## II. DISCUSSION

### A. Standard for Confidentiality Designations

Pretrial discovery is presumptively public. *In re Roman Catholic Archbishop of Portland in Oregon*, 661 F.3d 417, 424, 426 (9th Cir. 2011) ("As a general rule, the public is permitted access to litigation documents and information produced during discovery.") (internal quotations omitted). However, the Court may, for good cause, issue a protective order restricting use and disclosure of discovery materials. Fed. R. Civ. P. 26(c).[1]

On October 16, 2019, the Court entered a stipulated Amended Protective Order to govern the disclosure and exchange of documents and information during discovery. Dkt. No. 256. That order permits a party to designate materials "Confidential" if the materials would qualify for protection under Rule 26 of the Federal Rules of Civil Procedure. Dkt. No. 256 ¶ 2.2. Confidential material may be shared with an adverse party, but not with the public. *Id.* ¶ 7.2. The order also permits a party to designate materials "Highly Confidential – Attorneys' Eyes Only " ("HC-AEO") if the materials are "extremely sensitive," such that disclosure of the materials to another party or to the public would create "a substantial risk of serious harm that could not be avoided by less restrictive means." *Id.* ¶ 2.7. HC-AEO material may not be shared with an adverse party or the public. *Id.* ¶ 7.3.[2]

In resolving the parties' dispute, the Court must first consider whether "particularized harm" will result if the designated materials are disclosed to the public or to an adverse party. *In re Roman Catholic Archbishop*, 661 F.3d at 424. General allegations of harm are insufficient. *Id.* If the Court concludes that disclosure will result in specific harm, the Court must then consider

---

[1] A different standard will apply if and when any of the disputed materials is filed with the Court in connection with a dispositive motion or other matter involving the merits of the case. *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1101–02 (9th Cir. 2016).

[2] The protective order includes additional restrictions and requirements regarding use and disclosure of Confidential and HC-AEO materials.

2

and balance other public and private interests in order to decide whether defendants' interest in protecting the material outweighs the public's and plaintiffs' interests in disclosure. *Id.* Those factors are: (1) whether disclosure will violate any privacy interests; (2) whether the information is being sought for a legitimate purpose or for an improper purpose; (3) whether disclosure of the information will cause a party embarrassment; (4) whether confidentiality is being sought over information important to public health and safety; (5) whether the sharing of information among litigants will promote fairness and efficiency; (6) whether a party benefitting from the order of confidentiality is a public entity or official; and (7) whether the case involves issues important to the public. *Id.* (citing *Glenmede Trust Co. v. Thompson*, 56 F.3d 476, 483 (3d Cir. 1995)). As the party opposing disclosure, defendants have the burden of demonstrating good cause for the Confidential and HC-AEO designations they have made to limit the use and disclosure for designated materials. *Id.*

### B. Disputed Document Designations

Defendants raise two primary arguments in support of continued protection of documents or portions of documents designated Confidential or HC-AEO.[3] First, defendants urge the Court to maintain the protections for documents that reveal information about defendants' refugee vetting processes. *See* Dkt. No. 306 at 10–13. Second, defendants argue that the designations are necessary to protect case-specific refugee vetting results.[4] *Id.* at 13–14. Plaintiffs argue that the information defendants have designated is already publicly available or is described at a level of generality that does not support a claim of particularized harm. *Id.* at 4–8. The parties also dispute whether other public and private interests weigh for or against defendants' designations.

---

[3] Plaintiffs challenge one document's Confidential designation, but most of their challenges concern defendants' HC-AEO designations. The Court notes that parties' index reflects 33 documents, but the documents are not consecutively numbered, resulting in only 29 documents at issue.

[4] Defendants also argue that some of the disputed material is not relevant. However, the degree of relevance of a particular document does not inform whether the document has been properly designated under the protective order. Defendants may not designate material HC-AEO on the ground that the material is not relevant. Moreover, at this late stage of jurisdictional discovery, the Court will not revisit relevance arguments.

*See id.* at 9, 14–15.

### 1. Operational details of vetting techniques

Defendants argue that revealing the operational details of a particular vetting technique may compromise the effectiveness of that technique by making it possible for vetting targets to avoid providing information necessary for accurate vetting. The Court agrees that disclosure of the operational details of defendants' vetting techniques poses a risk of harm that is sufficiently particularized to warrant protection, if not outweighed by other interests that support disclosure. Only some of the documents at issue contain such operational details. Most of the disputed documents refer to vetting techniques or agency processes at a high level without revealing anything about the operational details of the techniques. Because defendants have not made a showing of particularized harm as to such matters, defendants may not designate this disputed material HC-AEO, and the Court need not weigh other public or private interests. The disputed designations that the Court finds not supported by a showing of particularized harm are indicated in the accompanying Appendix A as "Designation denied."

