UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JANE DOE 1, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>CHAD WOLF, et al.,<br><br>    Defendants. | Case No. 18-cv-02349-BLF   (VKD)<br><br>**ORDER RE DEFENDANTS' MOTION FOR RECONSIDERATION**<br><br>Re: Dkt. No. 379<br><br>FILED UNDER SEAL |

Defendants ask the Court to reconsider a portion of its May 27, 2020 order (Dkt. No. 343) sustaining in part and denying in part defendants' confidentiality designations for certain discovery materials. Dkt. No. 379. Defendants contend that reconsideration is warranted in light of the presiding judge's subsequent decision denying plaintiffs leave to add the FBI as a defendant in the action and to add allegations concerning the FBI's adoption of a particular vetting threshold for refugee applications. *Id.* Plaintiffs oppose reconsideration, arguing that the intervening decision is not a material change of law or fact and that defendants are not entitled to a different result on the merits. Dkt. No. 394. No party requested oral argument, and the Court deems the motion suitable for decision without a hearing. Civ. L.R. 7-1(b).

For the reasons explained below, the Court grants in part and denies in part defendants' motion for reconsideration.

**I.     BACKGROUND**

On September 7, 2018, the Court permitted plaintiffs to conduct jurisdictional discovery concerning the nature of the agency action at issue in plaintiffs' sixth claim for relief under the Administrative Procedure Act ("APA"), which seeks review of changes defendants allegedly made

to the Lautenberg-Specter program for processing the refugee applications of Iranian religious minorities. Dkt. No. 102; *see* Dkt. No. 1 ¶¶ 95-96. During the past two years, defendants have produced a substantial number of documents in response to plaintiffs' document requests and have provided two witnesses for Rule 30(b)(6) depositions. *See, e.g.*, Dkt. No. 251 at 8. The parties have asked the Court to resolve many discovery-related disputes during that time, but in none of those disputes have defendants objected to producing particular documents or testimony on grounds of relevance, although defendants have at times disputed the relevance of portions of otherwise responsive documents or testimony in support of their arguments concerning the propriety of certain redactions and confidentiality designations. *See, e.g.*, Dkt. No. 180 at 12 ("Defendants assert that the information marked 'nonresponsive' in produced documents is neither relevant nor responsive to the limited purpose of jurisdictional discovery and is appropriately withheld."); Dkt. No. 181 at 7 n.4 (arguing against public disclosure of government employees' names because "[s]ince discovery at this point is *only* jurisdictional, disclosure of these names is not relevant or proportional") (emphasis original); Dkt. No. 306 at 9–10 (arguing that vetting technique at issue is beyond the scope of jurisdictional discovery because the FBI implemented the technique, not defendants).

On June 16, 2020, Judge Freeman, who presides over this action, denied plaintiffs' motion for leave to amend their complaint in two respects relevant to this dispute. First, Judge Freeman found that the FBI's alleged adoption of a zero-risk tolerance policy for its review of refugee applicants and returning "not clear" results to defendants based on that policy is not a final agency action reviewable under the APA, and she concluded that allegations concerning the FBI's policy may not be added to the complaint. Dkt. No. 357 at 12, 14, 16. Second, Judge Freeman found that the FBI is not a proper party to the action. *Id.* at 17.

On June 18, 2020, Judge Freeman denied defendants' motion seeking review of this Court's May 27, 2020 order (Dkt. No. 343) regarding defendants' confidentiality designations. Dkt. No. 360. However, Judge Freeman observed that "[d]efendants may have a stronger jurisdictional discovery argument now because the Court denied [p]laintiffs' motion for leave to add the FBI as a defendant," and that "[i]f [d]efendants would like to re-assert their jurisdictional

discovery argument, [d]efendants may raise the issue with Judge DeMarchi in a subsequent motion." *Id.* at 4–5.

The 16 discovery items whose confidentiality designations defendants now ask the Court to reconsider all concern the FBI's vetting of refugee applicants. These materials fall into three categories: (1) references to ███████████████████████████████████, without details of what that ██████████████ entails; (2) references to assessing applicants' ████████████████████████████, without details of what that assessment entails; and (3) descriptions of aspects of the FBI's vetting methodology, with some level of detail. Defendants designated all of these materials "Highly Confidential – Attorneys' Eyes Only" ("HC-AEO") under the protective order in this case. The table below lists the 16 items whose designation the Court has been asked to reconsider and the category into which each falls:

| No. | Discovery document/deposition[1] | Category |
|---|---|---|
| 1 | DEF-00000056 (". . . FBI expanding its vetting to include deep dive ████████████████ vetting . . .") | ██████████ |
| 2 | DEF-00000143 ("In unclassified venues, it is usually referred to as "deep dive" or the ████████████████████████.") | ██████████ |
| 3 | DEF-00005921.0001 (". . . FBI has informed us that generally speaking they object to cases where applicants, █████████████████████████████ █████████████████████████████████████ ████████████ provided by the applicant have █████████████████████████████████ ██.") | Methodology description |
| 4 | DEF-00006140.0001 (". . . the most helpful information would be to know if the information is related to the applicant ████████████████ ███████████████████████████████████ ███████████████████████████████████ ███████████████████████████████████ █████████████████████████ ███████████████████████████████") | Methodology description |