The remainder of the disputed materials that refer to vetting techniques include documents that disclose at least some operational details of the techniques at issue, and defendants have shown that harm to law enforcement and/or national security interests may result from disclosure of those materials to plaintiffs or to the public. As to those materials, the Court considers how other interests weigh for or against defendants' interest in protecting the materials from disclosure.

First, as plaintiffs observe, the alleged changes to the Lautenberg-Specter program's vetting of refugee applicants are a matter of public interest. However, not every disputed document is important to the public simply because defendants produced it in discovery. Moreover, as defendants observe, the public's interest in knowing how defendants and other government entities administer the vetting program may be in tension with the public's interest in effective operation of that program, which reasonably depends on maintaining the confidentiality of some aspects of the program. Certain information—for example, the identities of particular vetting partners, the specific sources of derogatory information on which defendants and its vetting partners rely, the details of how that derogatory information is used, and defendants' internal processes for dealing with the results of

objections to an applicant based on derogatory information—has not been publicly disclosed and is described in these documents at a level of detail that exceeds the more general, high level descriptions that have been included in prior briefing before the Court or that have been publicly disclosed. Defendants appear to have maintained that information in confidence, and the Court credits defendants' representations that disclosure of this information at this level of detail would adversely impact their ability to effectively administer the vetting program and other functions that support that program. These considerations weigh against permitting disclosure.

Second, plaintiffs assert that they seek disclosure of the designated materials for the legitimate purpose of challenging the agency action described in the amended complaint. While the Court does not question that plaintiffs' purpose is legitimate, plaintiffs' ability to prosecute their claim will not be impeded in any substantial way by defendants' confidentiality designations. Plaintiffs' counsel have full access to the designated material, and the Court's Local Rules provide a mechanism for filing materials under seal and obtaining a document-specific ruling on whether such sealing is appropriate. Civ. L.R. 79-5. Meanwhile, much of the information relevant to this dispute is not subject to restrictions on its disclosures and has already been the subject of public discussion. Importantly, plaintiffs have not been prevented from publicly articulating their theory of the case or from shedding light on the matters they believe are of interest to the public. At the same time, the Court is persuaded that defendants do not seek to restrict disclosure solely to avoid embarrassment or to avoid disclosure of information that is material to public health or safety. These considerations also weigh against permitting disclosure.

For these reasons, the Court concludes that the following disputed materials may *retain* their HC-AEO or Confidential designations because these materials include some operational details of specific vetting techniques: DEF-18374, DEF-00056 (second item), DEF-01931[5], DEF-05921 (second item in sec. III, sec. IV/FBI), DEF-06004, DEF-06143, DEF-09155, DEF-09174,

---

[5] The Court acknowledges plaintiffs' position that the basic contours of the "two-hop" vetting process have already been publicly disclosed and discussed with the Court. However, DEF-01931, DEF-06143, DEF-09174, DEF-11208, DEF-11211, DEF-14079, and DEF-18023 appear to include details that go somewhat beyond what has already been disclosed, at least so far as the Court is informed. This distinction informs the Court's decisions on the appropriate designations for these materials.

1  DEF-11208, DEF-11211, DEF-14079, DEF-16914 (sec. 8.4.3), and DEF-18023 ("Information

2  Collection" section).  These decisions are indicated in the accompanying Appendix A as

3  "Designation sustained."

### 2. Case-specific refugee vetting results

Defendants also argue that case-specific refugee vetting results should be designated HC-AEO.  The Court agrees that for purposes of discovery, defendants have articulated good cause to not disclose to plaintiffs or the public the results of defendants' vetting of specific refugee applicants.  However, the Court disagrees that high level discussion of aggregate, anonymized vetting results warrant the same treatment.  While the former may put at risk sensitive information about how defendants vet applicants that defendants would not ordinarily share with such applicants, the latter does not.  Because defendants have not made a showing of particularized harm as to such matters, defendants may not designate this disputed material HC-AEO and the Court need not weigh other public or private interests.  The disputed designations that the Court finds not supported by a showing of particularized harm are indicated in the accompanying Appendix A as "Designation denied."

Defendants have identified one document, DEF-01916, that includes the specific vetting results for each of the applicants in this case.  Plaintiffs argue that defendants permitted plaintiffs to possess this document for months without any confidentiality designation whatsoever, and that such conduct is inconsistent with defendants' present argument that particularized harm will result if plaintiffs or the public are permitted access to this document.  In addition, plaintiffs argue that the document reveals only the name of the vetting procedure used and not the details of the derogatory information on which defendants based their denials.  Dkt. No. 306 at 8.  Defendants acknowledge the undesignated disclosure of this document to plaintiffs but note their subsequent steps to correct that disclosure.  *Id.* at 14.  Defendants maintain that case-specific vetting results are precisely the kind of information that applicants and others seeking to evade detection of derogatory information could exploit.  *Id.*