---

[1] Italicized text indicates the text defendants designated HC-AEO.

|  |  |  |
|---|---|---|
|  | .”); (". . . it would be helpful to get a better sense of the nature and timing ███, if that is the basis for an objection (e.g., ████████████).”); (". . . it would be helpful to know the general reason the individual is of concern o████. General information may suffice, such as whether the individual is . . . ████████ . . .") |  |
| 5 | Ingraham dep., 56:7-10, 13 | ███ |
| 6 | Ingraham dep., 85:20 and 86:1-2 | ███ |
| 7 | Ingraham dep., 138:18-19, 24 | █████ |
| 8 | Ingraham dep., 180:5, 25 and 181:16 | ███ |
| 9 | Ruppel dep., 53:5 | ███ |
| 10 | Ruppel dep., 80:8, 13 and 81:9-10 | ███ |
| 11 | Ruppel dep., 85:10 | ██ |
| 12 | Ruppel dep., 86:5-6, 15-16 | ███ |
| 13 | Ruppel dep., 89:13-14, 24 | █████ |
| 14 | Ruppel dep., 90:17 | █████ |
| 15 | Ruppel dep., 134:5 | █████ |
| 16 | Ruppel dep., 209:6-8, 24 | █████ |

In its prior order, the Court concluded that defendants had not made a showing of particularized harm or prejudice that would result from unprotected disclosure of these materials and concluded, on that basis, that they should not be designated HC-AEO. Dkt. No. 343 at 3–8, Exs. A–C.

## II.   LEGAL STANDARD

In this district, "a motion for reconsideration may be made on one of three grounds: (1) a material difference in fact or law exists from that which was presented to the Court, which, in the

exercise of reasonable diligence, the party applying for reconsideration did not know at the time of the order; (2) the emergence of new material facts or a change of law; or (3) a manifest failure by the Court to consider material facts or dispositive legal arguments presented before entry of judgment." *Bayer v. Neiman Marcus Grp. Inc.*, Case No. 13-cv-04487-MEJ, 2018 WL 10425912, at *1 (N.D. Cal. July 30, 2018) (citing Civ. L.R. 7-9(b)(1)-(3)). A motion for reconsideration may "not be used to raise arguments or present evidence for the first time" that "could reasonably have been raised earlier in the litigation." *Iglesia Ni Cristo v. Cayabyab*, No. 18-cv-00561-BLF, 2020 WL 3833281, at *2 (N.D. Cal. July 8, 2020).

### III.  DISCUSSION

Defendants originally produced the 16 discovery items at issue here—portions of four documents and excerpts of two Rule 30(b)(6) depositions—without objection on relevance grounds. However, in arguing for HC-AEO designations in the March 13, 2020 discovery dispute letter, they noted that "the conduct of FBI . . . has no bearing on the conduct of DHS and State and thus is beyond the jurisdictional discovery scope." Dkt. No. 306 at 10. Defendants now argue that Judge Freeman's June 16, 2020 decision definitely renders these items irrelevant for the purpose of jurisdictional discovery and that this lack of relevance warrants the Court's reconsideration of its order regarding defendants' confidentiality designations. Defendants' arguments on reconsideration do not address how the purported irrelevance of these materials should inform the Court's re-assessment of their confidentiality designations. Instead, defendants effectively seek a do-over on the merits, including asking the Court to consider the declaration of FBI Acting Section Chief Gabriel K. Poling (Dkt. No. 373-4) concerning the harm he believes will result from disclosure of the disputed items—a declaration not previously before the Court.

Plaintiffs disagree that the 16 discovery items must now be deemed irrelevant to any issue remaining in the case. They point out that defendants Department of Homeland Security ("DHS") and Department of State ("DOS") produced these materials and that the materials reflect what DHS and DOS understood about the FBI's vetting policy. Plaintiffs argue that this understanding is central to their allegations about final agency action and that Judge Freeman's June 16, 2020 order does not hold otherwise. Dkt. No. 394 at 3; *see also* Dkt. No. 357 at 10 ("Defendants'

decision to deny refugee applications based on a 'not clear' result from the FBI is circumscribed and discrete and an exercise of agency power."). As a result, plaintiffs contend that there has been no material change of fact or law warranting reconsideration, and they strenuously object to a do-over on the merits.