Defendants have been careless in their handling of DEF-01916.  They do not dispute that plaintiffs possessed this document for over four months and that defendants were aware plaintiffs

1  had relied and continued to rely on the document in asserting their claims in this case. The Court
2  agrees that defendants' own handling of this document is inconsistent with an HC-AEO
3  designation. However, the document is detailed and contains vetting results specific to each
4  applicant, which is the type of information the Court previously concluded deserves protection.
5  The other public and private interests described above apply to consideration of whether plaintiffs
6  and the public should be permitted access to this document. While these considerations weigh
7  against public disclosure of DEF-01916, they do not support withholding the document from
8  plaintiffs, given that defendants knowingly permitted such disclosure to occur for an extended
9  period of time.
10  For these reasons, the Court concludes that defendants may not designate DEF-01916
11  HC-AEO, but they may designate it Confidential and prevent its disclosure to the public for
12  purposes of discovery. This decision is indicated in the accompanying Appendix A.

### 3. Other disputed document designations

14  Finally, defendants have designated their written responses and supplemental responses to
15  plaintiffs' Interrogatories Nos. 13 and 14 HC-AEO. However, the text for which defendants seek
16  protection consists of merely objections and legal argument or an assertion that defendants do not
17  have responsive information. As defendants have made no showing of particularized harm that
18  would result from disclosure, the HC-AEO designation is not warranted for this material. This
19  decision is indicated in the accompanying Appendix A.

### C. Disputed Deposition Designations

21  The Court has reviewed the highlighted portions of the deposition transcripts of Hilary
22  Ingraham and Joanna Ruppel. The parties' dispute concerning defendants' confidentiality
23  designations for these transcript portions mirrors their dispute about the document designations.
24  The Court has applied the same analysis in resolving the testimony-specific disputes.

### 1. Ingraham transcript

26  Ms. Ingraham is the Director of the Refugee Processing Center for the Department of
27  State's Bureau of Population, Refugees and Migration. She testified as a Rule 30(b)(6) witness on
28  behalf of the Department of State. The parties provided a copy of Ms. Ingraham's deposition

United States District Court
Northern District of California

1  transcript to the Court for in camera review with highlighting corresponding to disputed

2  designations, as well as an index identifying the disputed designations.[6]

3        For the most part, the Court's decisions on the disputed testimony designations follow its

4  decisions on the disputed document designations, explained in detail in the preceding section.

5  However, not surprisingly, Ms. Ingraham's testimony regarding certain matters is more detailed

6  and specific than the information reflected in the particular document to which that testimony

7  refers. For this reason, the Court finds that some testimony is properly designated HC-AEO even

8  if the document about which the witness testifies is not or should not be so designated.

9        The Court's decisions are indicated in the accompanying Appendix B.

### 2. Ruppel transcript

Ms. Ruppel is the Chief of the International and Refugee Affairs Division of U.S. Citizenship and Immigration Services ("USCIS"). She testified as a Rule 30(b)(6) witness on behalf of the Department of Homeland Security. The parties provided a copy of Ms. Ruppel's deposition transcript to the Court for in camera review with highlighting corresponding to disputed designations, as well as an index identifying the disputed designations.[7]

As with Ms. Ingraham's testimony, the Court's decisions on the disputed testimony designations for Ms. Ruppel's testimony follow its decisions on the disputed document designations, explained in detail in the preceding section. Like Ms. Ingraham's testimony, Ms. Ruppel's testimony is often more detailed and specific than the information reflected in the particular document to which that testimony refers. For this reason, the Court finds that some testimony is properly designated HC-AEO even if the document about which the witness testifies

---

[6] The parties' index begins at item no. 4 and refers to disputed testimony beginning on page 55 of Ms. Ingraham's transcript. The parties' discovery letter refers to supposed designation disputes for testimony that precedes page 55 of the transcript, but they have not otherwise indicated to the Court that those designations require review. The Court's review tracks the parties' index and highlighting.

[7] The parties' index begins at item no. 2 and refers to disputed testimony beginning on page 53 of Ms. Ruppel's transcript. The parties' discovery letter refers to supposed designation disputes for testimony that precedes page 53 of the transcript, but they have not otherwise indicated to the Court that those designations require review. The Court's review tracks the parties' index and highlighting.

8

is not or should not be so designated.

The Court's decisions are indicated in the accompanying Appendix C.

### III. CONCLUSION

For the reasons explained in this order, and as reflected in the attached Appendices A-C, the Court sustains some of defendants' confidentiality designations and rejects others. Defendants shall promptly re-designate and re-produce to plaintiffs the documents and transcripts for which the Court has found the confidentiality designations not warranted.

**IT IS SO ORDERED.**

Dated: May 15, 2020

VIRGINIA K. DEMARCHI
United States Magistrate Judge