In the Court's view, the question presented is a narrow one: whether Judge Freeman's order concluding that the FBI is not a proper party to this action and that the FBI's refugee vetting policy is not reviewable agency action constitutes a change in fact or law that warrants the Court's reconsideration of its prior decision on the propriety of defendants' confidentiality designations. As noted in its prior order, the standard the Court must apply is set forth in *In re Roman Catholic Archbishop of Portland in Oregon*, 661 F.3d 417 (9th Cir. 2011). The Court must first consider whether "particularized harm" will result if the designated materials are disclosed to the public or to an adverse party. *In re Roman Catholic Archbishop*, 661 F.3d at 424. General allegations of harm are insufficient. *Id.* If the Court concludes that disclosure will result in specific harm, the Court must then consider and balance other public and private interests in order to decide whether defendants' interest in protecting the material outweighs the public's and plaintiffs' interests in disclosure. *Id.* Those factors are: (1) whether disclosure will violate any privacy interests; (2) whether the information is being sought for a legitimate purpose or for an improper purpose; (3) whether disclosure of the information will cause a party embarrassment; (4) whether confidentiality is being sought over information important to public health and safety; (5) whether the sharing of information among litigants will promote fairness and efficiency; (6) whether a party benefitting from the order of confidentiality is a public entity or official; and (7) whether the case involves issues important to the public. *Id.* (citing *Glenmede Trust Co. v. Thompson*, 56 F.3d 476, 483 (3d Cir. 1995)). As the party opposing disclosure, defendants bear the burden of demonstrating good cause for their HC-AEO designations. *Id.*

In its prior order, the Court concluded that defendants had not made a showing of particularized harm. Defendants have identified no reason for the Court to reconsider that finding. Likewise, defendants have identified no reason for the Court to consider the information in the Poling declaration, which could have been submitted in connection with the parties' original

1   dispute. In addition, the Court agrees with plaintiffs that the question of relevance or lack thereof
2   is not part of the first step of the analysis, which requires the Court to consider whether defendants
3   have made a showing of particularized harm. Although it may be argued that in *In re Roman*
4   *Catholic Archbishop*, it was undisputed that the information at issue *was* relevant and that the
5   Ninth Circuit's two-step analysis therefore presumes relevance, the Court is aware of no authority
6   for the proposition that it may consider the relevance or degree of relevance of discovery material
7   in assessing whether unprotected disclosure would result in particularized harm. Relevance
8   properly may be considered at the second step of the analysis—e.g., in assessing whether the
9   information is being sought for a legitimate purpose—but the Court does not reach that step unless
10  it finds that defendants have shown particularized harm.

11  The Court is not persuaded that the information reflected in these 16 discovery items is
12  wholly irrelevant to any issue in the case, as defendants contend. Plaintiffs articulate a reasonable
13  justification for why the discovery materials remain relevant. However, even if defendants were
14  correct that the materials are irrelevant, this lack of relevance would not support reconsideration of
15  the Court's assessment of defendants' showing of particularized harm.

16  However, in considering defendants' motion, the Court has reviewed sua sponte whether
17  its decisions with respect to each of the 16 discovery items are consistent with the reasoning
18  described in the May 27, 2020 order. *See Nat'l Res. Def. Council v. Evans*, 243 F. Supp. 2d 1046,
19  1048 (N.D. Cal. 2003) ("[I]t is well established that a district court has the inherent power to
20  reconsider interlocutory orders and reopen any part of a case before entry of final judgment.")
21  (citing *Marconi Wireless Tel. Co. v. United States*, 320 U.S. 1, 47–48 (1943)). The Court
22  concludes that its decisions with respect to two items are not consistent with the reasoning in the
23  order. Items 3 and 4 in the table above disclose some of the operational details of the FBI's
24  vetting methodology. Consistent with the Court's May 27, 2020 order, application of the HC-
25  AEO designation is appropriate for such material. *See* Dkt. No. 343 at 4–5. The remaining
26  discovery items at issue include references to "vetting techniques or agency processes at a high
27  level without revealing anything about the operational details" of the techniques or processes. The
28  Court's prior decisions as to those specific items are consistent with the reasoning in the May 27,

1 2020 order. *See id.* at 4. Those items should not retain the HC-AEO designation.

**IV. CONCLUSION**

Accordingly, the Court denies defendants' motion for reconsideration of its prior order regarding the 16 discovery items, except with respect to items 3 and 4, in DEF-00005921.0001 and DEF-00006140.0001, respectively. Those items may retain the HC-AEO designation.

This order contains information defendants have asked to be filed under seal. Dkt. Nos. 373, 393, 400. Because this order is subject to review by the presiding judge, and because resolution of any such review may impact the question of whether certain material ought to be filed under seal, portions of this order shall be filed under seal until further order of the Court.

**IT IS SO ORDERED.**

Dated: September 17, 2020

VIRGINIA K. DEMARCHI
United States Magistrate Judge